John Ridley (ID No. 249761968)
John.Ridley@dbr.com
Vik C. Jaitly (ID No. 061682013)
Vik.Jaitly@dbr.com
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ  07932-1047
Phone:  (973) 549-7000
Fax:  (973) 360-9831

*Attorneys for Defendants*
*Postal Transport, Inc.*
*Clifford Finkle IV*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **KENNETH HOSFELD,** | : |
| Plaintiff, | : |
| v. | : No. 1:15-cv-07497-JHR-KMW |
| **POSTAL TRANSPORT, INC., CLIFFORD FINKLE IV, AND JOHN DOES 1-10,** | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**POSTAL TRANSPORT, INC. AND CLIFFORD FINKLE IV'S**
**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Without ambiguity or uncertainty, Plaintiff Kenneth Hosfeld ("Plaintiff" or "Mr. Hosfeld") and Defendants Postal Transport, Inc. and Clifford Finkle IV ("Defendants") agreed to resolve this matter on November 23, 2016 on the following terms:  (1) payment of $5,000.00 to Plaintiff; and (2) a release of all claims brought, or which could have been brought, to date, by Plaintiff including counsel fees and costs.  In fact, Plaintiff's counsel not only confirmed this by

88427648.3

her email on November 23, but again on December 15 when she indicated that she would inform the court that the parties had reached an agreement. Plaintiff is now trying to back out of this agreement because the parties disagreed on other non-essential terms in the settlement agreement. Defendants have since, where possible and consistent with tax law, accommodated Plaintiff with respect to the non-essential terms that Plaintiff requested. Specifically, Defendants agreed to execute a release in favor of Plaintiff – notwithstanding that Defendants had never asserted any claims against him. And Defendants agreed to Plaintiff's requested dollar allocation of the $5,000 settlement proceeds between W-2 and 1099 income, but did not – and still do not – agree that any portion of the total settlement is non-taxable to Plaintiff, and will not structure a settlement agreement as such. Here, Plaintiff, through counsel, is simply wrong as a matter of law and Defendants cannot be placed in a position of it appearing that they are in collusion with Plaintiff to avoid taxes. Accordingly, Defendants hereby submit the following memorandum of law in support of its motion to enforce the parties' settlement.

I.      **FACTUAL BACKGROUND**

Plaintiff originally filed a Complaint on October 14, 2015 and then filed an Amended Complaint on March 18, 2016. In his Amended Complaint, Plaintiff alleges, among other things, that Defendants violated the Fair Labor Standards Act by failing to pay Plaintiff the proper wage rate for hours worked. (Vik C. Jaitly's Certification "Jaitly Cert." ¶ 2; Ex. A).

Mr. Hosfeld was employed by Postal Transport to transport mail pursuant to a contract awarded by the U.S. Postal Service under the Contract Services Act, pursuant to which the contract sets the drivers' pay and benefits rates. (Jaitly Cert. ¶ 3; Ex. D). During the initial exchange of written discovery, Defendants produced documents showing that, based on an analysis it had performed, Plaintiff would be entitled to, *at most*, $1,400.40 if he prevailed on his claims. (Jaitly Cert. ¶ 4; Ex. B). Defendants revised this amount on September 2, 2016 to

$1,061.00 in an email to Plaintiff's counsel.  (Jaitly Cert. ¶ 5; Ex. C).  Plaintiff's counsel responded and stated that she believed that Plaintiff was owed at least a total of $1,584.63.  (Jaitly Cert. ¶ 6; Ex. D).  Having a good understanding of the Plaintiff's claims, Defendants served an Offer of Judgment on September 30, 2016 in the amount of $2,000.00.  (Jaitly Cert. ¶ 7; Ex. E).

Shortly thereafter, the parties engaged in settlement discussions and on November 23, 2016 Plaintiff agreed to settle the matter for $5,000.00 in exchange for a release from Plaintiff on "all claims brought, or which could have been brought, to date, including counsel fees and costs."  (Jaitly Cert. ¶ 8; Ex. F).  Plaintiff's counsel confirmed the parties' agreement in an email on the same date in which she wrote:  "Yes, agreed."  Id.  Defendants then sent a draft settlement agreement memorializing the agreement to Plaintiff on December 5, 2016.  (Jaitly Cert. ¶ 9; Ex. G).  Plaintiff sent comments on the draft settlement agreement on December 15, 2016.  (Jaitly Cert. ¶ 10; Ex. H).  The two main provisions the parties disagreed on were:  (1) whether, as a matter of law, the settlement proceeds allocated to the Form 1099 payment would be considered taxable income, given that Plaintiff's "damages" do not originate from a personal physical injury; and (2) whether Defendants would provide a mutual release to Plaintiff.  (Jaitly Cert. ¶ 11).  Specifically, Plaintiff wanted Defendants to agree that the settlement payment was not taxable.  Defendants clearly indicated to Plaintiff on numerous occasions that the emotional distress (as well as the back pay) component of the settlement payment is in fact taxable based on IRS regulations; and that Defendants could not agree to it being treated as non-taxable in the agreement.  (Jaitly Cert. ¶ 12).

On the same day that Plaintiff forwarded comments to the draft settlement agreement, Plaintiff's counsel also informed Defendants that she "will notify the court today via letter and cc

[Defendants' counsel] that we have reached an agreement and are working on the written document." (Jaitly Cert. ¶ 13; Ex. I).  Apparently, Plaintiff's counsel never did notify the court of the parties' settlement.  (Jaitly Cert. ¶ 14).  However, a few days later on December 21, and because the parties disagreed on certain non-essential provisions in the settlement agreement, primarily Plaintiff's counsel's insistence that "emotional distress is not taxable" Plaintiff's counsel announced that the "settlement is off."  (Jaitly Cert. ¶ 15; Ex. J).

Subsequently, in an effort to bring the matter to a close, Defendants informed Plaintiff's counsel that Defendants agreed to Plaintiff's proposed W-2 and 1099 allocation of the settlement proceeds, so long as Plaintiff agreed to be responsible for any tax payments owed as a result of the settlement.  (Jaitly Cert. ¶ 16).  Furthermore, Defendants also informed Plaintiff's counsel that it would provide Plaintiff a mutual release as Plaintiff as requested, therefore, resolving any issues Plaintiff had with the draft settlement agreement.  Id.  After communicating this to Plaintiff's counsel, Defendants sent Plaintiff an updated settlement agreement reflecting these changes on February 24, 2017.  (Jaitly Cert. ¶ 17; Ex. K).

Since then, Defendants have repeatedly attempted to finalize the settlement agreement based on the agreement the parties achieved on November 23, 2016.  Plaintiff, however, is insisting that the parties never reached a settlement in this matter and that Plaintiff now wishes to pursue additional discovery, and possibly to seek leave to file another Amended Complaint asserting class action claims.  Defendants are confident such a claim is frivolous and respectfully submit that Plaintiff is wrong in opposing the settlement as a matter of settled contract law governing settlements.

II.  **DISCUSSION**

The principal settlement terms in this matter were unambiguously agreed upon and constitute an enforceable settlement agreement.  In this case, the parties agreed in late 2016 to

the essential terms of the settlement agreement which involved the Defendants paying the Plaintiff $5,000.00 in exchange for a release from Plaintiff. The manner in which the settlement payment is reported to the IRS or the scope of the release is simply not an essential term for a settlement agreement.

A settlement agreement is a form of a contract and courts therefore look to general principles of local contract law to resolve disputes over such agreements. Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006). New Jersey has a strong policy in favor of settlements. McDonnell v. Engine Distributors, No. Civ. 03-1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007), (J. Rodriguez)[1], aff'd, 314 F. App'x 509 (3d Cir. 2009) (citing Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990)). "[W]here the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div.), certif. denied, 134 N.J. 477 (1993) (cited in Deb Associates v. Forever Young Medical Daycare, LLC, 2012 WL 2579496, 3  (N.J .Super. App. Div. 2012)); see also Willingboro Mall, Ltd. v. 240/242 Franklin Avenue, L.L.C. 421 N.J. Super. 445, 453 (App. Div. 2011) ("[A]n agreement to resolve a matter will be enforced as long as the agreement addresses the principal terms required to *resolve the dispute* . . . The addition of terms to effectuate the settlement that do not alter the basic agreement will not operate to avoid enforcement of an agreement to settle a litigated matter.") (emphasis added) (citing Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992); Bistricer v. Bistricer, 231 N.J. Super. 143, 148-151 (Ch. Div. 1987); Berg Agency v. Sleepworld–Willingboro, Inc., 136 N.J. Super. 369, 376–77 (App. Div. 1975)). Further, a

---

[1] The unpublished federal District Court opinions cited are submitted herewith, attached as Exhibit M to the Jaitly Certification.

settlement agreement that resolves litigation will be enforced "absent a demonstration of 'fraud or other compelling circumstances[.]'" Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div.), certif. denied, 94 N.J. 600 (1983); see also Arboretum Gardens & Landscaping, LLC v. Glazer, 2010 WL 4117104, at *2 (N.J. Super. App. Div. 2010) (discussing same, citing cases).

Additionally, New Jersey courts will enforce a settlement so long as the parties mutually agree on the *essential terms*. See Bistricer, 231 N.J. Super. at 148 (emphasis added). In Bistricer, the court enforced a settlement where basic terms were entered on the record,[2] despite the plaintiffs' subsequent objection to several items in the defendants' proposed settlement stipulation. Id. at 151. The plaintiffs claimed that their assent on the record was limited to a mere "framework of a settlement," rather than a binding agreement. Id. Because the defendants' proposed stipulation contained terms to which they objected, the plaintiffs refused to sign it and thus concluded they were not bound by the agreement placed on the record. Id. The court, however, noted that the plaintiffs' objections pertained to either new terms they now sought for the first time or to matters affecting only the agreement's implementation. Id. at 48. As such, they were not essential terms in the settlement. Id.

As a recent decision from the federal court in New Jersey held, the tax treatment of a settlement is not an essential term but, rather, a detail regarding how the settlement will be implemented. See Natale v. E. Coast Salon Servs., Inc., No. Civ. 13-1254 (NLH/JS), 2016 WL 659722, at *2 (D.N.J. Feb. 18, 2016); Josifovich v. Secure Computing Corp., No. Civ. 07-5469FLW, 2009 WL 2390611, at *2 (D.N.J. July 31, 2009)(observing that "terms relating to the tax treatment of a settlement agreement are not considered essential, but rather are part of the implementation of the settlement agreement").

---

[2] Similarly here, the Plaintiff's consent to the basic terms of the settlement was contained in counsels' December, 2016 e-mails. See, infra.

In the Natale case – which is strikingly similar to this instant matter – the parties had reached an agreement on the amount of settlement during a pre-trial conference.  Natale, 2016 WL 659722, at *2   The parties later disputed whether they reached an agreement on the tax treatment—as between W-2 withholdings and reporting and 1099 reporting—and further disputed which tax treatment and reporting was proper under the law.  Id.  In granting the employer's motion to enforce the settlement agreement, the Natale court ruled that the lack of a specific agreement on tax treatment of a settlement payment did not suggest that there was not an enforceable settlement agreement but, rather, merely reflected a dispute over the details concerning how the agreed-upon settlement would be implemented.  Id.

Similarly, in McDonnell, this Court held that the parties had an enforceable settlement agreement when the parties agreed on the essential terms of their settlement, which included the payment amount, a non-disparagement provision, and a non-disclosure provision.  2007 WL 2814628, at *3.  The parties in McDonnell had settled on the eve of trial and the record indicated that the parties had reached an agreement as to these three terms.  Id.  The defendants, who argued that the parties did not have an enforceable settlement, stated that the differences between the terms in the parties' proposed agreements demonstrated that they never achieved a "meeting of the minds" but merely exchanged an offer and counteroffer.  Id.  Your Honor, in McDonnell, however, disagreed and held that because the parties agreed to the three terms they had an enforceable settlement agreement as to those terms.  Id. at *8.  The fact that the parties' proposed settlement agreements varied substantially with one another "in no way disturbs the validity of that agreement."  Id.  The court further stated that the "disputed terms—concerning the scope of the release, ensuring payment, tax treatment, indemnification, and the scope of confidentiality— all speak to the settlement's implementation.  *They are not, however, essentials of the*

*settlement*." Id. (emphasis added).  Therefore, this Court in McDonnell concluded that the settlement agreement as to the three terms was enforceable.

That same reasoning applies to this case.  There is no dispute that the parties reached an agreement on all of the essential terms of the settlement on November 23, 2016 when the parties agreed that Defendants would pay Plaintiff $5,000.00 in exchange for a release from Plaintiff for "all claims brought, or which could have been brought, to date, including counsel fees and costs."  See Ex. F.  Moreover, Plaintiff's counsel expressly agreed to these terms in an email on the same date, Id., and reiterated that the parties had reached agreement on December 15, 2016.  See, Ex. I.

Plaintiff has now taken the position that the parties never agreed to a settlement because the parties disagreed on certain terms in the proposed draft settlement documents.  These terms, however, relate to the settlement's implementation and, therefore, are not essential terms of the settlement.  Similar to the McDonnell case, Plaintiff here is arguing that the parties never reached an enforceable settlement agreement because the parties disagreed on the tax treatment of the settlement payment and the scope of the release.  The McDonnell court, however, dismissed that very same argument stating that even if the parties disagree on terms related to the *implementation* of the settlement, it does not disrupt the *validity* of the settlement if the parties reached agreement on the essential terms of the settlement.  Furthermore, McDonnell specifically held that terms like the tax treatment of the settlement payment and the scope of the release are not essential terms to a settlement agreement.  As such, Plaintiff's argument that the parties did not achieve "a meeting of the minds" is meritless.

Furthermore, even if it were expedient to do so, Defendants could not agree to a settlement term that contravenes the law.  Plaintiff wanted Defendants to agree to the fact that

the emotional distress component of the settlement payment is not taxable.  This would clearly contravene IRS regulations.  Specifically, the IRS requires that if the proceeds of a settlement for emotional distress do not originate from a personal physical injury or physical sickness, an individual must declare the settlement payment as income.  See 26 U.S.C. § 104(a)(2), cmt ("emotional distress shall not be treated as a physical injury or physical sickness"); see also Publication 4345 (Rev. 12-2016)(Jaitly Cert. ¶ 18; Ex. L)("if the proceeds you receive for emotional distress or mental anguish do not originate from a personal physical injury or physical sickness, you must include them in your income").  In this case, there is no alleged physical injury.  Plaintiff only claims he suffered emotional distress as a result of lost wages.  Plaintiff would have Defendants cooperate in a clear violation of the tax code.  This Defendant cannot do.

Accordingly, Defendants respectfully request that the Court enforce the parties' settlement agreement and grant Defendants' motion.

> DRINKER BIDDLE & REATH LLP
> 600 Campus Drive
> Florham Park, NJ 07932-1047
>
>
> By: */s/ John A. Ridley*
>     John A. Ridley
>     Vik C. Jaitly

Date:   April 26, 2017