John Ridley (ID No. 249761968)
John.Ridley@dbr.com
Vik C. Jaitly (ID No. 061682013)
Vik.Jaitly@dbr.com
Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, NJ  07932-1047
Phone:  (973) 549-7000
Fax:  (973) 360-9831

*Attorneys for Defendants*
*Postal Transport, Inc.*
*Clifford Finkle IV*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **KENNETH HOSFELD,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **No. 1:15-cv-07497-JHR-KMW** |
| : | |
| **POSTAL TRANSPORT, INC.,** : | |
| **CLIFFORD FINKLE IV, AND** : | |
| **JOHN DOES 1-10,** : | |
| : | |
| **Defendants.** : | |
| : | |

## <u>CERTIFICATION OF VIK C. JAITLY, ESQ., IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT</u>

VIK C. JAITLY, being of full age, does hereby certify and state that I have personal knowledge of the following:

1. I am an attorney-at-law of the State of New Jersey and an associate at the law firm of Drinker Biddle & Reath LLP, attorneys for Defendants Postal Transport, Inc. and Clifford Finkle IV ("Defendants").  I make this certification in support of Defendants' Motion to Enforce Settlement Agreement.

2.  In his Amended Complaint, Plaintiff alleges, among other things, that Defendants violated the Fair Labor Standards Act by failing to pay Plaintiff the proper wage rate for hours worked.  (Ex. A).

3.  Mr. Hosfeld was employed by Postal Transport to transport mail pursuant to a contract awarded by the U.S. Postal Service under the Contract Services Act, pursuant to which the contract sets the drivers' pay and benefits rates.

4.  During the initial exchange of written discovery, Defendants produced documents showing that, based on an analysis it had performed, Plaintiff would be entitled to, *at most*, $1,400.40 if he prevailed on his claims.  (Ex. B).

5.  Defendants revised this amount on September 2, 2016 to $1,061.00 in an email to Plaintiff's counsel.  (Ex. C).

6.  Plaintiff's counsel responded and stated that she believed that Plaintiff was owed at least a total of $1,584.63. (Ex. D).

7.  Having a good understanding of the Plaintiff's claims, Defendants served an Offer of Judgment on September 30, 2016 in the amount of $2,000.00.  (Ex. E).

8.  Shortly thereafter, the parties engaged in settlement discussions and on November 23, 2016 Plaintiff agreed to settle the matter for $5,000.00 in exchange for a release from Plaintiff on "all claims brought, or which could have been brought, to date, including counsel fees and costs."  Plaintiff's counsel confirmed the parties' agreement in an email on the same date in which she wrote:  "Yes, agreed."  (Ex. F).

9.  Defendants then sent a draft settlement agreement memorializing the agreement to Plaintiff on December 5, 2016.  (Ex. G).

10. Plaintiff sent comments on the draft settlement agreement on December 15, 2016.  (Ex. H).

11. The two main provisions the parties disagreed on were: (1) whether, as a matter of law, the settlement proceeds allocated to the Form 1099 payment would be considered taxable income, given that Plaintiff's "damages" do not originate from a personal physical injury; and (2) whether Defendants would provide a mutual release to Plaintiff.

12. Specifically, Plaintiff wanted Defendants to agree that the settlement payment was not taxable. Defendants clearly indicated to Plaintiff on numerous occasions that the emotional distress (as well as the back pay) component of the settlement payment is in fact taxable based on IRS regulations; and that Defendants could not agree to it being treated as non-taxable in the agreement.

13. On the same day that Plaintiff forwarded comments to the draft settlement agreement, Plaintiff's counsel also informed Defendants that she "will notify the court today via letter and cc [Defendants' counsel] that we have reached an agreement and are working on the written document." (Ex. I).

14. Apparently, Plaintiff's counsel never did notify the court of the parties' settlement.

15. However, a few days later on December 21, and because the parties disagreed on certain non-essential provisions in the settlement agreement, primarily Plaintiff's counsel's insistence that "emotional distress is not taxable" Plaintiff's counsel announced that the "settlement is off." (Ex. J).

16. Subsequently, in an effort to bring the matter to a close, Defendants informed Plaintiff's counsel that Defendants agreed to Plaintiff's proposed W-2 and 1099 allocation of the settlement proceeds, so long as Plaintiff agreed to be responsible for any tax payments owed as a result of the settlement. Furthermore, Defendants also informed Plaintiff's counsel that

it would provide Plaintiff a mutual release as Plaintiff as requested, therefore, resolving any issues Plaintiff had with the draft settlement agreement.

17. After communicating this to Plaintiff's counsel, Defendants sent Plaintiff an updated settlement agreement reflecting these changes on February 24, 2017.  (Ex. K).

18. Attached at Exhibit L is a true and correct copy of the IRS Publication 4345 (Rev. 12-2016), cited in Defendants' brief.

19. Attached at Exhibit M are true and correct copies of the unpublished federal District Court decisions cited in Defendants' brief.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  April 26, 2017                    _/s/ Vik C. Jaitly_____
                                          Vik C. Jaitly



LaVan Law
Julie A. LaVan, Esq.
Alaina A. Gregorio, Esq.
271 West Main Street
Moorestown, NJ 08057
856-235-4079 (Phone)
856-235-4018 (Fax)
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| KENNETH HOSFELD | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.    1:15-cv-07497-JHR-KMW |
| | : | |
| POSTAL TRANSPORT, INC., | : | U.S.D.J. |
| CLIFFORD FINKLE IV, AND | : | |
| JOHN DOES 1-10 | : | U.S.M.J. Karen M. Williams |
| | : | |
| Defendants. | : | |
| | : | **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff, Kenneth Hosfeld, by and through counsel, LaVan Law, upon personal knowledge as to himself, brings this action against Defendants Postal Transport, Inc., Clifford Finkle IV, and John Does 1-10 and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this lawsuit seeking recovery against Defendants for Defendants' violation of the Fair Labor Standards Act, as amended (the "FSLA" or the "Act") 29 U.S.C. §§ 201 *et seq.* and the New Jersey State Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.* ("NJWHL").

1

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and by 29 U.S.C. § 216(b).

3. This Court has subject matter jurisdiction over Plaintiff's NJWHL claims pursuant to 28 U.S.C. §§ 1332 and 1367.

4. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

5. Plaintiff is an individual residing in Camden County, New Jersey.

6. Defendants are within the personal jurisdiction and venue of this Court. Defendants directly or indirectly acted in the interest of an employer towards Plaintiff, at all material times, including without limitation directly or indirectly controlling the terms of employment of Plaintiff.

## PARTIES

7. Defendant, Postal Transport, Inc., ("Defendant Corp.") is a New Jersey Corporation with its principal place of business located at 435 Allwood Road, Clifton, New Jersey 07012.

8. Defendant, Clifford Finkle IV, is the Chief Executive Officer (CEO) of Defendant Corp.

9. Defendants, John Does 1-10, are supervisors, officers or administrators of Defendant Corp.

10. Plaintiff, Kenneth Hosfeld, ("Plaintiff") was hired by Defendant Corp. on or about January 1, 2015 as a truck driver.

## FACTS

11. Upon information preliminarily available, and subject to discovery in this cause, Defendants did not properly compensate Plaintiff, and several other similarly situated employees, for all hours worked in a work week, including failure to compensate for overtime hours worked in a work week and provide compensation for health care benefits.

12. Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, NJWHL, and Affordable Care Act, 26 U.S.C.A. § 4980H ("ACA") as described herein.

13. At all times material hereto, Plaintiff and all similarly situated employees were performing their duties for the benefit of and on behalf of Defendant Corp.

14. Plaintiff, and other similarly situated employees, were to be compensated at a rate of $21.25 per hour for up to 40 hours a week plus an additional $4.99 per hour in place of providing Plaintiff, and other similarly situated employees, with health insurance benefits.

15. From January 2015 to the present, Defendants compensated Plaintiff at various rates less than the $21.25 per hour and/or less than the additional $4.99 per hour in place of health insurance benefits.

16. From January 2015 to the present, Defendants have not paid Plaintiff, and similarly situated employees, the full amount of wages due at least twice a month as required under NJWHL.

17. Defendants wrongfully retained money earned by Plaintiff for several months, and still retain this money to date, in violation of the FLSA and NJWHL.

18. Plaintiff reported this conduct to his direct supervisor and corporate officers.
Defendants acknowledged owing Plaintiff, and similarly situated employees,
compensation, but nonetheless have failed to compensate them.

19. Defendants failed to pay Plaintiff, and similarly situated employees, overtime
compensation in violation of the FLSA and NJWHL.

20. Defendants failed to provide health insurance benefits and/or the full amount of
compensation in place of health insurance benefits in violation of the FLSA and ACA.

21. This action is brought to recover from Defendants all compensation owed to Plaintiff
including overtime compensation, liquated damages, and the costs and reasonable
attorneys' fees pursuant to the FLSA, NJWHL, and ACA.

22. The records concerning the number of hours worked by Plaintiff and the discrepancy in
rate of pay is in the possession and custody of Defendants.

23. At all times pertinent to this complaint, Defendants failed to comply with the FLSA,
NJWHL, and ACA as Plaintiff and similarly situated employees, performed services and
labor for Defendants for which Defendants made no provision to pay Plaintiff, and
similarly situated employees, the compensation which he was lawfully entitled to for all
hours worked including those in excess of forty (40) within a work week.

24. The additional persons who may become Plaintiffs in this action are Defendants' non-
exempt employees who have not received all compensation, including overtime
compensation, for the hours worked in one or more work period.

25. After filing a claim for the unpaid wages and statutory violations, Defendants began to
retaliate against Plaintiff.

26. Plaintiff's daily route was changed and the new route day shift instead of night shift
and paid less per hour then his usual route.

4

27. Plaintiff was forced to take a random drug test, but Defendants failed to provide him the necessary paperwork for the drug test. After being advised by the company performing the drug test that he could not complete the test without the paper work, he advised Defendants.

28. Defendants continued to maintain that he had to take the drug test and refused to provide the paperwork.

29. Defendants through the Safety Department representative advised Plaintiff that he was fired on or about January 23, 2016 for failing to comply with the drug test.

30. Defendants' manager, Ray Fowler, later advised Plaintiff he could return to work.

31. Defendants refused to provide Plaintiff with new trailer registration and forced him to drive a trailer with expired registration from February 29, 2016 until March 18, 2016.

32. Defendants retaliation is a further violation of state and federal statutes.

## COUNT I
### VIOLATION OF NJWHL 34:11-4.2
### FAILURE TO TIMELY PAY FULL AMOUNT OF WAGES

33. Plaintiff re-alleges, and incorporates here by reference, all allegations contained in Paragraphs 1 through 23 above.

34. Plaintiff is entitled to be paid his full amount of compensation at least twice a month.

35. Defendants knowingly and willfully failed to fully compensate Plaintiff at least twice a month.

36. Defendants' conduct is in violation the NJWHL.

37. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered damages, including but not limited to past lost earnings.

38. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff demands judgment against Defendants for payment of compensation of all past hours worked up to forty hours per work week for which he has not been fully compensated, all overtime hours at one and one-half his regular rate of pay for all hours worked beyond forty hours per work week, liquidated damages, reasonable attorneys' fees and costs of suit, and for all other appropriate relief.

## COUNT II
### RECOVERY OF OVERTIME COMPENSATION
### <u>PURUSANT TO FLSA</u>

39. Plaintiff re-alleges, and incorporates here by reference, all allegations contained in Paragraphs 1 through 29 above.

40. Plaintiff is entitled to be paid time and one-half of his regular rate of pay for each overtime hour worked per work period.

41. Defendants knowingly and willfully failed to pay Plaintiff at time and one half of his regular pay for his overtime hours worked in a work period

42. By reason of the said intentional, willful, and unlawful acts of Defendant, Plaintiff has suffered damages plus incurring costs and reasonable attorneys' fees.

43. As a result of Defendants' willful violations of the Act, Plaintiff is entitled to liquated damages.

44. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff demands judgment against Defendants for payment of compensation of all past hours worked up to forty hours per work week for which he has not been fully compensated, all overtime hours at one and one-half his regular rate of pay for all hours worked beyond forty hours per work week, liquidated damages, reasonable attorneys' fees and costs of suit, and for all other appropriate relief.

6

## COUNT III
## RECOVERY OF OVERTIME COMPENSATION
## PURUSANT TO NJWHL

45. Plaintiff re-alleges, and incorporates here by reference, all allegations contained in Paragraphs 1 through 35 above.

46. Defendants' aforementioned conduct is in violation the NJWHL.

47. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered damages, including but not limited to past lost earnings.

48. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff demands judgment against Defendants for payment of compensation of all past hours worked up to forty hours per work week for which he has not been fully compensated, all overtime hours at one and one-half his regular rate of pay for all hours worked beyond forty hours per work week, liquidated damages, reasonable attorneys' fees and costs of suit, and for all other appropriate relief.

## COUNT IV
## VIOLATIONS UNDER THE AFFORDABLE CARE ACT
## PURUSANT TO FLSA AND ACA

49. Plaintiff re-alleges, and incorporates here by reference, all allegations contained in Paragraphs 1 through 39 above.

50. Defendants' failure to compensate Plaintiff, and similarly situated employees for their health benefits is in violation the Affordable Care Act ("ACA") and the FLSA.

51. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered damages, including but not limited to past lost earnings.

52. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff demands judgment against Defendants for payment of compensation of all past hours worked up to forty hours per work week for which he has not been fully compensated, all overtime hours at one and one-half his regular rate of pay for all hours worked beyond forty hours per work week, liquidated damages, reasonable attorneys' fees and costs of suit, and for all other appropriate relief.

## COUNT V
## VIOLATION OF NJWHL 34:11-4.2
## RETALIATION PURSURANT NJWHL, FLSA, AND ACA

53. Plaintiff re-alleges, and incorporates here by reference, all allegations contained in Paragraphs 1 through 52 above.

54. After Plaintiff made a claim under NJWHL, FLSA, AND ACA, Defendants retaliated and continue to retaliate against Plaintiff in further violation of NJWHL, FLSA, AND ACA.

55. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered damages, including but not limited to past lost earnings.

56. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff demands judgment against Defendants for payment of compensation of all past hours worked up to forty hours per work week for which he has not been fully compensated, all overtime hours at one and one-half his regular rate of pay for all hours worked beyond forty hours per work week, liquidated damages, reasonable attorneys' fees and costs of suit, and for all other appropriate relief.

## COUNT VI
## CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA)
## RETALIATION

57. Plaintiff re-alleges, and incorporates here by reference, all allegations contained in Paragraphs 1 through 56 above.

58. After Plaintiff blew the whistle on Defendants violations of the NJWHL, FLSA, and ACA Defendants retaliated and continue to retaliate against Plaintiff in violation of CEPA.

59. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered damages, including but not limited to past lost earnings.

60. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff demands judgment against Defendants for payment of compensation of all past hours worked up to forty hours per work week for which he has not been fully compensated, all overtime hours at one and one-half his regular rate of pay for all hours worked beyond forty hours per work week, liquidated damages, front pay, back pay, punitive damages, reasonable attorneys' fees and costs of suit, and for all other appropriate relief.

## **Jury Demand**

Plaintiff hereby demands trial by jury of all issues in this action.

Dated: March 18, 2016

Respectfully submitted,

/s/ Alaina A. Gregorio, Esq.
Alaina A. Gregorio, Esq.
Julie A. LaVan, Esq.
LaVan Law
271 West Main Street
Moorestown, NJ 08057
Telephone: (856) 235-4079
*Attorneys for Plaintiff*

B

| | |
|---|---|
| **From:** | Salvato, Pamela on behalf of Ridley, John A. |
| **Sent:** | Tuesday, May 17, 2016 4:55 PM |
| **To:** | Alaina Gregorio |
| **Cc:** | Jaitly, Vik C.; Ridley, John A. |
| **Subject:** | Hosfeld v. Postal Transport |
| **Attachments:** | 20160517155212.pdf |

Offer and Negotiation Pursuant to F.R.Ev. 408

Alaina:

You will recall that defendants have offered $2,500 to settle all claims being asserted by Mr. Hosfeld. We continue to believe that this is substantially more than any potential liability of defendants; indeed, the offer is almost double our calculation of what Mr. Hosfeld might, at best, be able to recover.

In that regard, I am attaching hereto a spreadsheet which we have prepared which covers the period from January 2015 through mid-February 2016 and addresses the maximum allowable rate to which Mr. Hosfeld might have been entitled during each pay period given the contracts under which he was driving.

This is by no means a concession that Mr. Hosfeld is entitled to the amount reflected, but simply our analysis of the best he might hope to achieve if he were to prevail on his claims. As you will see, the total difference between his actual and projected pay for that entire period is $1,400.40.

If Mr. Hosfeld can provide us with any documented analysis of any entitlement beyond that reflected in the attached spreadsheet, please have him do so. Otherwise, if defendants' offer of $2,500 in full settlement of all claims, for liability, costs and counsel fees, is not accepted, we anticipate serving an Offer of Judgment which would, in turn, create potential liability on the part of Mr. Hosfeld for our costs going forward.

I hope to hear from you shortly.

Very truly yours,

John A. Ridley

**John A. Ridley**

**Drinker Biddle & Reath LLP**
600 Campus Dr.
Florham Park, NJ 07932-1047
**(973) 549-7030** *phone*
**(973) 360-9831** *fax*
John.Ridley@dbr.com
www.drinkerbiddle.com

1

| Start Date | 01/22/2015 | | | | | $22.70 | $21.25 | | | |
| End Date | 02/18/2016 | | | | | | | | | |

| Last Name | First Name | Pay Date | Rate | Regular Hrs | 18 - 07041 | 20 - ALBANY-203 | Gross Pay | Correct Rate | Difference Owed |
|---|---|---|---|---|---|---|---|---|---|
| Hosfield | 2-Kenneth | 01/22/2015 | 20.67 | 48.25 | 0.00 | 0.00 | $ 997.33 | 21.65 | 0.97995 | 47.2825 |
| Hosfield | 2-Kenneth | 02/05/2015 | 20.67 | 92.00 | 0.00 | 0.00 | $ 1,901.65 | 21.65 | 0.97993 | 90.15 |
| Hosfield | 2-Kenneth | 02/19/2015 | 20.67 | 82.25 | 0.00 | 0.00 | $ 1,700.11 | 21.65 | 0.97997 | 80.6025 |
| Hosfield | 2-Kenneth | 03/05/2015 | 20.67 | 89.50 | 0.00 | 0.00 | $ 1,849.97 | 21.65 | 0.97994 | 87.705 |
| Hosfield | 2-Kenneth | 03/19/2015 | 20.67 | 107.00 | 0.00 | 0.00 | $ 2,211.69 | 21.65 | 0.98000 | 104.86 |
| Hosfield | 2-Kenneth | 04/02/2015 | 20.67 | 98.00 | 0.00 | 0.00 | $ 2,025.66 | 21.65 | 0.98000 | 96.04 |
| Hosfield | 2-Kenneth | 04/16/2015 | 20.67 | 82.00 | 0.00 | 0.00 | $ 1,694.94 | 21.65 | 0.98000 | 80.36 |
| Hosfield | 2-Kenneth | 04/30/2015 | 20.67 | 84.00 | 0.00 | 0.00 | $ 1,736.28 | 21.65 | 0.98000 | 82.32 |
| Hosfield | 2-Kenneth | 05/14/2015 | 20.67 | 54.00 | 0.00 | 0.00 | $ 1,116.18 | 21.65 | 0.98000 | 52.92 |
| Hosfield | 2-Kenneth | 05/28/2015 | 20.67 | 92.00 | 0.00 | 0.00 | $ 1,901.64 | 21.65 | 0.98000 | 90.16 |
| Hosfield | 2-Kenneth | 06/11/2015 | 20.64 | 97.00 | 0.00 | 0.00 | $ 2,001.64 | 21.65 | 1.01454 | 98.41 |
| Hosfield | 2-Kenneth | 06/25/2015 | 20.41 | 85.00 | 0.00 | 0.00 | $ 1,735.13 | 21.65 | 1.23671 | 105.12 |
| Hosfield | 2-Kenneth | 07/09/2015 | 21.26 | 75.00 | 0.00 | 0.00 | $ 1,594.16 | 21.65 | 0.39453 | 29.59 |
| Hosfield | 2-Kenneth | 07/23/2015 | 21.25 | 80.00 | 0.00 | 0.00 | $ 1,700.00 | 21.65 | 0.40000 | 32 |
| Hosfield | 2-Kenneth | 08/06/2015 | 21.25 | 90.50 | 0.00 | 0.00 | $ 1,923.13 | 21.65 | 0.39994 | 36.195 |
| Hosfield | 2-Kenneth | 08/20/2015 | 21.25 | 41.50 | 0.00 | 0.00 | $ 881.88 | 21.65 | 0.39988 | 16.595 |
| Hosfield | 2-Kenneth | 09/03/2015 | 21.25 | 130.50 | 0.00 | 0.00 | $ 2,773.13 | 21.65 | 0.39996 | 52.195 |
| Hosfield | 2-Kenneth | 09/17/2015 | 21.25 | 72.00 | 0.00 | 0.00 | $ 1,530.00 | 21.65 | 0.40000 | 28.8 |
| Hosfield | 2-Kenneth | 10/01/2015 | 21.25 | 80.00 | 0.00 | 0.00 | $ 1,700.00 | 21.65 | 0.40000 | 32 |
| Hosfield | 2-Kenneth | 10/15/2015 | 21.25 | 81.25 | 0.00 | 0.00 | $ 1,726.56 | 21.65 | 0.40003 | 32.5025 |
| Hosfield | 2-Kenneth | 10/29/2015 | 21.22 | 93.25 | 0.00 | 0.00 | $ 1,979.07 | 21.65 | 0.42673 | 39.7925 |
| Hosfield | 2-Kenneth | 11/12/2015 | 21.25 | 88.25 | 0.00 | 0.00 | $ 1,875.31 | 21.65 | 0.40003 | 35.3025 |
| Hosfield | 2-Kenneth | 11/25/2015 | 21.25 | 97.50 | 0.00 | 0.00 | $ 2,071.88 | 21.65 | 0.39995 | 38.995 |
| Hosfield | 2-Kenneth | 12/10/2015 | 21.25 | 0.00 | 0.00 | 99.50 | $ 2,114.37 | 21.65 | 0.40005 | 0 |
| Hosfield | 2-Kenneth | 12/24/2015 | 21.25 | 0.00 | 0.00 | 105.50 | $ 2,241.88 | 21.65 | 0.39995 | 0 |
| Hosfield | 2-Kenneth | 01/07/2016 | | 0.00 | 7.50 | 97.25 | $ 2,576.81 | 21.65 | 0.40000 | 0 |
| Hosfield | 2-Kenneth | 01/21/2016 | | 0.00 | 0.00 | 87.50 | $ 1,859.38 | 21.65 | 0.40000 | 0 |
| Hosfield | 2-Kenneth | 02/04/2016 | 21.25 | 19.50 | 0.00 | 80.00 | $ 2,284.38 | 21.65 | 0.40000 | 7.8 |
| Hosfield | 2-Kenneth | 02/18/2016 | 21.25 | 6.75 | 0.00 | 96.00 | $ 2,183.44 | 21.65 | 0.40000 | 2.7 |
| Grand Totals | | | | | | | | | | |
| Total | | | | 1,766.00 | 7.50 | 557.75 | 53,887.60 | | | 1400.398 |

Karina Uribe

5/17/2016





September 12, 2016    Practical.  Powerful.

*Please reply to Moorestown | lavanlaw.com*

**Moorestown, New Jersey Office**
271 W. Main Street | Moorestown, NJ 08057
609-593-0000 (o) | 856-235-4018 (f)

**Philadelphia Office**
1515 Market Street | Suite 1200 | Philadelphia, PA 19102
267-313-1300 (o)

**North Jersey Office**
1000 Page Avenue | Lyndhurst, NJ 07071
908-315-5700 (o)

**New York Office**
170 Keyland Court | Bohemia, NY 11716
201-431-7800 (o)

VIA ELECTRONIC AND REGULAR MAIL

John Ridley
Drinker Biddle and Roth
600 Campus Drive
Florham Park, NJ, 07932-1047

  **Re:** *Kenneth Hosfeld v. Portal Transport, Inc. et al*
     *Civil Action No. 1:15-CV-07497-JHR-KMW*

**FOR SETTLEMENT PURPOSES ONLY**

Dear Mr. Ridley,

  Please accept this letter as a formal demand on behalf of Plaintiff in the above captioned matter. Plaintiff has reviewed the spreadsheet you provided and we have prepared a spreadsheet of our own using the information received from ADP. A copy of this spreadsheet is attached here to.

  Based on our calculations, $991.29 is owed to Mr. Hosfeld in unpaid wages and $593.33 is owed in unpaid health benefits. The total outstanding to Mr. Hosfeld is $1584.63. In failing to make these payments to Mr. Hosefeld, Defendants violated NJWHL, FLSA, and ACA. As a result of these violations, my client is also entitled to attorney's fees. As such, Plaintiff seeks a total of $12,663.00 for the reasonable attorney's fees and $400 in costs of filing for a total of $13,063.00 in costs and fees. In support of Plaintiff's attorney fee request, a copy of counsel's redacted timesheets is also attached hereto. As you will see from the attached, non-attorney work has been deducted from this total.

  For settlement purposes only, Plaintiff demands a total of $1584.64 in unpaid wages and health benefits and $13,063.00 in attorney's fees and costs. In exchange for the settlement amount, Plaintiff will also agree to dismiss all remaining claims with prejudice including his CEPA claim.

  Thank you for your time and consideration in this matter, should you have any questions, please do not hesitate to contact our office.

      Very truly yours,

      Alaina Gregorio, Esq.



| From: | Salvato, Pamela on behalf of Ridley, John A. |
|---|---|
| Sent: | Friday, September 02, 2016 12:09 PM |
| To: | Alaina Gregorio |
| Cc: | Ridley, John A. |
| Subject: | Hosfeld |
| Attachments: | 20160831155442.pdf; Defts Prod of Docs to Plaintiff (Postal 0001 through Postal 0043), 9-2.pdf |

Alaina:

Per our telephone discussion Wednesday afternoon, I am attaching hereto a spreadsheet dated 8/31/2016 which is, we believe, accurate with respect to all of the payments made to Mr. Hosfeld and the adjustments which we believe are appropriate to be made both with respect to his correct rate of pay and his claims for Health and Welfare. This spreadsheet replaces the one which we had sent you on May 17th in the context of settlement negotiations and is based upon the documents that we have assembled and are producing to you today.

You will see that the vast majority of Mr. Hosfeld's time was driving under the contract designated as "060ED". During the period between January and the end of June 2015, he was in fact paid at the rate of approximately $20.67 per hour for all hours worked. The correct rate set by the USPS during the period from January through June was $21.25 per hour. The spreadsheet shows the adjustment in the column "Owed 060ED". The USPS then made an adjustment (which Postal 0021 being produced will show) to the rate of $21.65 for each of the hours that drivers were to work under the 060ED contract. He worked under this contract from June through late November and then again briefly in February 2016. However, he was paid at the rate of $21.25. We don't know when we received the revised calculation document; however, we've made the adjustment on the spreadsheet starting in June. During this entire time, the correct Health and Welfare rate was $4.99 and we believe that he was credited with this on each paycheck. You said Wednesday that he had doubts about this. I'd ask you to have him review his documents to see whether there is any discrepancy on the H&W pay.

You'll also see that he worked very briefly on the "07041" contract and somewhat more extensively on the "ALBANY-203" contract. We have made the appropriate very minor adjustments where necessary.

In total, it appears that he is owed approximately $1,061.

It seems to me that the major issues for which he is claiming damages, other than this small amount of wage rate adjustment, is based on his allegation of time and a half for overtime and his claims with respect to not being credited for health and welfare. I've previously sent you a letter with the two federal Courts of Appeals decisions confirming our position that Mr. Hosfeld is entitled only to straight time for any overtime hours and he was paid at straight-time for all hours in excess of 40 per week. Also, document marked Postal 0021 shows that there is no incremental rate for overtime; thus the spreadsheet reflects that he got paid straight-rate for this time. And, as noted above, we don't believe there is any health and welfare adjustment necessary.

If this is the case, it would be very helpful to have Mr. Hosfeld confirm the figures in the attached spreadsheet, or show where he disputes them, and to propose a dollar settlement on the case for his alleged damages and, separately, for any legal fees for which a claim is being made.

Finally, I attach documents designated as Postal 0001 - 0043. These are also being sent, with a copy of this memo, by regular mail.

Best regards.

John

**John A. Ridley**

**Drinker Biddle & Reath LLP**
600 Campus Dr.
Florham Park, NJ 07932-1047
(973) 549-7030 *phone*
(973) 360-9831 *fax*
John.Ridley@dbr.com
www.drinkerbiddle.com

| Start Date | 01/22/2015 | | | | PAID BY POSTAL VIA ADP | | | | | 06GED | | 07041 | | ALBANY | | | | | |
| End Date | 02/18/2016 | | | | | 18 - 07041 $22.70 | 20 - ALBANY 203 $21.25 | | | | | | | | | | | | |
| Last Name | First Name | Pay Date | Rate | 06GED Hrs | 18 - 07041 | 20 - ALBANY 203 | Gross Pay | H&WF | Correct Rate | Correct H&WF | Correct Rate | Correct H&WF | Correct Rate | Correct H&WF | Owed 06GED | Owed 07041 | Owed 07041 HWF | Owed ALBANY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hosfeld | 2-Kenneth | 01/22/2015 | 20.67 | 49.25 | 0.00 | 0.00 | $ 997.33 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 27.98 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 02/05/2015 | 20.67 | 92.00 | 0.00 | 0.00 | $ 1,901.65 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 53.55 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 02/19/2015 | 20.67 | 82.25 | 0.00 | 0.00 | $ 1,700.11 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 47.70 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 03/05/2015 | 20.67 | 89.50 | 0.00 | 0.00 | $ 1,849.97 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 51.90 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 03/19/2015 | 20.67 | 107.00 | 0.00 | 0.00 | $ 2,211.69 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 62.06 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 04/02/2015 | 20.67 | 98.00 | 0.00 | 0.00 | $ 2,025.66 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 56.84 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 04/16/2015 | 20.67 | 82.00 | 0.00 | 0.00 | $ 1,694.94 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 47.55 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 04/30/2015 | 20.67 | 84.00 | 0.00 | 0.00 | $ 1,736.28 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 48.72 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 05/14/2015 | 20.67 | 54.00 | 0.00 | 0.00 | $ 1,116.18 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 31.32 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 05/28/2015 | 20.67 | 92.00 | 0.00 | 0.00 | $ 1,901.64 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 53.36 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 06/11/2015 | 20.64 | 87.00 | 0.00 | 0.00 | $ 2,691.64 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 59.41 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 06/25/2015 | 20.41 | 85.00 | 0.00 | 0.00 | $ 1,735.13 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 105.12 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 07/09/2015 | 21.26 | 75.00 | 0.00 | 0.00 | $ 1,594.16 | 4.99 | 21.65 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 29.59 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 07/23/2015 | 21.25 | 80.00 | 0.00 | 0.00 | $ 1,700.00 | 4.99 | 21.65 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 32.00 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 08/06/2015 | 21.25 | 90.50 | 0.00 | 0.00 | $ 1,923.13 | 4.99 | 21.65 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 36.19 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 08/20/2015 | 21.25 | 41.50 | 0.00 | 0.00 | $ 881.88 | 4.99 | 21.65 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 16.60 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 09/03/2015 | 21.25 | 130.50 | 0.00 | 0.00 | $ 2,773.13 | 4.99 | 21.65 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 52.19 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 09/17/2015 | 21.25 | 72.00 | 0.00 | 0.00 | $ 1,530.00 | 4.99 | 21.65 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 28.80 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 10/01/2016 | 21.25 | 80.00 | 0.00 | 0.00 | $ 1,700.00 | 4.99 | 21.65 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 32.00 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 10/15/2015 | 21.25 | 81.25 | 0.00 | 0.00 | $ 1,726.56 | 4.99 | 21.65 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 32.50 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 10/29/2015 | 21.22 | 93.25 | 0.00 | 0.00 | $ 1,979.07 | 4.99 | 21.65 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 39.79 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 11/12/2015 | 21.25 | 88.25 | 0.00 | 0.00 | $ 1,875.31 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 35.30 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 11/25/2015 | 21.25 | 97.50 | 0.00 | 0.00 | $ 2,071.88 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 38.99 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 12/10/2015 | 21.25 | 99.50 | 0.00 | 0.00 | $ 2,114.37 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 0.00 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 12/24/2015 | 21.25 | 105.50 | 0.00 | 0.00 | $ 2,241.88 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 0.00 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 01/07/2016 | 9.00 | 0.00 | 7.50 | 97.25 | $ 2,576.81 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 0.00 | 0.00 | 2.48 | 0 |
| Hosfeld | 2-Kenneth | 01/21/2016 | 21.25 | 0.00 | 0.00 | 87.50 | $ 1,859.38 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 0.00 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 02/04/2016 | 21.25 | 19.50 | 0.00 | 80.00 | $ 2,284.38 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 0.00 | 0.00 | 0.00 | 0 |
| Hosfeld | 2-Kenneth | 02/18/2016 | 21.25 | 6.75 | 0.00 | 96.00 | $ 2,183.44 | 4.99 | 21.25 | 4.99 | 22.70 | 5.32 | 21.25 | 4.99 | 0.00 | 0.00 | 0.00 | 0 |
| Grand Totals | | | | | | | | | | | | | | | | | | |
| Total | | | | 1,766.00 | 7.50 | 557.75 | $3,887.60 | | | | | | | | 1,068.30 | 0.00 | 2.48 | 0.00 |

Karina Uribe

8/31/2016





John A. Ridley
973-549-7030 Direct
973-360-9831 Fax
john.ridley@dbr.com

*Law Offices*

600 Campus Drive
Florham Park, NJ
07932-1047

973-549-7000 phone
973-360-9831 fax
www.drinkerbiddle.com

*A Delaware Limited
Liability Partnership*

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

September 30, 2016

VIA E-MAIL AND REGULAR MAIL

Alaina A. Gregorio, Esq.
LaVan Law
271 West Main Street
Moorestown, New Jersey 08057

     Re:    Kenneth Hosfeld v. Postal Transport, Inc., et al

Dear Ms. Gregorio:

    I am enclosing herewith an Offer of Judgment addressing, and seeking to extinguish, all of the claims asserted by the plaintiff Kenneth Hosfeld for damages and/or Court costs.  Please be guided accordingly.

             Very truly yours,

             John A. Ridley

JAR:phs
Enclosure
Cc:    Vik Jaitly, Esq. (w/enclosure)

*Andrew B. Joseph
Partner responsible for
Florham Park Office*

*Established 1849*

86639993.1

DRINKER BIDDLE & REATH LLP
A Delaware Limited Liability Partnership
600 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 549-7000
*Attorneys for Defendants Postal Transport, Inc. & Clifford Finkle IV*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KENNETH HOSFELD, | Civil Case No. 15-7497-JHR-KMW |
| Plaintiff, |  |
| v. |  |
| POSTAL TRANSPORT, INC., CLIFFORD FINKLE IV, AND JOHN DOES 1-10, |  |
| Defendants. |  |

### OFFER OF JUDGMENT TO KENNETH HOSFELD

TO:   Alaina A. Gregorio, Esq.
      LaVan Law
      271 West Main Street
      Moorestown, New Jersey 08057

Defendants Postal Transport, Inc. and Clifford Finkle IV ("Defendants") by and through their undersigned counsel, hereby offer pursuant to Rule 68 of the Federal Rules of Civil Procedure, to allow judgment to be taken against them, jointly, and in favor of Plaintiff Kenneth Hosfeld ("Plaintiff") with regard to all of Plaintiff's claims set forth in his First Amended Complaint in this matter in the total amount of $2,000.00 including all taxable Court costs. The sum set out in this Offer includes all taxable and recoverable costs incurred to date. This Offer is made in exchange for full and final satisfaction of any and all claims of the Plaintiff against Defendants (except any claim for attorneys fees).

86639365.1

This Offer of Judgment does not address, or cover, any claim for counsel fees made by Plaintiff or his counsel of record in this case.  Any such claim can be made by counsel to the Court, or by subsequent demand to, and negotiation with, counsel for the Defendants.

This Offer of Judgment is made for the purposes of Rule 68 of the Federal Rules of Civil Procedure only.  Neither it nor any judgment entered hereon shall, in this or in any other action or proceeding, be asserted or construed by Plaintiff or any other person or entity as an admission of any fact, legal conclusion, or liability on the part of Defendants.  However, evidence of this Offer of Judgment shall be admissible, in the event the Offer is not accepted, in a proceeding to determine costs.

Plaintiff may accept this Offer of Judgment by serving upon the undersigned counsel a written notice of acceptance.  This Offer of Judgment shall expire if not accepted within fourteen (14) days after service hereof.

If the judgment finally obtained by Plaintiff with regard to the claims set forth in his First Amended Complaint, if any, is not more favorable than this Offer of Judgment, Plaintiff shall pay the costs incurred by Defendants after the making of this Offer of Judgment in accordance with Rule 68 and any applicable statutes and/or regulations or law.

Dated:  September 30, 2016

s/      John A. Ridley
John A. Ridley, Esq.
**DRINKER BIDDLE & REATH LLP**
*A Delaware Limited Liability Partnership*
600 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 549-7000
Attorneys for Defendants Postal Transport, Inc. and
Clifford Finkle IV

86639365.1

## CERTIFICATE OF SERVICE

I, Pamela H. Salvato, hereby certify that on this date I caused a true and correct copy of the foregoing Offer of Judgment to be served upon counsel by electronic and U.S. Mail, first-class, postage prepaid, to the following:

Alaina A. Gregorio, Esq.
LaVan Law
271 West Main Street
Moorestown, New Jersey 08057

Dated: September 30, 2016

Pamela H. Salvato

86639365.1



| | |
|---|---|
| **From:** | Julie LaVan <julie@jlavanlaw.com> |
| **Sent:** | Wednesday, November 23, 2016 1:52 PM |
| **To:** | Ridley, John A. |
| **Cc:** | Jaitly, Vik C. |
| **Subject:** | Re: Hosfeld v. Postal Transport, Inc., et al |

Yes agreed.

LaVan Law
271 W. Main Street
Moorestown, NJ 08057

(856) 235-4079 office phone
(856) 235-4018 office fax
(609) 870-9832 cell phone

www.jlavanlaw.com

On Nov 23, 2016, at 11:44 AM, Ridley, John A. <John.Ridley@DBR.com> wrote:

> Finkle will pay $5000 for a release from all claims brought ,or which could have been brought, to date, including counsel fees and costs. If that's agreed I'll have Vik Jaitly prepare a Settlement Agreement and Release. Please confirm. John
>
> **From:** Julie LaVan [mailto:julie@jlavanlaw.com]
> **Sent:** Wednesday, November 23, 2016 10:28 AM
> **To:** Ridley, John A.
> **Subject:** RE: Hosfeld v. Postal Transport, Inc., et al
>
> John,
>
> I spoke to my client and he will agree to 5,000.00 nothing less.
>
> Please advise whether this is acceptable.
>
> Julie LaVan
>
> *New Jersey Office*
> 271 West Main St•Moorestown NJ 08057
> (856) 235-4079•Fax (856) 235-4018
>
> *Pennsylvania Office*
> 1515 Market Street,Suite 1200•Philadelphia, PA 19102
> (267) 313-1300
>
> *North Jersey Office*
> 1000 Page Ave•Lyndhurst, NJ 08057

(908) 315-5700

*New York Office*
170 Keyland Court•Bohemia, NY 11716
(201) 431-7800

Notice: This email transmission is protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521. The information contained in this email transmission is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended addressee, or this e-mail has been forwarded or copied without permission, please notify the sender, Julie LaVan, by telephone at 856-235-4079 and destroy the original email transmission.

This email does not create any attorney-client relationship. Unless you have a current, signed agreement of representation with LaVan Law, we are not your lawyers. Additionally, if this email is inadvertently sent, the privilege is not waived.
If this communication is related to a debt collections matter, please note, I am a debt collector. I am attempting to collect a debt. Any information obtained will be used for that purpose.

--------- Original Message ---------
Subject: Hosfeld v. Postal Transport, Inc., et al
From: "Ridley, John A." <John.Ridley@DBR.com>
Date: 11/22/16 3:41 pm
To: "julie@jlavanlaw.com" <julie@jlavanlaw.com>
Cc: "Ridley, John A." <John.Ridley@DBR.com>

Please see the attached.  Hard copy will follow by regular mail.

**John A. Ridley**

**Drinker Biddle & Reath LLP**
600 Campus Dr.
Florham Park, NJ 07932-1047
**(973) 549-7030** *phone*
**(973) 360-9831** *fax*
John.Ridley@dbr.com
www.drinkerbiddle.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Drinker Biddle & Reath LLP is a Delaware limited liability partnership. The partner responsible for the firm's Princeton office is Jonathan I. Epstein, and the partner responsible for the firm's Florham Park office is Andrew B. Joseph.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender at Drinker Biddle & Reath LLP by reply e-mail and delete the message. Thank you very much.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Drinker Biddle & Reath LLP is a Delaware limited liability partnership. The partner responsible for the firm's Princeton office is Jonathan I. Epstein, and the partner responsible for the firm's Florham Park office is Andrew B. Joseph.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender at Drinker Biddle & Reath LLP by reply e-mail and delete the message. Thank you very much.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



| | |
|---|---|
| **From:** | Jaitly, Vik C. |
| **Sent:** | Monday, December 05, 2016 4:22 PM |
| **To:** | Julie LaVan (Julie@JLaVanLaw.com) |
| **Cc:** | Ridley, John A. |
| **Subject:** | Hosfeld v. Postal Transport - settlement agreement |
| **Attachments:** | Hosfeld - Settlement Agreement and General Release.DOCX |

Hi Julie:

Attached is the settlement agreement we drafted memorializing the terms the parties agreed to.  Please review and let us know if you have any comments.  Please also note that our client has not yet reviewed this agreement and they will unlikely want any changes if we present them with a signed agreement from Mr. Hosfeld.

Additionally, please let us know if you have informed the Court that the parties have reached a settlement.

Thanks,
Vik


Vik Jaitly
**Drinker Biddle & Reath** LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
(215) 988-2799 *office*
Vik.Jaitly@dbr.com
www.drinkerbiddle.com

1

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Kenneth Hosfeld ("Mr. Hosfeld"), on one side, and Postal Transport, Inc. ("Postal Transport") and Clifford Finkle IV ("Mr. Finkle"), on the other side. Mr. Hosfeld, Mr. Finkle, and Postal Transport may each be referred to in this Agreement as a "Party" and together as the "Parties."

WHEREAS, a dispute has arisen between the Parties concerning Mr. Hosfeld's employment, which dispute is the subject of a lawsuit filed by Mr. Hosfeld in the United States District Court for the District of New Jersey, Camden Vicinage, and captioned <u>Kenneth Hosfeld v. Postal Transport, Inc., Clifford Finkle IV, and John Does 1-10</u>, Docket No.: 15-cv-07497 (the "Lawsuit");

WHEREAS, Postal Transport and Mr. Finkle deny that they violated any law or owe Mr. Hosfeld any compensation as alleged in the Lawsuit;

WHEREAS, the Parties wish to avoid the risks and costs of litigation and instead amicably resolve the Lawsuit and all outstanding disputes and issues between them and other Released Parties (defined in Section 7 below) subject to the terms and conditions set forth in this Agreement; and

WHEREAS, the Parties have agreed that Mr. Hosfeld's employment with Postal Transport shall conclude.

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, the adequacy of which Mr. Hosfeld acknowledges, and intending to be legally bound, the Parties agree as follows:

1.   **Dismissal with Prejudice.**  The Parties agree that the Lawsuit shall be dismissed with prejudice and without costs against any Party.  Mr. Hosfeld hereby authorizes his counsel, LaVan Law, to take any and all steps necessary to cause the full and final termination of the Lawsuit including, without limitation, executing and filing a "Stipulation of Dismissal with Prejudice and Without Costs."

2.   **Settlement Payment.**

a.   **Settlement Amount.**  Postal Transport shall issue a payment in the total amount of $5,000.00 (the "Settlement Amount").  The Settlement Amount shall constitute the entire payment from Postal Transport for the full and final settlement of the Lawsuit including, without limitation, claims for attorneys' fees and costs.  The Settlement Amount shall be paid as follows:

i.   Postal Transport shall issue to Mr. Hosfeld a check payable to "Kenneth Hosfeld" in the amount of five thousand dollars ($5,000.00), less all

applicable and legally required deductions and withholdings. An IRS Form W-2 will be issued to Mr. Hosfeld in connection with this payment.

b. **Timing.** Postal Transport shall issue the Settlement Amount to Mr. Hosfeld and his counsel within thirty (30) business days after Postal Transport's counsel receives the Agreement, executed by Mr. Hosfeld, and service of notice of the Court's entry of the "Stipulation of Dismissal with Prejudice and Without Costs."

3.  **Attorneys' Fees.** The Settlement Amount includes payment to LaVan Law and all attorneys who are members of, employed by or associated with that firm, and any other attorney, individual or entity who/that has in the past represented, and specifically, Alaina Gregorio (formerly of LaVan Law), or is currently representing, Mr. Hosfeld's interests, in full for all services performed and all costs incurred in the Lawsuit, whether performed or incurred before or after the date of this Agreement.

4.  **Tax Consequences.** Mr. Hosfeld agrees to pay any and all taxes (other than Postal Transport's employer payroll taxes) found to be owed from payments made pursuant to this Agreement and to indemnify and hold Postal Transport and the Released Parties harmless from any claims, assessments, demands, penalties and interest owed, or found to be owed, including any income tax liability, as a result of any payment made pursuant to this Agreement. In the event it is ultimately determined that any monies are due and owing with respect to the Settlement Amount, the validity of this Agreement shall not be affected in any way.

5.  **Arm's-Length Negotiations.** The Parties arrived at the settlement memorialized in this Agreement through arm's-length negotiations with full representation of counsel, taking into account all relevant factors, past, present and potential, and they believe in good faith that the terms of this Agreement are fair, adequate and reasonable.

6.  **Non-Admission.** Postal Transport and Mr. Finkle deny that it has wronged or harmed Mr. Hosfeld. It is understood and agreed that, by entering into this Agreement, Postal Transport and Mr. Finkle in no way admit any wrongdoing by reason of the matters alleged in the Lawsuit or by reason of any other matter. This Agreement is not, and shall not be construed as, an admission by Postal Transport or any of their current or former directors, officers, employees, representatives or agents, of any unlawful or improper conduct toward Mr. Hosfeld or anyone else. Mr. Hosfeld agrees that this Agreement shall not be offered, used or considered as evidence in any proceeding of any type against or involving any of the Released Parties, except to the extent necessary to enforce its terms.

7.  **Release of Claims.**

a. **Waiver/Release.** In consideration of the Settlement Amount and other benefits provided in this Agreement and intending to be legally bound, and except for the rights and obligations arising under this Agreement, Mr. Hosfeld hereby releases Postal Transport and all of Postal Transport's predecessors, successors, assigns, parents, subsidiaries, operating companies,

87063047.2

affiliates, insurers, and directors, and all of Postal Transport's respective current and former officers, employees, attorneys, representatives and agents (collectively, the "Released Parties") from any and all complaints, charges, liabilities, damages, claims, causes of action, lawsuits, fines, penalties, interest and/or expenses (including attorneys' fees and costs), of any nature whatsoever, whether asserted or unasserted, known or unknown, that Mr. Hosfeld ever had or now has against Postal Transport or any of the other Released Parties that arose at any time up to the date of this Agreement. For clarity, and not by way of limitation, the Parties confirm that, pursuant to this Section 7 and to the fullest extent permissible by law, Mr. Hosfeld is releasing Postal Transport and the other Released Parties from any and all claims: (a) that he asserted or could have asserted in the Lawsuit; (b) that arise out of or relate to Mr. Hosfeld's employment with Postal Transport; (c) that arise out of or pursuant to any express or implied verbal or written contract (except this Agreement) or under any quasi-contract theory, including breach of the covenant of good faith and fair dealing; (d) for wages, bonuses, commissions, vacation pay, sick pay or compensation of any kind; (e) for retaliation; (f) that arise out of any common law, tort, or equitable principle; or (g) that arise under any federal, state or local statute, regulation or ordinance including, without limitation:

→   **Federal Laws, such as:**

Title VII of the Civil Rights of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; The Civil Rights Act of 1991; The Equal Pay Act; The Americans with Disabilities Act; The Rehabilitation Act; The Employee Retirement Income Security Act; The Worker Adjustment and Retraining Notification Act; The National Labor Relations Act; The Fair Credit Reporting Act; The Occupational Safety and Health Act; The Uniformed Services Employment and Reemployment Act; The Employee Polygraph Protection Act; The Immigration Reform Control Act; The Family and Medical Leave Act; The Genetic Information Nondiscrimination Act; The Federal False Claims Act; The Patient Protection and Affordable Care Act; The Consolidated Omnibus Budget Reconciliation Act; The Fair Labor Standards Act; and The Lilly Ledbetter Fair Pay Act.

→   **State Laws, such as:**

The New Jersey Law Against Discrimination; the New Jersey Discrimination in Wages Law; the New Jersey Temporary Disability Benefits and Family Leave Insurance Law; the New Jersey Domestic Partnership Act; the New Jersey Conscientious Employee Protection Act; the New Jersey Family Leave Act; the New Jersey Wage Payment Act; the New Jersey Wage and Hour Law; the New Jersey Equal Pay Law; the New Jersey Occupational Safety and Health Law;

the New Jersey False Claims Act; the New Jersey Smokers' Rights Law; the New Jersey Genetic Privacy Act; the New Jersey Fair Credit Reporting Act; the New Jersey Emergency Responder Leave Law; the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act (a/k/a the New Jersey WARN Act); and the retaliation provisions of the New Jersey Workers' Compensation Law.

b.  **False Claims Act.**  Mr. Hosfeld also releases and waives any and all claims for personal gain under the Federal False Claims Act.

c.  **Waiver of Recovery.**  Mr. Hosfeld acknowledges and agrees that by virtue of the foregoing, he has waived any relief available to him (including, without limitation, monetary damages, equitable relief and reinstatement) under any of the claims and causes of action waived in this Agreement.  Therefore, Mr. Hosfeld agrees that he will not accept any award or settlement from any source or proceeding (including, but not limited to, any proceeding brought by any other person or by any government agency) with respect to any claim or right waived in this Agreement.

d.  **Waiver of Amendments.**  Mr. Hosfeld also releases all claims under any and all amendments to any of the above laws and releases claims for violations of any other federal, state or local law, regulation or ordinance, and contract or implied contract or tort law or public policy or whistleblower claim having any bearing whatsoever on Mr. Hosfeld's employment.

e.  **Broad Scope of the Release.**  This release is intended to be as broad as legally permissible and applies to both employment-related and non-employment-related claims up to the time that Mr. Hosfeld executes this Agreement.  This release includes a waiver of jury trials and non-jury trials.  This Agreement does not release or waive claims or rights that, as a matter of law, cannot be waived.

f.  **No Outstanding Claims.**  Mr. Hosfeld represents that, other than the Lawsuit, there are no outstanding civil, criminal or administrative charges, complaints, claims, grievances or actions of any nature whatsoever previously filed or brought by him or on his behalf against any of the Released Parties pending before any federal, state, local or administrative court or agency as of the date on which he signs this Agreement.

g.  **Exceptions.**  Nothing contained in this Section 7 is intended to release claims: (1) arising after the date on which Mr. Hosfeld executes this Agreement; or (2) that may not be released as a matter of law.

8.  **Covenant Not to Sue.**  Mr. Hosfeld agrees that neither he nor any person or entity on his behalf shall commence, maintain or prosecute any lawsuit or other court action of any kind against any of the Released Parties with respect to any act, omission or other matter

encompassed by Section 7 above, except that nothing in this Agreement prevents Mr. Hosfeld from bringing a legal action or otherwise taking steps to:

- Enforce the terms of this Agreement; or

- Challenge the validity of this Agreement; or

- Make any disclosure of information required by law; or

- Provide information to, testify before or otherwise assist in any investigation or proceeding brought by, any regulatory or law enforcement agency or legislative body, any self-regulatory organization, or Postal Transport; or

- Provide truthful testimony in any forum; or

- Cooperate fully and provide information as requested in any investigation by a governmental agency or commission; or

- File a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission or any other federal, state or local governmental agency or commission; or

- File a lawsuit or other action to pursue Claims that arise after Mr. Hosfeld executed this Agreement.

For purposes of clarity, this Agreement does not limit Mr. Hosfeld's ability to communicate with any government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information, without notice to Postal Transport.

9. **Class Action / Collective Action Waiver.** Mr. Hosfeld agrees not to sue or otherwise bring any legal action against Postal Transport or any of the Released Parties ever for any claims released in Section 7 arising before Mr. Hosfeld executes this Agreement. Mr. Hosfeld is not only waiving any right he may have to proceed individually, but also as a member of a class or collective action. In the event that Mr. Hosfeld receives notice of a class or collective action against the Released Parties for claims arising before he executes this Agreement, Mr. Hosfeld must "opt out" of and may not "opt in" to such action. Mr. Hosfeld is also giving up any right he may have to recover any relief from the Released Parties as a member of a class or collective action.

10. **Disclosures.** Mr. Hosfeld represents that, prior to signing this Agreement, he disclosed to Postal Transport, in accordance with applicable policies and procedures, any and all information relevant to any investigation of Postal Transport's business practices conducted by

any governmental agency or to any existing, threatened or anticipated litigation involving Postal Transport, whether administrative, civil or criminal in nature, and that Mr. Hosfeld is otherwise unaware of any wrongdoing committed by any current or former employees of Postal Transport that has not been disclosed. Additionally, nothing in this Agreement shall prohibit or restrict Mr. Hosfeld from:  (1) making any disclosure of information required by law; (2) providing information to, or testifying or otherwise assisting in any investigation or proceeding brought by any federal or state regulatory or law enforcement agency or legislative body, any self-regulatory organization; or (3) testifying, participating in or otherwise assisting in a proceeding relating to any alleged violation of any federal, state or municipal law relating to fraud or any rule or regulation of any self-regulatory organization.  Mr. Hosfeld further represents and warrants that, as of the date on which Mr. Hosfeld signs this Agreement, Mr. Hosfeld is not aware of purported improper, unethical or illegal conduct or activities, if any, at Postal Transport.

11.    **No Cooperation.**  Except as otherwise required by law, including pursuant to any lawfully issued subpoena, Mr. Hosfeld agrees not to provide any documents or information to, or otherwise assist in any way, any individual or entity with any allegations, demands or legal actions of any nature against Postal Transport or any of the Released Parties.

12.    **No Other Filings**.  Mr. Hosfeld represents that he has not filed any complaint, charge or grievance against Postal Transport or any of the other Released Parties in any local, state or federal agency or court other than the Lawsuit.

13.    **Agreement Not to Be Considered or Used as Evidence.**  Mr. Hosfeld agrees that this Agreement shall not be offered, used or considered as evidence in any proceeding of any type against or involving Postal Transport or any of the other Released Parties, except to the extent necessary to enforce its terms, or as otherwise compelled by law.

14.    **Confidentiality.**  Mr. Hosfeld and his counsel represent that they will keep the facts and all terms of this Agreement, the settlement negotiations, and the allegations and underlying facts in the Lawsuit completely confidential and shall not hereafter disclose, publish, publicize, disseminate or refer in any way to such information, including through the media, social media, anonymous reporting, referral to the docket by counsel, or in discussions with anyone else Mr. Hosfeld's counsel consulted directly or indirectly; provided, however, that Mr. Hosfeld may disclose such information to the extent necessary to his family, attorneys, governmental taxing authorities, the Court, and his tax advisor (if any), provided that such persons also shall maintain strict confidentiality.  The Parties agree that the obligations in this paragraph are a material term of this Agreement and that any violation of this paragraph shall constitute a material breach of this Agreement.  If Mr. Hosfeld or his counsel or his family is asked about the Lawsuit or the resolution of the Lawsuit, they may state only, "The case is dismissed," with no other description or discussion.  Mr. Hosfeld and his counsel will not otherwise disclose any information whatsoever about the settlement of the Lawsuit and/or the contents of this Agreement.  Mr. Hosfeld's counsel agrees that LaVan Law will make no reference to the Lawsuit and/or the settlement of the Lawsuit, including the contents of this Agreement, on the firm's website or in any other marketing materials.  It is the Parties' understanding, agreement and expectation that this confidentiality provision shall apply to the fullest extent permissible by law and shall preclude Mr. Hosfeld and his counsel from voluntarily

or otherwise testifying at or participating in any meeting, conversation, proceeding, hearing, trial or preparation for hearing or trial concerning the matters covered by this confidentiality provision, unless compelled to do so by judicial subpoena or other applicable law.

15.     **Non-Disparagement.**  Mr. Hosfeld agrees that he will not, through any medium including, but not limited to, the press, Internet or any other form of communication, disparage, defame, or otherwise damage or assail the reputation, integrity or professionalism of Postal Transport or Released Parties.  Nothing in this Section 15 is intended to restrict or impede Mr. Hosfeld from exercising protected rights to the extent that such rights cannot be waived by agreement.

16.     **Full Payment.**  Mr. Hosfeld acknowledges that, upon receiving the Settlement Amount described in Section 2, he will have been paid or has received all compensation, wages, bonuses, overtime payments, vacation pay, sick pay, commissions, equity grants and benefits to which he may have been entitled in connection with his employment and that no other compensation, wages, bonuses, overtime payments, vacation pay, sick pay, commissions equity grants or benefits are due to him.  In addition, Mr. Hosfeld acknowledges that the consideration set forth in Section 2 exceeds any payments or benefits provided in any other oral or written agreement or any employment or personnel policy, procedure or handbook that may apply to Mr. Hosfeld.

17.     **Knowing and Voluntary.**  Mr. Hosfeld certifies that he has carefully read and fully understands all of the provisions and effects of this Agreement; that he has been advised, through this Section 17, to consult and thoroughly discuss all aspects of this Agreement with his attorney; that he has reviewed this Agreement with his attorney, Julie LaVan, Esq., of LaVan Law; that he is voluntarily entering into this Agreement; and that neither Postal Transport, nor any of the other Released Parties have made any representations concerning the terms or effects of this Agreement other than those contained in the Agreement.

18.     **Unknown Facts.**  By signing this Agreement, Mr. Hosfeld is acknowledging that he has full knowledge of any and all rights he may have and is assuming the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts that are now unknown to him.  Postal Transport is making the same acknowledgment and assuming the same risk.

19.     **Adequate Consideration.**  Mr. Hosfeld agrees that the Settlement Amount constitutes full and fair consideration for all agreements, promises, and representations contained in this Agreement.  More specifically, Mr. Hosfeld agrees that the Settlement Amount constitutes more than adequate consideration to support his general release of claims and covenant not to sue in this Agreement.

20.     **Construction of the Agreement.**  This Agreement is made and entered into in the State of New Jersey and shall in all respects be interpreted and enforced according to the laws of New Jersey without regard to conflict of laws principles.  The language of this Agreement shall in all cases be construed as a whole and given its fair meaning, and shall not be construed strictly for or against any of the Parties.  The Parties agree to submit to the jurisdiction of the federal

87063047.2

courts in the State of New Jersey with respect to any action concerning the enforcement or interpretation of this Agreement.

21. **Counterparts; Facsimile**. This Agreement may be executed in any number of counterparts, or in different counterparts, any of which shall be deemed an original, but all of which together shall constitute one and the same agreement. A facsimile or electronically scanned signature on this Agreement shall have the same force and effect as an original signature.

22. **Severability and Court Modification.** If any portion of this Agreement is determined to be illegal, unenforceable, or ineffective in a legal forum of competent jurisdiction, the Parties agree that the remaining provisions of this Agreement not declared invalid will continue in full force and effect. If any of the provisions, terms, clauses, waivers or releases in this Agreement is declared illegal, unenforceable, or ineffective in a legal forum of competent jurisdiction, such provisions, terms, clauses, waivers or releases shall be modified, if possible, in order to achieve, to the extent possible, the intentions of the Parties.

23. **Remedies for Breach.** In the event of a breach of the Settlement Agreement, the prevailing party shall recover attorneys' fees. If Mr. Hosfeld breaches any Section of the Settlement Agreement, including without limitation, Sections 7, 8, or 14 or otherwise seeks to bring a claim given up under this Settlement Agreement, Postal Transport will be entitled to relief legally available to it, including equitable relief such as injunctions, and Postal Transport will not be required to post a bond.

24. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties, and fully supersedes any and all prior agreements or understandings between either of them pertaining to the subject matter hereof. This Agreement may not be modified or amended except through a written document executed by both Parties.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

87063047.2

**BY SIGNING THIS AGREEMENT, KENNETH HOSFELD ACKNOWLEDGES THAT HE DOES SO VOLUNTARILY AFTER CAREFULLY READING AND FULLY UNDERSTANDING EACH PROVISION AND ALL OF THE EFFECTS OF THIS AGREEMENT, WHICH INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS AND A RESTRICTION ON FUTURE LEGAL ACTION AGAINST POSTAL TRANSPORT AND OTHER RELEASED PARTIES.**

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed the foregoing Settlement Agreement and General Release on the dates indicated below.

DATE: _____     By:_____
                                        KENNETH HOSFELD


                          POSTAL TRANSPORT, INC.

DATE: _____     By: _____
                                  Name:
                                  Title:


DATE: _____     By:_____
                                        CLIFFORD FINKLE IV



| | |
|---|---|
| **From:** | Julie LaVan <Julie@jlavanlaw.com> |
| **Sent:** | Thursday, December 15, 2016 10:42 AM |
| **To:** | Jaitly, Vik C. |
| **Cc:** | Ridley, John A. |
| **Subject:** | Modified Settlement Agreement |
| **Attachments:** | Hosfeld - Settlement Agreement and General Release.docx |

Dear John and Vik,

Please see attached tracked changes.

I am headed out of town for a couple weeks leaving this weekend.  If possible, try to get back to me by tomorrow.

Thanks.
Julie LaVan

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Kenneth Hosfeld ("Mr. Hosfeld"), on one side, and Postal Transport, Inc. ("Postal Transport") and Clifford Finkle IV ("Mr. Finkle"), on the other side. Mr. Hosfeld, Mr. Finkle, and Postal Transport may each be referred to in this Agreement as a "Party" and together as the "Parties."

WHEREAS, a dispute has arisen between the Parties concerning Mr. Hosfeld's employment, which dispute is the subject of a lawsuit filed by Mr. Hosfeld in the United States District Court for the District of New Jersey, Camden Vicinage, and captioned <u>Kenneth Hosfeld v. Postal Transport, Inc., Clifford Finkle IV, and John Does 1-10</u>, Docket No.: 15-cv-07497 (the "Lawsuit");

WHEREAS, Postal Transport and Mr. Finkle deny that they violated any law, ~~or owe Mr. Hosfeld any compensation as alleged in the Lawsuit;~~

WHEREAS, the Parties wish to avoid the risks and costs of litigation and instead amicably resolve the Lawsuit and all outstanding disputes and issues between them and other Released Parties (defined in Section 7 below) subject to the terms and conditions set forth in this Agreement; and

WHEREAS, the Parties have agreed that Mr. Hosfeld's employment with Postal Transport shall conclude.

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, the adequacy of which Mr. Hosfeld acknowledges, and intending to be legally bound, the Parties agree as follows:

1.      **Dismissal with Prejudice.**  The Parties agree that the Lawsuit shall be dismissed with prejudice and without costs against any Party.  Mr. Hosfeld hereby authorizes his counsel, LaVan Law, to take any and all steps necessary to cause the full and final termination of the Lawsuit including, without limitation, executing and filing a "Stipulation of Dismissal with Prejudice and Without Costs."

2.      **Settlement Payment.**

    a.   **Settlement Amount.**  Postal Transport shall issue a payment in the total amount of $5,000.00 (the "Settlement Amount").  The Settlement Amount shall constitute the entire payment from Postal Transport for the full and final settlement of the Lawsuit including, without limitation, claims for attorneys' fees and costs.  The Settlement Amount shall be paid as follows:

        i.   Postal Transport shall issue to Mr. Hosfeld a check payable to "Kenneth Hosfeld" in the amount of five thousand dollars ($5,000.00), <u>five hundred dollars shall be considered income and $4,500.00 is for emotional distress</u>

87063047.2

and shall not be considered income.   less all applicable and legally required deductions and withholdings.  An IRS Form W-2 will be issued to Mr. Hosfeld in connection with the $500.00 payment.. this payment.

b. **Timing.**  Postal Transport shall issue the Settlement Amount to Mr. Hosfeld and his counsel within ten (10)thirty (30) business days after Postal Transport's counsel receives the Agreement, executed by Mr. Hosfeld, and service of notice of the Court's entry of the "Stipulation of Dismissal with Prejudice and Without Costs."

3.   **Attorneys' Fees.**  The Settlement Amount includes payment to LaVan Law and all attorneys who are members of, employed by or associated with that firm, and any other attorney, individual or entity who/that has in the past represented, and specifically, Alaina Gregorio (formerly of LaVan Law), or is currently representing, Mr. Hosfeld's interests, in full for all services performed and all costs incurred in the Lawsuit, whether performed or incurred before or after the date of this Agreement.

4.   **Tax Consequences.**  Mr. Hosfeld agrees to pay any and all taxes (other than Postal Transport's employer payroll taxes) found to be owed from payments made pursuant to this Agreement and to indemnify and hold Postal Transport and the Released Parties harmless from any claims, assessments, demands, penalties and interest owed, or found to be owed, including any income tax liability, as a result of any payment made pursuant to this Agreement. In the event it is ultimately determined that any monies are due and owing with respect to the Settlement Amount, the validity of this Agreement shall not be affected in any way.

5.   **Arm's-Length Negotiations.**  The Parties arrived at the settlement memorialized in this Agreement through arm's-length negotiations with full representation of counsel, taking into account all relevant factors, past, present and potential, and they believe in good faith that the terms of this Agreement are fair, adequate and reasonable.

6.   **Non-Admission.**  Postal Transport and Mr. Finkle deny that it has wronged or harmed Mr. Hosfeld.  It is understood and agreed that, by entering into this Agreement, Postal Transport and Mr. Finkle in no way admit any wrongdoing by reason of the matters alleged in the Lawsuit or by reason of any other matter.  This Agreement is not, and shall not be construed as, an admission by Postal Transport or any of their current or former directors, officers, employees, representatives or agents, of any unlawful or improper conduct toward Mr. Hosfeld or anyone else.  Mr. Hosfeld agrees that this Agreement shall not be offered, used or considered as evidence in any proceeding of any type against or involving any of the Released Parties, except to the extent necessary to enforce its terms.

7.   **Release of Claims,**

7.a. **Waiver/Release.**   In consideration of the Settlement Amount and other benefits provided in this Agreement and intending to be legally bound, and except for the rights and obligations arising under this Agreement, Postal Transport and Mr. Finkle hereby releases Ken Hosfeld and all of his heirs and

| Formatted: Font: Not Bold, No underline |
| Formatted: List Paragraph, Left,  No bullets or numbering |
| Formatted |

assigns predecessors, successors, assigns,(collectively, the "Released Parties") from any and all complaints, charges, liabilities, damages, claims, causes of action, lawsuits, fines, penalties, interest and/or expenses (including attorneys' fees and costs), of any nature whatsoever, whether asserted or unasserted, known or unknown, that Postal Transport or Mr. Finkle ever had or now has against Ken Hosfeld or any of the other Released Parties that arose at any time up to the date of this Agreement.  For clarity, and not by way of limitation, the Parties confirm that, pursuant to this Section 7 and to the fullest extent permissible by law, Postal Transport is releasing Ken Hosfeld and the other Released Parties from any and all claims:

a.b. **Waiver/Release.**   In consideration of the Settlement Amount and other benefits provided in this Agreement and intending to be legally bound, and except for the rights and obligations arising under this Agreement, Mr. Hosfeld hereby releases Postal Transport and all of Postal Transport's predecessors, successors, assigns, parents, subsidiaries, operating companies, affiliates, insurers, and directors, and all of Postal Transport's respective current and former officers, employees, attorneys, representatives and agents (collectively, the "Released Parties") from any and all complaints, charges, liabilities, damages, claims, causes of action, lawsuits, fines, penalties, interest and/or expenses (including attorneys' fees and costs), of any nature whatsoever, whether asserted or unasserted, known or unknown, that Mr. Hosfeld ever had or now has against Postal Transport or any of the other Released Parties that arose at any time up to the date of this Agreement.  For clarity, and not by way of limitation, the Parties confirm that, pursuant to this Section 7 and to the fullest extent permissible by law, Mr. Hosfeld is releasing Postal Transport and the other Released Parties from any and all claims: (a) that he asserted or could have asserted in the Lawsuit; (b) that arise out of or relate to Mr. Hosfeld's employment with Postal Transport; (c) that arise out of or pursuant to any express or implied verbal or written contract (except this Agreement) or under any quasi-contract theory, including breach of the covenant of good faith and fair dealing; (d) for wages, bonuses, commissions, vacation pay, sick pay or compensation of any kind; (e) for retaliation; (f) that arise out of any common law, tort, or equitable principle; or (g) that arise under any federal, state or local statute, regulation or ordinance including, without limitation:

→   **Federal Laws, such as**:

Title VII of the Civil Rights of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; The Civil Rights Act of 1991; The Equal Pay Act; The Americans with Disabilities Act; The Rehabilitation Act; The Employee Retirement Income Security Act; The Worker Adjustment and Retraining Notification Act; The National Labor Relations Act; The Fair Credit Reporting Act; The Occupational Safety and Health Act; The Uniformed Services Employment and

Reemployment Act; The Employee Polygraph Protection Act; The Immigration Reform Control Act; The Family and Medical Leave Act; The Genetic Information Nondiscrimination Act; The Federal False Claims Act; The Patient Protection and Affordable Care Act; The Consolidated Omnibus Budget Reconciliation Act; The Fair Labor Standards Act; and The Lilly Ledbetter Fair Pay Act.

→ **State Laws, such as:**

The New Jersey Law Against Discrimination; the New Jersey Discrimination in Wages Law; the New Jersey Temporary Disability Benefits and Family Leave Insurance Law; the New Jersey Domestic Partnership Act; the New Jersey Conscientious Employee Protection Act; the New Jersey Family Leave Act; the New Jersey Wage Payment Act; the New Jersey Wage and Hour Law; the New Jersey Equal Pay Law; the New Jersey Occupational Safety and Health Law; the New Jersey False Claims Act; the New Jersey Smokers' Rights Law; the New Jersey Genetic Privacy Act; the New Jersey Fair Credit Reporting Act; the New Jersey Emergency Responder Leave Law; the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act (a/k/a the New Jersey WARN Act); and the retaliation provisions of the New Jersey Workers' Compensation Law.

b.c. **False Claims Act.** Mr. Hosfeld also releases and waives any and all claims for personal gain under the Federal False Claims Act.

c.d. **Waiver of Recovery.** Mr. Hosfeld acknowledges and agrees that by virtue of the foregoing, he has waived any relief available to him (including, without limitation, monetary damages, equitable relief and reinstatement) under any of the claims and causes of action waived in this Agreement. Therefore, Mr. Hosfeld agrees that he will not accept any award or settlement from any source or proceeding (including, but not limited to, any proceeding brought by any other person or by any government agency) with respect to any claim or right waived in this Agreement.

d.e. **Waiver of Amendments.** Mr. Hosfeld also releases all claims under any and all amendments to any of the above laws and releases claims for violations of any other federal, state or local law, regulation or ordinance, and contract or implied contract or tort law or public policy or whistleblower claim having any bearing whatsoever on Mr. Hosfeld's employment.

e.f. **Broad Scope of the Release.** This release is intended to be as broad as legally permissible and applies to both employment-related and non-employment-related claims up to the time that Mr. Hosfeld executes this Agreement. This release includes a waiver of jury trials and non-jury trials.

This Agreement does not release or waive claims or rights that, as a matter of law, cannot be waived.

f.g. **No Outstanding Claims.**  Mr. Hosfeld represents that, other than the Lawsuit, there are no outstanding civil, criminal or administrative charges, complaints, claims, grievances or actions of any nature whatsoever previously filed or brought by him or on his behalf against any of the Released Parties pending before any federal, state, local or administrative court or agency as of the date on which he signs this Agreement.

g.h.**Exceptions.**  Nothing contained in this Section 7 is intended to release claims: (1) arising after the date on which Mr. Hosfeld executes this Agreement; or (2) that may not be released as a matter of law.

8.      **Covenant Not to Sue.**  Mr. Hosfeld agrees that neither he nor any person or entity on his behalf shall commence, maintain or prosecute any lawsuit or other court action of any kind against any of the Released Parties with respect to any act, omission or other matter encompassed by Section 7 above, except that nothing in this Agreement prevents Mr. Hosfeld from bringing a legal action or otherwise taking steps to:

- Enforce the terms of this Agreement; or

- Challenge the validity of this Agreement; or

- Make any disclosure of information required by law; or

- Provide information to, testify before or otherwise assist in any investigation or proceeding brought by, any regulatory or law enforcement agency or legislative body, any self-regulatory organization, or Postal Transport; or

- Provide truthful testimony in any forum; or

- Cooperate fully and provide information as requested in any investigation by a governmental agency or commission; or

- File a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission or any other federal, state or local governmental agency or commission; or

- File a lawsuit or other action to pursue Claims that arise after Mr. Hosfeld executed this Agreement.

87063047.2

For purposes of clarity, this Agreement does not limit Mr. Hosfeld's ability to communicate with any government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information, without notice to Postal Transport.

~~9.      Class Action / Collective Action Waiver.  Mr. Hosfeld agrees not to sue or otherwise bring any legal action against Postal Transport or any of the Released Parties ever for any claims released in Section 7 arising before Mr. Hosfeld executes this Agreement.  Mr. Hosfeld is not only waiving any right he may have to proceed individually, but also as a member of a class or collective action.  In the event that Mr. Hosfeld receives notice of a class or collective action against the Released Parties for claims arising before he executes this Agreement, Mr. Hosfeld must "opt out" of and may not "opt in" to such action.  Mr. Hosfeld is also giving up any right he may have to recover any relief from the Released Parties as a member of a class or collective action.~~

~~10.     Disclosures.  Mr. Hosfeld represents that, prior to signing this Agreement, he disclosed to Postal Transport, in accordance with applicable policies and procedures, any and all information relevant to any investigation of Postal Transport's business practices conducted by any governmental agency or to any existing, threatened or anticipated litigation involving Postal Transport, whether administrative, civil or criminal in nature, and that Mr. Hosfeld is otherwise unaware of any wrongdoing committed by any current or former employees of Postal Transport that has not been disclosed.  Additionally, nothing in this Agreement shall prohibit or restrict Mr. Hosfeld from:  (1) making any disclosure of information required by law; (2) providing information to, or testifying or otherwise assisting in any investigation or proceeding brought by any federal or state regulatory or law enforcement agency or legislative body, any self-regulatory organization; or (3) testifying, participating in or otherwise assisting in a proceeding relating to any alleged violation of any federal, state or municipal law relating to fraud or any rule or regulation of any self-regulatory organization.  Mr. Hosfeld further represents and warrants that, as of the date on which Mr. Hosfeld signs this Agreement, Mr. Hosfeld is not aware of purported improper, unethical or illegal conduct or activities, if any, at Postal Transport.~~

~~11.~~9.   **No Cooperation.**  Except as otherwise required by law, including pursuant to any lawfully issued subpoena, Mr. Hosfeld agrees not to provide any documents or information to, or otherwise assist in any way, any individual or entity with any allegations, demands or legal actions of any nature against Postal Transport or any of the Released Parties.

~~12.~~10.   **No Other Filings**.  Mr. Hosfeld represents that he has not filed any complaint, charge or grievance against Postal Transport or any of the other Released Parties in any local, state or federal agency or court other than the Lawsuit.

~~13.~~11.   **Agreement Not to Be Considered or Used as Evidence.**  Mr. Hosfeld agrees that this Agreement shall not be offered, used or considered as evidence in any proceeding of any type against or involving Postal Transport or any of the other Released Parties, except to the extent necessary to enforce its terms, or as otherwise compelled by law.

14.12. **Confidentiality.** Mr. Hosfeld and his counsel represent that they will keep the facts and all terms of this Agreement, the settlement negotiations, and the allegations and underlying facts in the Lawsuit completely confidential and shall not hereafter disclose, publish, publicize, disseminate or refer in any way to such information, including through the media, social media, anonymous reporting, referral to the docket by counsel, or in discussions with anyone else Mr. Hosfeld's counsel consulted directly or indirectly; provided, however, that Mr. Hosfeld may disclose such information to the extent necessary to his family, attorneys, governmental taxing authorities, the Court, and his tax advisor (if any), provided that such persons also shall maintain strict confidentiality.  The Parties agree that the obligations in this paragraph are a material term of this Agreement and that any violation of this paragraph shall constitute a material breach of this Agreement.  If Mr. Hosfeld or his counsel or his family is asked about the Lawsuit or the resolution of the Lawsuit, they may state only, "The case is dismissed," with no other description or disclosure.  Mr. Hosfeld and his counsel will not otherwise disclose any information whatsoever about the settlement of the Lawsuit and/or the contents of this Agreement.  ~~Mr. Hosfeld's counsel agrees that LaVan Law will make no reference to the Lawsuit and/or the settlement of the Lawsuit, including the contents of this Agreement, on the firm's website or in any other marketing materials~~.  It is the Parties' understanding, agreement and expectation that this confidentiality provision shall apply to the fullest extent permissible by law and shall preclude Mr. Hosfeld and his counsel from voluntarily or otherwise testifying at or participating in any meeting, conversation, proceeding, hearing, trial or preparation for hearing or trial concerning the matters covered by this confidentiality provision, unless compelled to do so by judicial subpoena or other applicable law.

15.13. **Non-Disparagement.** Mr. Hosfeld agrees that he will not, through any medium including, but not limited to, the press, Internet or any other form of communication, disparage, defame, or otherwise damage or assail the reputation, integrity or professionalism of Postal Transport or Released Parties.  Nothing in this Section 15 is intended to restrict or impede Mr. Hosfeld from exercising protected rights to the extent that such rights cannot be waived by agreement.

16.   **Full Payment.** Mr. Hosfeld acknowledges that, upon receiving the Settlement Amount described in Section 2, he will have been paid or has received all compensation, wages, bonuses, overtime payments, vacation pay, sick pay, commissions, equity grants and benefits to which he may have been entitled in connection with his employment and that no other compensation, wages, bonuses, overtime payments, vacation pay, sick pay, commissions equity grants or benefits are due to him.  ~~In addition, Mr. Hosfeld acknowledges that the consideration set forth in Section 2 exceeds any payments or benefits provided in any other oral or written agreement or any employment or personnel policy, procedure or handbook that may apply to Mr. Hosfeld.~~

14. ___

17.15. **Knowing and Voluntary.** Mr. Hosfeld certifies that he has carefully read and fully understands all of the provisions and effects of this Agreement; that he has been advised, through this Section 17, to consult and thoroughly discuss all aspects of this Agreement with his attorney; that he has reviewed this Agreement with his attorney, Julie LaVan, Esq., of LaVan Law; that he is voluntarily entering into this Agreement; and that neither Postal Transport, nor

**Formatted:** Indent: Left:  0.5", Tab stops: Not at 1"

**Formatted:** Indent: Left:  0.5", First line: 0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.5" + Tab after:  1" + Indent at: 1", Tab stops: Not at  1"

any of the other Released Parties have made any representations concerning the terms or effects of this Agreement other than those contained in the Agreement.

18.16. **Unknown Facts.** By signing this Agreement, Mr. Hosfeld is acknowledging that he has full knowledge of any and all rights he may have and is assuming the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts that are now unknown to him. Postal Transport is making the same acknowledgment and assuming the same risk.

19.17. **Adequate Consideration.** Mr. Hosfeld agrees that the Settlement Amount constitutes full and fair consideration for all agreements, promises, and representations contained in this Agreement. More specifically, Mr. Hosfeld agrees that the Settlement Amount constitutes more than adequate consideration to support his general release of claims and covenant not to sue in this Agreement.

20.18. **Construction of the Agreement.** This Agreement is made and entered into in the State of New Jersey and shall in all respects be interpreted and enforced according to the laws of New Jersey without regard to conflict of laws principles. The language of this Agreement shall in all cases be construed as a whole and given its fair meaning, and shall not be construed strictly for or against any of the Parties. The Parties agree to submit to the jurisdiction of the federal courts in the State of New Jersey with respect to any action concerning the enforcement or interpretation of this Agreement.

21.19. **Counterparts; Facsimile.** This Agreement may be executed in any number of counterparts, or in different counterparts, any of which shall be deemed an original, but all of which together shall constitute one and the same agreement. A facsimile or electronically scanned signature on this Agreement shall have the same force and effect as an original signature.

22.20. **Severability and Court Modification.** If any portion of this Agreement is determined to be illegal, unenforceable, or ineffective in a legal forum of competent jurisdiction, the Parties agree that the remaining provisions of this Agreement not declared invalid will continue in full force and effect. If any of the provisions, terms, clauses, waivers or releases in this Agreement is declared illegal, unenforceable, or ineffective in a legal forum of competent jurisdiction, such provisions, terms, clauses, waivers or releases shall be modified, if possible, in order to achieve, to the extent possible, the intentions of the Parties.

23. **Remedies for Breach.** In the event of a breach of the Settlement Agreement, the prevailing party shall recover attorneys' fees. If Mr. Hosfeld breaches any Section of the Settlement Agreement, including without limitation, Sections 7, 8, or 14 or otherwise seeks to bring a claim given up under this Settlement Agreement, Postal Transport will be entitled to relief legally available to it, including equitable relief such as injunctions, and Postal Transport will not be required to post a bond.

24.21. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties, and fully supersedes any and all prior agreements or understandings between either of

87063047.2

them pertaining to the subject matter hereof.  This Agreement may not be modified or amended except through a written document executed by both Parties.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

87063047.2

**BY SIGNING THIS AGREEMENT, KENNETH HOSFELD ACKNOWLEDGES THAT HE DOES SO VOLUNTARILY AFTER CAREFULLY READING AND FULLY UNDERSTANDING EACH PROVISION AND ALL OF THE EFFECTS OF THIS AGREEMENT, WHICH INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS AND A RESTRICTION ON FUTURE LEGAL ACTION AGAINST POSTAL TRANSPORT AND OTHER RELEASED PARTIES.**

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed the foregoing Settlement Agreement and General Release on the dates indicated below.

DATE: _____       By:_____
                                          KENNETH HOSFELD


                                   POSTAL TRANSPORT, INC.

DATE: _____   By:   _____
                                   Name:
                                   Title:


DATE: _____       By:_____
                                          CLIFFORD FINKLE IV

87063047.2



| | |
|---|---|
| **From:** | Julie LaVan <Julie@jlavanlaw.com> |
| **Sent:** | Thursday, December 15, 2016 11:09 AM |
| **To:** | Jaitly, Vik C. |
| **Cc:** | Ridley, John A. |
| **Subject:** | Stipulation of Dismissal |
| | |
| **Importance:** | High |

Counsel,

The court has asked for a conference.

I would like to get the stipulation filed and agreement signed as soon as possible.


Kindly draft a stipulation of dismissal that can be immediately signed once the agreement is signed.

I will notify the court today via letter and cc you that we have reached an agreement and are working on the written document.

Julie



| | |
|---|---|
| **From:** | Julie LaVan <julie@jlavanlaw.com> |
| **Sent:** | Wednesday, December 21, 2016 11:09 AM |
| **To:** | Jaitly, Vik C. |
| **Cc:** | Ridley, John A. |
| **Subject:** | Re: Settlement discussions |

Vik - I spoke to my client.

He won't agree without a mutual release.

Looks like the settlement is off for this reason.

Julie

LaVan Law
271 W. Main Street
Moorestown, NJ 08057

(856) 235-4079 office phone
(856) 235-4018 office fax
(609) 870-9832 cell phone

www.jlavanlaw.com


> On Dec 21, 2016, at 7:41 AM, Jaitly, Vik C. <Vik.Jaitly@dbr.com> wrote:
>
> Julie:
>
> Below are my responses to your points:
>
> 1.  Our client will agree to an allocation of $1,500 income (Form W-2) and $3,500 other damages (Form 1099).  As
stated in our discussion yesterday, both are taxable under the IRS rules because the emotional distress damages do not
originate from a personal physical injury.
>
> 2.  Correct, our client will not agree to a mutual release.  Our client has not alleged any claims against Mr. Hosfeld and
because of this, we will not provide a mutual release.  Also, this is not retaliatory behavior.
>
> 3.  Correct.
>
> Thanks,
> Vik
>
>
> Vik Jaitly
>
> Drinker Biddle & Reath LLP

1

> One Logan Square, Ste. 2000
> Philadelphia, PA 19103-6996
> (215) 988-2799 phone
>
>
> Vik.Jaitly@dbr.com
> www.drinkerbiddle.com
> -----Original Message-----
> From: Julie LaVan [mailto:julie@jlavanlaw.com]
> Sent: Wednesday, December 21, 2016 9:17 AM
> To: Jaitly, Vik C.
> Subject: Settlement discussions
>
> Vik -
>
> I want to confirm settlement issues:
>
> 1. Your client will not agree to 500 income and 4500 in other damages?
>
> 2. Your client will not agree to mutual release?
>
> - please let me know if your client wants more time to work through the issues. I have a major problem with this because your client continues to retaliate against Mr. Hosfeld. This continuous retaliatory behavior is the reason we almost could not agree in the first place.
>
> 3. Your client is willing to waive the class action provision?
>
> Please confirm for our call with the judge today.
>
> Julie
>
> LaVan Law
> 271 W. Main Street
> Moorestown, NJ 08057
>
> (856) 235-4079 office phone
> (856) 235-4018 office fax
> (609) 870-9832 cell phone
>
> www.jlavanlaw.com
>
>
>
>
>
> **************************************
> Drinker Biddle & Reath LLP is a Delaware limited liability partnership. The partner responsible for the firm's Princeton office is Jonathan I. Epstein, and the partner responsible for the firm's Florham Park office is Andrew B. Joseph.
> **************************************
> This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any

information contained in the message. If you have received the message in error, please advise the sender at Drinker Biddle & Reath LLP by reply e-mail and delete the message. Thank you very much.

> ***************************************



| | |
|---|---|
| **From:** | Jaitly, Vik C. |
| **Sent:** | Friday, February 24, 2017 4:24 PM |
| **To:** | Julie LaVan (Julie@JLaVanLaw.com) |
| **Cc:** | Ridley, John A. |
| **Subject:** | Hosfeld v. Postal Transport - revised settlement agreement |
| **Attachments:** | Hosfeld - Settlement Agreement and General Release.DOCX; Change-Pro Redline - Hosfeld - Settlement Agreement and General Release ....pdf |

Julie,

As discussed, attached is the revised settlement agreement for your review.  I am also attaching a redline from the last version that we circulated back in December.  I note the changes below:

- Mutual release provision added.
- Revised allocation of settlement proceeds reflecting $500 as income and $4,500 towards emotional distress.
- Removal of the class action/collection action waiver provision.

Please review the agreement and let me know if the terms are agreeable by you and your client.

Thanks,
Vik


Vik Jaitly
**Drinker Biddle & Reath LLP**
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
(215) 988-2799 *office*
Vik.Jaitly@dbr.com
www.drinkerbiddle.com

1

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Kenneth Hosfeld ("Mr. Hosfeld"), on one side, and Postal Transport, Inc. ("Postal Transport") and Clifford Finkle IV ("Mr. Finkle"), on the other side. Mr. Hosfeld, Mr. Finkle, and Postal Transport may each be referred to in this Agreement as a "Party" and together as the "Parties."

WHEREAS, a dispute has arisen between the Parties concerning Mr. Hosfeld's employment, which dispute is the subject of a lawsuit filed by Mr. Hosfeld in the United States District Court for the District of New Jersey, Camden Vicinage, and captioned <u>Kenneth Hosfeld v. Postal Transport, Inc., Clifford Finkle IV, and John Does 1-10</u>, Docket No.: 15-cv-07497 (the "Lawsuit");

WHEREAS, Postal Transport and Mr. Finkle deny that they violated any law;

WHEREAS, the Parties wish to avoid the risks and costs of litigation and instead amicably resolve the Lawsuit and all outstanding disputes and issues between them and other Released Parties (defined in Section 7 below) subject to the terms and conditions set forth in this Agreement; and

WHEREAS, the Parties have agreed that Mr. Hosfeld's employment with Postal Transport shall conclude.

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, the adequacy of which Mr. Hosfeld acknowledges, and intending to be legally bound, the Parties agree as follows:

1. **Dismissal with Prejudice.** The Parties agree that the Lawsuit shall be dismissed with prejudice and without costs against any Party. Mr. Hosfeld hereby authorizes his counsel, LaVan Law, to take any and all steps necessary to cause the full and final termination of the Lawsuit including, without limitation, executing and filing a "Stipulation of Dismissal with Prejudice and Without Costs."

2. **Settlement Payment.**

   a. **Settlement Amount.** Postal Transport shall issue a payment in the total amount of $5,000.00 (the "Settlement Amount"). The Settlement Amount shall constitute the entire payment from Postal Transport for the full and final settlement of the Lawsuit including, without limitation, claims for attorneys' fees and costs. The Settlement Amount shall be paid as follows:

      i. Postal Transport shall issue to Mr. Hosfeld ~~a~~ two check~~s~~ payable to "Kenneth Hosfeld" ~~in the amount of~~totaling five thousand dollars ($5,000.00)~~.~~;

1.  One check in the amount of $500.00 allocated for income, less all applicable and legally required deductions and withholdings.   An IRS Form W-2 will be issued to Mr. Hosfeld in connection with this payment.

2.  One check in the amount of $4,500.00 allocated for emotional distress. An IRS Form 1099 will be issued to Mr. Hosfeld in connection with this payment.

b.  **Timing.**  Postal Transport shall issue the Settlement Amount to Mr. Hosfeld and his counsel within ten (10) business days after Postal Transport's counsel receives the Agreement, executed by Mr. Hosfeld, and service of notice of the Court's entry of the "Stipulation of Dismissal with Prejudice and Without Costs."

3.  **Attorneys' Fees.**  The Settlement Amount includes payment to LaVan Law and all attorneys who are members of, employed by or associated with that firm, and any other attorney, individual or entity who/that has in the past represented, and specifically, Alaina Gregorio (formerly of LaVan Law), or is currently representing, Mr. Hosfeld's interests, in full for all services performed and all costs incurred in the Lawsuit, whether performed or incurred before or after the date of this Agreement.

4.  **Tax Consequences.**  Mr. Hosfeld agrees to pay any and all taxes (other than Postal Transport's employer payroll taxes) found to be owed from payments made pursuant to this Agreement and to indemnify and hold Postal Transport and the Defendant Released Parties harmless from any claims, assessments, demands, penalties and interest owed, or found to be owed, including any income tax liability, as a result of any payment made pursuant to this Agreement.  In the event it is ultimately determined that any monies are due and owing with respect to the Settlement Amount, the validity of this Agreement shall not be affected in any way.

5.  **Arm's-Length Negotiations.**  The Parties arrived at the settlement memorialized in this Agreement through arm's-length negotiations with full representation of counsel, taking into account all relevant factors, past, present and potential, and they believe in good faith that the terms of this Agreement are fair, adequate and reasonable.

6.  **Non-Admission.**  Postal Transport and Mr. Finkle deny that it has wronged or harmed Mr. Hosfeld.  It is understood and agreed that, by entering into this Agreement, Postal Transport and Mr. Finkle in no way admit any wrongdoing by reason of the matters alleged in the Lawsuit or by reason of any other matter.  This Agreement is not, and shall not be construed as, an admission by Postal Transport or any of their current or former directors, officers, employees, representatives or agents, of any unlawful or improper conduct toward Mr. Hosfeld or anyone else.  Mr. Hosfeld agrees that this Agreement shall not be offered, used or considered as evidence in any proceeding of any type against or involving any of the Defendant Released Parties, except to the extent necessary to enforce its terms.

7.  **Release of Claims.**

a.  **Waiver/Release by Postal Transport and Mr. Finkle.** In consideration of Mr. Hosfeld signing this Settlement Agreement and other benefits provided in this Agreement and intending to be legally bound, and except for the rights and obligations arising under this Agreement, Postal Transport and Mr. Finkle hereby releases Ken Hosfeld and all of his heirs and assigns predecessors, successors, assigns, (collectively, the "Hosfeld Released Parties") from any and all complaints, charges, liabilities, damages, claims, causes of action, lawsuits, fines, penalties, interest and/or expenses (including attorneys' fees and costs), of any nature whatsoever, whether asserted or unasserted, known or unknown, that Postal Transport or Mr. Finkle ever had or now has against Mr. Hosfeld or any of the other Hosfeld Released Parties that arose at any time up to the date of this Agreement. For clarity, and not by way of limitation, the Parties confirm that, pursuant to this Section 7 and to the fullest extent permissible by law, Postal Transport is releasing Ken Hosfeld and the other Hosfeld Released Parties from any and all claims.

b.  ~~a.~~ **Waiver/Release by Mr. Hosfeld.** In consideration of the Settlement Amount and other benefits provided in this Agreement and intending to be legally bound, and except for the rights and obligations arising under this Agreement, Mr. Hosfeld hereby releases Postal Transport and all of Postal Transport's predecessors, successors, assigns, parents, subsidiaries, operating companies, affiliates, insurers, and directors, and all of Postal Transport's respective current and former officers, employees, attorneys, representatives and agents (collectively, the "Defendant Released Parties") from any and all complaints, charges, liabilities, damages, claims, causes of action, lawsuits, fines, penalties, interest and/or expenses (including attorneys' fees and costs), of any nature whatsoever, whether asserted or unasserted, known or unknown, that Mr. Hosfeld ever had or now has against Postal Transport or any of the other Defendant Released Parties that arose at any time up to the date of this Agreement. For clarity, and not by way of limitation, the Parties confirm that, pursuant to this Section 7 and to the fullest extent permissible by law, Mr. Hosfeld is releasing Postal Transport and the other Defendant Released Parties from any and all claims: (a) that he asserted or could have asserted in the Lawsuit; (b) that arise out of or relate to Mr. Hosfeld's employment with Postal Transport; (c) that arise out of or pursuant to any express or implied verbal or written contract (except this Agreement) or under any quasi-contract theory, including breach of the covenant of good faith and fair dealing; (d) for wages, bonuses, commissions, vacation pay, sick pay or compensation of any kind; (e) for retaliation; (f) that arise out of any common law, tort, or equitable principle; or (g) that arise under any federal, state or local statute, regulation or ordinance including, without limitation:

→   **Federal Laws, such as:**

Title VII of the Civil Rights of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; The Civil Rights Act of 1991; The Equal Pay Act; The Americans with Disabilities Act; The Rehabilitation Act; The Employee Retirement Income Security Act; The Worker Adjustment and Retraining Notification Act; The National Labor Relations Act; The Fair Credit Reporting Act; The Occupational Safety and Health Act; The Uniformed Services Employment and Reemployment Act; The Employee Polygraph Protection Act; The Immigration Reform Control Act; The Family and Medical Leave Act; The Genetic Information Nondiscrimination Act; The Federal False Claims Act; The Patient Protection and Affordable Care Act; The Consolidated Omnibus Budget Reconciliation Act; The Fair Labor Standards Act; and The Lilly Ledbetter Fair Pay Act.

→   **State Laws, such as:**

The New Jersey Law Against Discrimination; the New Jersey Discrimination in Wages Law; the New Jersey Temporary Disability Benefits and Family Leave Insurance Law; the New Jersey Domestic Partnership Act; the New Jersey Conscientious Employee Protection Act; the New Jersey Family Leave Act; the New Jersey Wage Payment Act; the New Jersey Wage and Hour Law; the New Jersey Equal Pay Law; the New Jersey Occupational Safety and Health Law; the New Jersey False Claims Act; the New Jersey Smokers' Rights Law; the New Jersey Genetic Privacy Act; the New Jersey Fair Credit Reporting Act; the New Jersey Emergency Responder Leave Law; the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act (a/k/a the New Jersey WARN Act); and the retaliation provisions of the New Jersey Workers' Compensation Law.

c.   ~~b.~~ **False Claims Act.**   Mr. Hosfeld also releases and waives any and all claims for personal gain under the Federal False Claims Act.

d.   ~~c.~~ **Waiver of Recovery.**   Mr. Hosfeld acknowledges and agrees that by virtue of the foregoing, he has waived any relief available to him (including, without limitation, monetary damages, equitable relief and reinstatement) under any of the claims and causes of action waived in this Agreement. Therefore, Mr. Hosfeld agrees that he will not accept any award or settlement from any source or proceeding (including, but not limited to, any

proceeding brought by any other person or by any government agency) with respect to any claim or right waived in this Agreement.

e. ~~d.~~ **Waiver of Amendments.** Mr. Hosfeld also releases all claims under any and all amendments to any of the above laws and releases claims for violations of any other federal, state or local law, regulation or ordinance, and contract or implied contract or tort law or public policy or whistleblower claim having any bearing whatsoever on Mr. Hosfeld's employment.

f. ~~e.~~ **Broad Scope of the Release.** This release is intended to be as broad as legally permissible and applies to both employment-related and non-employment-related claims up to the time that Mr. Hosfeld executes this Agreement. This release includes a waiver of jury trials and non-jury trials. This Agreement does not release or waive claims or rights that, as a matter of law, cannot be waived.

g. ~~f.~~ **No Outstanding Claims.** Mr. Hosfeld represents that, other than the Lawsuit, there are no outstanding civil, criminal or administrative charges, complaints, claims, grievances or actions of any nature whatsoever previously filed or brought by him or on his behalf against any of the Defendant Released Parties pending before any federal, state, local or administrative court or agency as of the date on which he signs this Agreement.

h. ~~g.~~ **Exceptions.** Nothing contained in this Section 7 is intended to release claims: (1) arising after the date on which Mr. Hosfeld executes this Agreement; or (2) that may not be released as a matter of law.

8. **Covenant Not to Sue.** Mr. Hosfeld agrees that neither he nor any person or entity on his behalf shall commence, maintain or prosecute any lawsuit or other court action of any kind against any of the Defendant Released Parties with respect to any act, omission or other matter encompassed by Section 7 above, except that nothing in this Agreement prevents Mr. Hosfeld from bringing a legal action or otherwise taking steps to:

- Enforce the terms of this Agreement; or

- Challenge the validity of this Agreement; or

- Make any disclosure of information required by law; or

- Provide information to, testify before or otherwise assist in any investigation or proceeding brought by, any regulatory or law enforcement agency or legislative body, any self-regulatory organization, or Postal Transport; or

- Provide truthful testimony in any forum; or

- Cooperate fully and provide information as requested in any investigation by a governmental agency or commission; or

- File a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission or any other federal, state or local governmental agency or commission; or

- File a lawsuit or other action to pursue Claims that arise after Mr. Hosfeld executed this Agreement.

For purposes of clarity, this Agreement does not limit Mr. Hosfeld's ability to communicate with any government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information, without notice to Postal Transport.

~~9.   **Class Action / Collective Action Waiver.**  Mr. Hosfeld agrees not to sue or otherwise bring any legal action against Postal Transport or any of the Released Parties ever for any claims released in Section 7 arising before Mr. Hosfeld executes this Agreement.  Mr. Hosfeld is not only waiving any right he may have to proceed individually, but also as a member of a class or collective action.  In the event that Mr. Hosfeld receives notice of a class or collective action against the Released Parties for claims arising before he executes this Agreement, Mr. Hosfeld must "opt out" of and may not "opt in" to such action.  Mr. Hosfeld is also giving up any right he may have to recover any relief from the Released Parties as a member of a class or collective action.~~

9.   ~~10.~~ **No Cooperation.**  Except as otherwise required by law, including pursuant to any lawfully issued subpoena, Mr. Hosfeld agrees not to provide any documents or information to, or otherwise assist in any way, any individual or entity with any allegations, demands or legal actions of any nature against Postal Transport or any of the Defendant Released Parties.

10.   ~~11.~~ **No Other Filings**.  Mr. Hosfeld represents that he has not filed any complaint, charge or grievance against Postal Transport or any of the other Defendant Released Parties in any local, state or federal agency or court other than the Lawsuit.

11.   ~~12.~~ **Agreement Not to Be Considered or Used as Evidence.**  Mr. Hosfeld agrees that this Agreement shall not be offered, used or considered as evidence in any proceeding of any type against or involving Postal Transport or any of the other Defendant Released Parties, except to the extent necessary to enforce its terms, or as otherwise compelled by law.

12.   ~~13.~~ **Non-Disparagement.**  Mr. Hosfeld agrees that he will not, through any medium including, but not limited to, the press, Internet or any other form of communication,

disparage, defame, or otherwise damage or assail the reputation, integrity or professionalism of Postal Transport or Defendant Released Parties. Nothing in this Section ~~15~~12 is intended to restrict or impede Mr. Hosfeld from exercising protected rights to the extent that such rights cannot be waived by agreement.

13.   ~~14.~~ **Full Payment.**   Mr. Hosfeld acknowledges that, upon receiving the Settlement Amount described in Section 2, he will have been paid or has received all compensation, wages, bonuses, overtime payments, vacation pay, sick pay, commissions, equity grants and benefits to which he may have been entitled in connection with his employment and that no other compensation, wages, bonuses, overtime payments, vacation pay, sick pay, commissions equity grants or benefits are due to him.

14.   ~~15.~~ **Knowing and Voluntary.**   Mr. Hosfeld certifies that he has carefully read and fully understands all of the provisions and effects of this Agreement; that he has been advised, through this Section ~~17~~14, to consult and thoroughly discuss all aspects of this Agreement with his attorney; that he has reviewed this Agreement with his attorney, Julie LaVan, Esq., of LaVan Law; that he is voluntarily entering into this Agreement; and that neither Postal Transport, nor any of the other Defendant Released Parties have made any representations concerning the terms or effects of this Agreement other than those contained in the Agreement.

15.   ~~16.~~ **Unknown Facts.**   By signing this Agreement, Mr. Hosfeld is acknowledging that he has full knowledge of any and all rights he may have and is assuming the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts that are now unknown to him. Postal Transport is making the same acknowledgment and assuming the same risk.

16.   ~~17.~~ **Adequate Consideration.**   Mr. Hosfeld agrees that the Settlement Amount constitutes full and fair consideration for all agreements, promises, and representations contained in this Agreement.  More specifically, Mr. Hosfeld agrees that the Settlement Amount constitutes more than adequate consideration to support his general release of claims and covenant not to sue in this Agreement.

17.   ~~18.~~ **Construction of the Agreement.**   This Agreement is made and entered into in the State of New Jersey and shall in all respects be interpreted and enforced according to the laws of New Jersey without regard to conflict of laws principles.  The language of this Agreement shall in all cases be construed as a whole and given its fair meaning, and shall not be construed strictly for or against any of the Parties.  The Parties agree to submit to the jurisdiction of the federal courts in the State of New Jersey with respect to any action concerning the enforcement or interpretation of this Agreement.

18.   ~~19.~~ **Counterparts; Facsimile.**   This Agreement may be executed in any number of counterparts, or in different counterparts, any of which shall be deemed an original, but all of which together shall constitute one and the same agreement.  A facsimile or electronically scanned signature on this Agreement shall have the same force and effect as an original signature.

19.   ~~20.~~ **Severability and Court Modification.**  If any portion of this Agreement is determined to be illegal, unenforceable, or ineffective in a legal forum of competent jurisdiction, the Parties agree that the remaining provisions of this Agreement not declared invalid will continue in full force and effect.  If any of the provisions, terms, clauses, waivers or releases in this Agreement is declared illegal, unenforceable, or ineffective in a legal forum of competent jurisdiction, such provisions, terms, clauses, waivers or releases shall be modified, if possible, in order to achieve, to the extent possible, the intentions of the Parties.

20.   ~~21.~~ **Remedies for Breach.**  In the event of a breach of the Settlement Agreement, the prevailing party shall recover attorneys' fees.  If Mr. Hosfeld breaches any Section of the Settlement Agreement, including without limitation, Sections 7, 8, or ~~14~~13 or otherwise seeks to bring a claim given up under this Settlement Agreement, Postal Transport will be entitled to relief legally available to it, including equitable relief such as injunctions.

21.   ~~22.~~ **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties, and fully supersedes any and all prior agreements or understandings between either of them pertaining to the subject matter hereof.  This Agreement may not be modified or amended except through a written document executed by both Parties.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

**BY SIGNING THIS AGREEMENT, KENNETH HOSFELD ACKNOWLEDGES THAT HE DOES SO VOLUNTARILY AFTER CAREFULLY READING AND FULLY UNDERSTANDING EACH PROVISION AND ALL OF THE EFFECTS OF THIS AGREEMENT, WHICH INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS AND A RESTRICTION ON FUTURE LEGAL ACTION AGAINST POSTAL TRANSPORT AND OTHER DEFENDANT RELEASED PARTIES.**

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed the foregoing Settlement Agreement and General Release on the dates indicated below.

DATE: _____          By:_____
                                         KENNETH HOSFELD


                                         POSTAL TRANSPORT, INC.

DATE: _____          By: _____
                                         Name:
                                         Title:


DATE: _____          By:_____
                                         CLIFFORD FINKLE IV

| Summary report: Litéra® Change-Pro 7.5.0.50 Document comparison done on 2/24/2017 4:04:19 PM | |
|---|---|
| **Style name:** DBR Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://WORKSITE/ACTIVE/87063047/3 | |
| **Modified DMS:** iw://WORKSITE/ACTIVE/87063047/4 | |
| **Changes:** | |
| Add | 50 |
| Delete | 29 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format Changes | 0 |
| **Total Changes:** | 79 |







# Settlements — Taxability

If you receive proceeds from settlement of a lawsuit, you may have questions about whether you must include the proceeds in your income. This publication provides information about whether you must include the proceeds of certain kinds of settlements in your income. Whether you must include the settlement proceeds in your income depends on all the facts and circumstances in your case.

A settlement payment may consist of multiple elements that have been allocated by the parties. For example, an agreement may include allocations to back pay, emotional distress, and attorneys' fees. Generally, the IRS will not disturb an allocation if it is consistent with the substance of the settled claims.

## Personal physical injuries or physical sickness

- If you receive a settlement for personal physical injuries or physical sickness and did not take an itemized deduction for medical expenses related to the injury or sickness in prior years, the full amount is non-taxable. Do not include the settlement proceeds in your income.

### BUT

- If you receive a settlement for personal physical injuries or physical sickness, you must include in income that portion of the settlement that is for medical expenses you deducted in any prior year(s) to the extent the deduction(s) provided a tax benefit. If part of the proceeds is for medical expenses you paid in more than one year, you must allocate on a pro rata basis the part of the proceeds for medical expenses to each of the years you paid medical expenses. See Recoveries in Publication 525 for details on how to calculate the amount to report. The tax benefit amount should be reported as "Other Income" on line 21 of Form 1040.

## Emotional distress or mental anguish

- The proceeds you receive for emotional distress or mental anguish originating from a personal physical injury or physical sickness are treated the same as proceeds received for Personal physical injuries or physical sickness above.

### BUT

- If the proceeds you receive for emotional distress or mental anguish do not originate from a personal physical injury or physical sickness, you must include them in your income. However, the amount you must include is reduced by: (1) amounts paid for medical expenses attributable to emotional distress or mental anguish not previously deducted and (2) previously deducted medical expenses for such distress and anguish that did not provide a tax benefit. Attach to your return a statement showing the entire settlement amount less related medical costs not previously deducted and medical costs deducted for which there was no tax benefit. The net taxable amount should be reported as "Other Income" on line 21 of Form 1040.

Publication 4345 (Rev. 12-2016)  Catalog Number 38586D  Department of the Treasury  **Internal Revenue Service**  www.irs.gov



# Settlements —
# Taxability (continued)

## Lost wages or lost profits

- If you receive a settlement in an employment-related lawsuit; for example, for unlawful discrimination or involuntary termination, the portion of the proceeds that is for lost wages (i.e., severance pay, back pay, front pay) is taxable wages and subject to the social security wage base and social security and Medicare tax rates in effect in the year paid. These proceeds are subject to employment tax withholding by the payor and should be reported by you as 'Wages, salaries, tips, etc." on line 7 of Form 1040.

- If you receive a settlement for lost profits from your trade or business, the portion of the proceeds attributable to the carrying on of your trade or business is net earnings subject to self-employment tax. These proceeds are taxable and should be included in your "Business income" reported on line 12 of Form 1040. These proceeds are also included on line 2 of Schedule SE (Form 1040) when figuring self-employment tax. For more information about reporting self-employment income and paying self-employment tax, see Publication 334, Tax Guide for Small Business (For Individuals Who Use Schedule C or C-EZ).

## Loss-in-value of property

- Property settlements for loss in value of property that are less than the adjusted basis of your property are not taxable and generally do not need to be reported on your tax return. However, you must reduce your basis in the property by the amount of the settlement.

- If the property settlement exceeds your adjusted basis in the property, the excess is income. For more information, see the Instructions for Schedule D, (Form 1040) Capital Gains and Losses and the Instructions for Form 4797, Sales of Business Property.

**Interest:** Interest on any settlement is generally taxable as "Interest Income" and should be reported on line 8a of Form 1040.

**Punitive Damages:** Punitive damages are taxable and should be reported as "Other Income" on line 21 of Form 1040, even if the punitive damages were received in a settlement for personal physical injuries or physical sickness.

Some settlement recipients may need to make estimated tax payments if they expect their tax to be $1,000 or more after subtracting credits & withholding. Information on estimated taxes can be found in IRS Publication 505, Tax Withholding and Estimated Tax, and in Form 1040-ES, Estimated Tax for Individuals.

For additional information, see Publication 525, Taxable and Nontaxable Income, visit our website at www.irs.gov, or call toll-free at 1-800-829-1040.

**Important Note about Health Insurance Coverage. If you, your spouse, or your dependent enrolled in health insurance coverage through the Health Insurance Marketplace and advance payments of the premium tax credit were made to the insurance company, let the Marketplace know if you have a change in circumstances such as a taxable settlement resulting in an increase in your income. Reporting changes allows the Marketplace to adjust the amount of your advance credit payments, which helps prevent large differences between your advance credit payments and the premium tax credit you are allowed and, potentially, an increase in your tax liability. Find out more about the tax-related provisions of the health care law at IRS.gov/aca. See IRS Publication 5121, Need help paying for health insurance premiums? and Publication 5152, Report changes to the Marketplace as they happen.**

All of the forms and publications referenced in this publication are available from the IRS at www.irs.gov. Paper copies can be ordered by calling 1-800-829-3676 (1-800-TAX-FORM).

2



McDonnell v. Engine Distributors, Not Reported in F.Supp.2d (2007)

2007 WL 2814628

2007 WL 2814628
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
D. New Jersey.

John McDONNELL, Plaintiff,
v.
ENGINE DISTRIBUTORS, Defendant.

Civil Action No. 03-1999.
|
Sept. 24, 2007.

**Attorneys and Law Firms**

Mark Cimino, Deptford, NJ, for Plaintiff.

Allen A. Etish, Douglas Diaz, Archer & Greiner, Haddonfield, NJ, for Defendant.

**OPINION**

JOSEPH H. RODRIGUEZ, United States District Judge.

**\*1** This matter comes before the Court on separate motions filed by Plaintiff, John McDonnell, and Defendant, Engine Distributors, Inc. First, Defendant moves for Reconsideration [51] of the Court's January 16, 2007 Order enforcing settlement. Second, Plaintiff moves for Entry of Judgment and for Civil Contempt [52] against Defendant for its failure to comply with the same Order. For the reasons discussed below, the Court will deny Defendant's Motion for Reconsideration. Additionally, it will grant in part and deny in part Plaintiff's Motion for Entry of Judgment and for Civil Contempt.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

John McDonnell ("Plaintiff") commenced his employment with Engine Distributors, Inc. ("Defendant") in 1963 and was terminated at the age of 69 years old in August 2002. (Pl.Compl.¶ ¶ 1, 5, 7.) On May 2, 2003, Plaintiff filed this suit, alleging violations of the Age Discrimination in Employment Act ("ADEA") and the New Jersey Law Against Discrimination ("NJLAD").

Following a grant of summary judgment for Defendant on the NJLAD claim, trial on the ADEA claim was set for June 5, 2006. After selecting a jury, the parties alerted the Court that they had reached a settlement. The Court then verified the existence of the settlement on the Record and thereafter entered a 60 Day Order dismissing the case. (*See* Settlement Tr., June 5, 2006, pp. 2-3 .)

On July 18, 2006, defense co-counsel, Douglas Diaz, sent Plaintiff's counsel, Mark Cimino, a proposed memorialization of the settlement. (*See* Pl. Supp. Br. (Motion for Entry of Judgment and Civil Contempt), Exh. C.) Mr. Cimino responded on August 2, 2006 with his own proposed memorialization, which differed in several ways from Mr. Diaz's proposal. [1] (*See id.*, Exh. D.)

[1]  In fact, there are at least six differences between Defendant and Plaintiff's proposed memorializations. First, Plaintiff's memorialization contained a mutual, rather than a unilateral, release of claims. (*Compare* Pl. Supp. Br. (Motion for Entry of Judgment and Civil Contempt), Exh. D, ¶¶ 2.a., b. *with id.*, Exh. C, ¶ 2.) Second, Plaintiff's proposal contained a $150 per day liquidated damages clause triggered by nonpayment of settlement proceeds. (*See id.*, Exh. D, ¶ 3.c.). Third, Plaintiff deleted language to the effect that Defendant would withhold income and/ or payroll taxes from settlement proceeds before remitting them to Plaintiff. (*Compare id.*, Exh. D, ¶ 3.b. *with id.*, Exh. C, ¶ 3.b.) Fourth, Plaintiff deleted language whereby his counsel would have been potentially responsible for any tax deficiencies stemming from non-payment or underpayment of employment taxes owed on settlement proceeds. (*Compare id.*, Exh. D, ¶ 4 *with id.*, Exh. C, ¶ 4.) Fifth, Plaintiff deleted a provision by which he and/ or his counsel would have indemnified Defendant against costs and claims associated with a potential tax deficiency case. (*Compare id.*, Exh. D, ¶ 4 *with id.*, Exh. C, ¶ 4.) Sixth, Plaintiff's memorialization modified the confidentiality clause to apply to both parties rather than to Plaintiff only. (*Compare id.*, Exh. D, ¶ 10 *with id.*, Exh. C, ¶ 10.)

Because the parties were unable to resolve these differences within the time frame originally contemplated, the Court then extended its Order of Dismissal to October 10, 2006. Nonetheless, the parties again stalemated in their discussions over memorialization of the settlement. As a consequence, Plaintiff did not receive any settlement proceeds. Thus, on October 6, 2006, Plaintiff filed a

McDonnell v. Engine Distributors, Not Reported in F.Supp.2d (2007)

2007 WL 2814628

Motion to Enforce the Settlement. Defendant opposed the Motion and argued that it called for enforcement of terms to which it never agreed, namely those terms added by Mr. Cimino in his proposed memorialization. (*See* Def. Br. (Opposing Motion to Enforce Settlement), pp. 4–5.) Additionally, Defendant alleged that Plaintiff violated the settlement agreement's non-disclosure and nondisparagement provisions. (*See id.*, pp. 5–6.) This, according to Defendant, justified the remedy of rescission. (*See id.*) The Court held a hearing on the matter on October 31, 2006. Then, on January 16, 2007, after entertaining the parties' additional arguments via a telephone conference, the Court ordered the settlement to be enforced.

Two weeks later, on January 30, 2007, Defendant filed the instant Motion for Reconsideration of the January 16 Order. In support of its Motion, Defendant primarily argues that there is actually no settlement agreement to enforce because there was never a meeting of the parties' minds as to certain material terms. (*See* Def. Supp. Br. (Motion for Reconsideration), pp. 3–6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), pp. 13–16.) Further, Defendant argues that any purported agreement is invalid because defense co-counsel, Allen Etish, lacked authority to enter into it. (*See* Def. Supp. Br. (Motion for Reconsideration), p. 6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), p. 17.) Finally, Defendant resurrects its earlier argument that Plaintiff breached any agreement that may have existed, thereby justifying the remedy of rescission. (*See* Def. Br. (Motion for Reconsideration), pp. 1–2.)

**\*2** One day after Defendant filed its Motion for Reconsideration, Plaintiff filed the instant Motion for the Entry of Judgment and for Civil Contempt. In support of his Motion, Plaintiff argues that Defendant has persisted in its refusal to pay over settlement proceeds. (*See* Pl. Br. (Motion for Entry of Judgment and Civil Contempt), p. 3.) This, according to Plaintiff, breaches the settlement agreement and flouts the Court's January 16 Order. (*Id.*) Plaintiff therefore concludes that the Court should not only enter judgment in the full amount of the settlement, but also hold Defendant in civil contempt. (*Id.*)

## II. DISCUSSION

### A. Defendant's Motion for Reconsideration

#### 1. Motion for Reconsideration Standard

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). It must be stressed, however, that reconsideration is "an extraordinary remedy" and is granted "sparingly." *NL Indus., Inc. v. Commercial Union Ins. Co.,* 935 F.Supp. 513, 516 (D.N.J.1996).

To succeed on a motion for reconsideration, the moving party must show "more than a disagreement" with the decision he would like reconsidered. *Anders v. FPA Corp.,* 164 F.R.D. 383, 387 (D.N.J.1995). Instead, there must be some "dispositive factual matters or controlling decisions of law" that were presented to the Court, but not considered. *United States v. Compaction Sys. Corp.,* 88 F.Supp.2d 339, 345 (D.N.J.1999). Thus, a "mere recapitulation of the cases and arguments considered by the court before rendering the original decision" does not warrant a grant of reconsideration. *S.C. v. Deptford Twp. Bd. of Educ.,* 248 F.Supp.2d 368, 381 (D.N.J.2003).

A motion for reconsideration will likewise fail if the moving party merely raises arguments or presents evidence that could have been raised or presented before the original decision was reached. *NL Indus. Inc.,* 935 F.Supp. at 516. Thus, the moving party must actually present "something new or something overlooked by the court in rendering the earlier decision." *Khair v. Campbell Soup Co.,* 893 F.Supp. 316, 337 (D.N.J.1995) (citing *Harsco Corp.,* 779 F.2d at 909). The word "overlooked" is the operative term and has been consistently interpreted as referring only to facts and legal arguments that might reasonably have resulted in a different conclusion had they been considered. *United States v. DeLaurentis,* 83 F.Supp.2d 455, 474 n. 2. (D.N.J.2000).

#### 2. Analysis of Defendant's Arguments in Support of Reconsideration

Defendant advances three arguments in support of its Motion for Reconsideration. First, Defendant argues there was never a meeting of the parties' minds as to certain

McDonnell v. Engine Distributors, Not Reported in F.Supp.2d (2007)

2007 WL 2814628

material terms and therefore no settlement agreement was actually reached. (*See* Def. Supp. Br. (Motion for Reconsideration), pp. 3-6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), p. 13-16.) Second, it claims that Mr. Etish lacked authority under the circumstances to enter into a settlement on its behalf, thereby rendering the June 5, 2006 agreement invalid. (*See* Def. Supp. Br. (Motion for Reconsideration), p. 6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), p. 17.) Third, it argues that the Court should have held an evidentiary hearing on the issue of whether Plaintiff breached the purported settlement, thereby justifying rescission of any agreement that was reached. (*See* Def. Br. (Motion for Reconsideration), pp. 1-2.) Each argument will be addressed in turn and, as discussed below, each lacks merit.

*a. The parties reached a binding settlement agreement on June 5, 2006.*

**\*3** Defendant first argues that it never actually reached a settlement with Plaintiff. More specifically, Defendant claims the differences between the terms in the parties' proposed memorializations demonstrate that they never achieved a meeting of the minds. (*See* Def. Supp. Br. (Motion for Reconsideration), pp. 3-6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), pp. 13-16.) Instead, Defendant asserts that the parties merely exchanged an offer and a counteroffer, both of which were rejected. (*See* Def. Supp. Br. (Motion for Reconsideration), pp. 5-6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), pp. 15-16.) The Court disagrees.

It should first be noted that a settlement agreement is a form of a contract. *Mortellite v. Novartis Crop Prot., Inc.,* 460 F.3d 483, 492 (3d Cir.2006) (citing *Borough of Haledon v. Borough of N. Haledon,* 817 A.2d 965, 975 (N.J.Super.Ct.App.Div.2003)). Courts therefore look to general principles of local contract law to resolve disputes over such agreements. *Id.*

New Jersey has a strong public policy in favor of settlements. *Nolan v. Lee Ho,* 577 A.2d 143, 146 (N.J.1990). Courts will therefore "strain to give effect to the terms of a settlement wherever possible." *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.,* 503 A.2d 331, 333 (N.J.Super.Ct.App.Div.1985).

Notwithstanding the strong policy favoring settlements, "[a] settlement stipulation should not be enforced 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms.' " *Bistricer v. Bistricer,* 555 A.2d 45, 47 (N .J.Super.Ct. Ch. Div.1987) (quoting *Kupper v. Barger,* 111 A.2d, 73, 74-75 (N.J.Super.Ct.App.Div.1955)). However, as the *Bistricer* court explained:

> [I]t is not necessary for a writing to contain every possible contractual provision to cover every contingency in order to qualify as a completed binding agreement. Some of these issues may be determined by the operation of law, or the parties may resolve such differences by a subsequent agreement or a contract may be silent in those respects. In any event a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect. *So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound.*

*Id.* (emphasis added) (quoting *Berg Agency v. Sleepworld,* 346 A.2d 419, 423-24 (N.J.Super.Ct.App.Div.1975)).

Additionally, under New Jersey law, it is sufficient if the parties orally agree on the essential terms, "even though they contemplate the later execution of a formal document to memorialize their undertaking." *United States v. Lightman,* 988 F.Supp. 448, 459 (D.N.J.1997). Indeed, as long as those essential terms are agreed to, "the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges." *Lahue v. Pio Costa,* 623 A.2d 775, 788 (N.J.Super.Ct.App.Div.1993).

**\*4** Based on these principles, it is clear that the parties in this case reached an enforceable settlement agreement on June 5, 2006. The Record clearly indicates the parties' intent to enter into a settlement:

McDonnell v. Engine Distributors, Not Reported in F.Supp.2d (2007)

2007 WL 2814628

THE COURT: Counsel, I understand that the case has been resolved by way of settlement.

MR. CIMINO: That is correct, your Honor.

MR. ETISH: Correct, your Honor.

* * *

THE COURT: Now first, Mr. McDonnell, are you satisfied with the settlement?

MR. MCDONNELL: Yes, I am, your Honor.

THE COURT: And are you satisfied with the representation you have received in this case?

MR. MCDONNELL: Yes, I am.

THE COURT (to Defendant's principal, Glenn Cummins): And also with you, sir, are you satisfied with the settlement?

MR. CUMMINS: Yes.

THE COURT: And you're satisfied with the representation you've received in this case?

MR. CUMMINS: Yes.

(Settlement Tr., June 5, 2006, p. 2.)

While the Record demonstrates that the parties intended to settle the case, it obviously does not identify the terms upon which they agreed.[2] These terms are, however, evident upon examination of the Record evidence.

[2]    At their request, the Court permitted the parties to refrain from entering the details of the settlement agreement on the Record in order to preserve confidentiality of the specific terms.

In order to fully develop the facts necessary to decide this Motion, the Court held an evidentiary hearing over three days in May and June 2007. During the course of this hearing, Mr. Cimino, Mr. Etish, and Mr. Cummins each testified.

Mr. Etish testified that on June 5, 2006, he and Mr. Cimino discussed and agreed upon three key terms for a settlement. These terms included: 1) payment of $105,000 by Defendant to Plaintiff; 2) a clause prohibiting the parties from disparaging each other; and 3) non-disclosure of the settlement terms. (*See* Settlement Hearing Tr. (Mr. Etish), May 15, 2007, 68:21-71:7.) Mr. Etish also clearly explained that, apart from an issue pertaining to the timing of payment, no other terms were discussed that day. (*See id.,* 71:9-74:4, 75:17-25, 94:4-11.) Mr. Etish's testimony on these points is entirely consistent with that of Mr. Cimino, who similarly explained that the negotiations and agreement that day involved only those three terms and the ancillary discussion about the timing of payment. (*See* Settlement Hearing Tr. (Mr. Cimino), May 15, 2007, 9:24-12:22, 12:24-13:1, 22:4-14.) Thus, both attorneys understood the settlement to contain only these three terms.

Mr. Etish additionally testified that he discussed these terms that day with Mr. Cummins. (*See* Settlement Hearing Tr. (Mr. Etish), May 15, 2007, 74:6-12.) When asked whether Mr. Cummins then authorized settlement, Mr. Etish responded, "Mr. Cummins at the time agreed to the amount of money, and he agreed to the terms as I had outlined them, yes." (*Id.,* 74:14-18.) Therefore, according to Mr. Etish, Mr. Cummins understood and agreed that the proposed settlement would include only these three terms.

Mr. Cummins's testimony differed significantly. He, like the attorneys, testified that he understood a settlement was reached on June 5, 2006. (*See* Settlement Hearing Tr. (Mr. Cummins), May 17, 2007, 4:11-13.) However, he claimed to believe that the settlement consisted of five terms-the same three terms discussed above, as well as a unilateral release of Plaintiff's claims and a non-competition clause. (*See id.,* 4:14-21.) Mr. Cummins testified that he made it clear to Mr. Etish that this was his (Mr. Cummins's) understanding of the settlement. (*See id.,* 11:6-12:6 .) Indeed, according to Mr. Cummins, the two men discussed the non-competition clause, in particular, throughout the day. (*See id.,* 14:10-14.)

**\*5** Mr. Cummins also testified that he was later reassured in his understanding of the settlement immediately before agreeing to it on the Record. Specifically, Mr. Cummins explained that he believed the settlement terms would be explicitly identified on the Record. (*See id.,* 5:5-6.) When they were not, he asked Mr. Etish whether the settlement contained all the terms they had discussed before entering the courtroom. (*See id.,* 4:25-5:8, 14:1-9.) Mr. Etish answered in the affirmative, which Mr. Cummins took

McDonnell v. Engine Distributors, Not Reported in F.Supp.2d (2007)

2007 WL 2814628

to mean the settlement contained all five terms. (*See id.,* 5:8-9, 14:7.)

Mr. Cummins's version of events is almost entirely at odds with Mr. Etish's testimony. Specifically, Mr. Etish was certain that he never represented to Mr. Cummins that a non-competition clause was part of the settlement. [3] (*See* Settlement Hearing Tr. (Mr. Etish), May 15, 2007 80:23-81:10; Settlement Hearing Tr. (Mr. Etish), June 5, 2007, 6:24-7:3, 17:14-17.) Likewise, Mr. Etish had no recollection of Mr. Cummins inquiring on June 5, 2006 about whether the settlement contained a non-competition clause. (*See* Settlement Hearing Transcript (Mr. Etish), June 5, 2007, 13:10-13, 14:18-22.) Thus, when Mr. Etish told Mr. Cummins that the settlement included all the terms they had discussed before entering the courtroom, Mr. Etish understood this to refer only to the three terms he explained to Mr. Cummins after having reached the agreement with Mr. Cimino. (*See* Settlement Hearing Tr. (Mr. Etish), June 5, 2007, 11:6-12:5.)

[3]   During a bit of an elaboration, Mr. Etish also explained that settlement negotiations in this case always contemplated two separate scenarios, one in which a non-competition clause would be included in the agreement and one in which it would not. (*See* Settlement Hearing Tr. (Mr. Etish), June 5, 2007, 7:3-7.) When Mr. Etish and Mr. Cimino discussed the dollar amounts, there was a substantial difference between the two scenarios. Indeed, the amount discussed for a settlement with a non-competition clause was in the $500,000 range. (*See id.,* 7:7-10, 12:16-18, 22:25-23:4.) By contrast, the discussions for a settlement without a covenant not to compete revolved around the $200,000 to $350,000 range. (*See id.,* 7:10-12, 12:14-16.) Moreover, Mr. Etish testified that the proposed dollar amounts were always communicated to Mr. Cummins. (*See id.,* 9:14-15.) Thus, Mr. Etish believed that when he and Mr. Cummins discussed settling for $105,000, both men understood the proposal not to contain a non-competition clause. (*See id.,* 7:12-15, 12:13-18.)

The distinctions between Mr. Etish and Mr. Cummins's testimony also extend to events occurring after June 5, 2006. It appears that Mr. Cummins and Mr. Etish spoke by telephone sometime prior to October 6, 2006. (*See* Settlement Hearing Tr. (Mr. Etish), June, 5, 2007, 15:23-16:3; Settlement Hearing Tr. (Mr. Cummins), May 17, 2007, 5:13-23.) There was some discussion during this conversation about the status of a non-competition

clause in the settlement. (*See* Settlement Hearing Tr. (Mr. Etish), June 5, 2007, 16:5-7; Settlement Hearing Tr. (Mr. Cummins), May 17, 2007, 5:18-21.) In response to this discussion, Mr. Etish wrote Mr. Cummins a letter in which he clearly explained that the settlement did not feature such a term. [4] (*See* Pl. Br. as to Settlement Issues (Motion for Entry of Judgment and for Civil Contempt), Exh. G.) Moreover, Mr. Etish indicated that neither he nor Mr. Diaz previously advised Mr. Cummins to the contrary. (*Id.*)

[4]   This assertion is consistent with the fact that the July 18, 2006 proposed memorialization that Mr. Etish drafted nowhere mentioned a covenant not to compete. (*See* Pl. Supp. Br. (Motion for Entry of Judgment and for Civil Contempt), Exh. C.) Moreover, in a letter to Mr. Cimino dated October 6, 2006, Mr. Diaz identified the need to "revise" the settlement to add a noncompetition clause. (*See* Pl. Br. as to Settlement Issues (Motion for Entry of Judgment and for Civil Contempt), Exh. H.) Ostensibly, if either defense counsel understood the settlement to already contain such a term, there would be no reason to revise the agreement to add one.

Shortly thereafter, Mr. Cummins again spoke with Mr. Etish. Mr. Cummins testified that, during this conversation, he indicated his belief that the statements in the Mr. Etish's October 6, 2006 letter were false. (*See* Settlement Hearing Tr. (Mr. Cummins), May 17, 2007, 10:2-18.) In contrast, however, Mr. Etish testified that Mr. Cummins never said anything of the sort during this conversation. (*See* Settlement Hearing Tr. (Mr. Etish), June, 5, 2007, 14:3-8, 16:17-17:7.)

**\*6** Obviously, Mr. Etish and Mr. Cummins's versions of events differ sharply from one another. The Court, however, has the advantage of having observed their testimony first hand. The Court took careful note of both men's demeanor while testifying and has accordingly evaluated their credibility. Based on these observations, the Court finds Mr. Etish to be a credible witness while it concludes that Mr. Cummins is not credible.

Mr. Etish's testimony was clear and consistent, both internally and with Mr. Cimino's testimony. It was likewise consistent with Mr. Etish's own actions following June 5, 2006. Moreover, Mr. Etish is a capable attorney. As such, the Court doubts he would have represented to Mr. Cummins that the settlement contained a non-

competition clause when this was clearly not a term he and Mr. Cimino discussed, or to which they agreed, on June 5, 2006.

By contrast, Mr. Cummins's demeanor while testifying was that of a person who lacked certainty regarding his version of events. Moreover, he was, at times, evasive in response to questioning. This obviously casts doubt on the reliability of his testimony.

Additionally, Mr. Cummins is a sophisticated businessman. He undoubtedly enters into complex agreements all the time. The Court therefore strongly doubts he would have believed this settlement, for this dollar amount, to contain a covenant not to compete given the settlement history of this case. [5]

[5]      See supra footnote 3.

Based on the testimony and other Record evidence, the Court believes Mr. Etish and Mr. Cimino discussed and reached agreement with respect to three essential terms: 1) the payment of $105,000 by Defendant to Plaintiff; 2) non-disparagement between the parties; and 3) non-disclosure of settlement terms. Moreover, the Court believes Mr. Etish conveyed this proposal to Mr. Cummins, who also agreed. Thus, the parties entered into a binding settlement agreement premised on these three terms.

Defendant nonetheless claims that there was never a meeting of the parties' minds sufficient to create a binding settlement agreement. It directs the Court to the Third Circuit's unpublished opinion in *United States v. Lauckner,* 101 F. App'x 870 (3d Cir.2004). In that case, a taxpayer and the Internal Revenue Service ("IRS") exchanged correspondence regarding the possibility of resolving via settlement the taxpayer's liability for allegedly failing to pay federal employment taxes. *Id.* at 871. The taxpayer's counsel sent several letters to the IRS outlining the terms of the taxpayer's settlement offer. *Id.* at 871-72. The IRS eventually responded with a letter in which it purported to accept the taxpayer's offer "with the understanding that each side will bear its own costs, including any attorney's fees." *Id.* at 872. The taxpayer's offer had never mentioned responsibility for costs or fees. *See id.*

When the IRS attempted to enforce the agreement, the taxpayer argued that he had never agreed to the added term. Nonetheless, the district court ordered the agreement to be enforced. *Id.* On appeal, the Third Circuit reversed because the IRS's acceptance violated the mirror image rule. *Id.* (citing *Step-Saver Data Sys., Inc. v. Wyse Tech.,* 939 F.2d 91, 99 (3d Cir.1991)). The court noted that " '[a] variation on the substance of the offered terms is material, even though the variation is slight....' " *Id.* (quoting JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 3.32, at 478-80 (1993)). Thus, the IRS had rejected the taxpayer's offer and instead conveyed a counteroffer. *Id.* 872-73.

**\*7** Defendant argues that *Lauckner* requires the Court to vacate its January 16, 2007 Order to Enforce the Settlement. (*See* Def. Post Ev. Hearing Br. (Motion for Reconsideration), p. 15.) In particular, Defendant analogizes the IRS's purported acceptance in *Lauckner* to Plaintiff's August 2, 2006 proposed memorialization; that is, Defendant argues that Plaintiff's memorialization, like the IRS's letter, contained several terms that are at variance with the writing to which it responded. For this reason, Defendant concludes that Plaintiff's memorialization similarly constituted a rejection and counteroffer, rather than an acceptance of Defendant's proposed settlement terms. (*See id.*) This argument, however, ignores a critical distinction between the exchanged writings in *Lauckner* and those in this case.

In *Lauckner,* exchanged writings contained the taxpayer's offer of settlement and the IRS's purported acceptance, which violated the mirror image rule. Thus, parties never reached an agreement because the offer and acceptance were at variance with one another. Here, by contrast, the exchanged writings had nothing to do with offer and acceptance. The parties had already passed that stage of contract formation when, on June 5, 2006, they mutually agreed to settle this case on the three essential terms discussed above. Instead, the exchanged writings merely constituted proposed memorializations of that agreement. While the writings contain some varying terms, [6] these differences have no effect on whether there was a valid offer and acceptance of the three terms on June 5, 2006.

[6]      See supra footnote 1.

Moreover, the fact that the parties have been unable to agree on the differing terms contained in their proposed memorializations does not necessarily have any bearing on the overall validity of their settlement. Again, New

McDonnell v. Engine Distributors, Not Reported in F.Supp.2d (2007)

2007 WL 2814628

Jersey law will enforce a settlement so long as the parties mutually agree on the *essential terms*. *See Bistricer,* 555 A.2d at 47. Thus, in *Bistricer,* the court enforced a settlement entered into on the record despite the plaintiffs' subsequent objection to several items in the defendants' proposed settlement stipulation. *See id.* at 46. The plaintiffs claimed that their assent on the record was limited to a mere "framework of a settlement," rather than a binding agreement. *Id .* at 48. They added that the actual settlement would be consummated only upon their execution of a written agreement. *See id.* at 46. Because the defendants' proposed stipulation contained terms to which they objected, the plaintiffs refused to sign it and thus concluded they were not bound by their agreement on the record. *See id.* The court, however, noted that the plaintiffs' objections pertained either to new terms they now sought for the first time or to matters affecting only the agreement's implementation. *Id.* at 48. As such, they were not essentials of the settlement. *Id.*

Other cases have similarly rejected the argument that a settlement should not be enforced because the parties were unable to subsequently agree on all the details in a stipulation or memorialization. *See, e.g., Hagrish v. Olson,* 603 A.2d 108, 109-10 (N.J.Super.Ct.App.Div.1992) (enforcing a settlement that required the defendants to pay a stated sum of money and barred the plaintiffs from pursuing an appeal, even though the parties could not subsequently agree on whether a release should be unilateral or mutual).

**\*8** Just as in *Bistricer* and *Hagrish,* the parties in the instant matter reached an agreement on the essential terms of their settlement. The fact that their proposed memorializations vary considerably with one another in no way disturbs the validity of that agreement. The disputed terms-concerning the scope of the release, ensuring payment, tax treatment, indemnification, and the scope of confidentiality-all speak to the settlement's implementation. They are not, however, essentials of the settlement. The Court therefore will not reconsider its January 16 Order on this basis.

*b. Defendant's counsel had authority to settle this case.*
Defendant next argues that its counsel, Mr. Etish, lacked authority to settle this case. (*See* Def. Supp. Br. (Motion for Reconsideration), p. 6; Def. Post Ev. Hearing Br. (Motion for Reconsideration), pp. 11-12, 17.) More specifically, Defendant asserts that it always

intended any settlement into which it entered to feature a covenant not to compete. (*See* Def. Supp. Br. (Motion for Reconsideration), p. 6.) To the extent that the June 5, 2006 settlement did not contain such a term, Defendant argues that Mr. Etish lacked authority to enter into it. (*See* Def. Post Ev. Hearing Br. (Motion for Reconsideration), p. 11, 17.) The Court disagrees.

Under New Jersey law, settlement stipulations made by attorneys while acting within the scope of their authority are enforceable against their clients. *Jennings v. Reed,* 885 A.2d 482, 490 (N.J.Super.Ct.App.Div.2005). Further, an attorney is presumed to possess authority to act on behalf of the client. *Id.* Indeed, a party who asserts the lack of authority must sustain "a heavy burden to establish that [the] attorney acted without *any kind of authority* ...." *Id.* (emphasis added) (quoting *Sur. Ins. Co. of Cal. v. Williams,* 729 F.2d 581, 583 (8th Cir.1984)).

When discussing the authority of an agent to act on behalf of a principal, a distinction must be drawn between actual and apparent authority. Actual authority, whether express or implied, refers to " 'written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to act on the principal's account.' " *Id.* (quoting Restatement (Second) of Agency § 26 (1958)). On the other hand, " 'apparent authority ... is created as to a *third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.' " Id.* (emphasis added) (quoting Restatement (Second) of Agency § 27). In other words, " '[a]pparent authority imposes liability, not as the result of an actual contractual relationship, but because of actions by a principal which have misled a third party into believing that a relationship of authority does, in fact, exist.' " *Id.* (quoting *Wilzig v. Sisselman,* 506 A.2d 1238, 1244 (N.J.Super.Ct.App.Div.1986).

**\*9** In the specific context of private litigation, apparent authority exists "where the client by words or conduct communicated to the adverse attorney, engenders a reasonable belief that the attorney possesses authority to conclude a settlement...." *Amatuzzo v. Kozmiuk,* 703 A.2d 9, 12 (N.J.Super.Ct.App.Div.1997). This is true even where the client subsequently denies having granted the attorney authority to settle. *See Seacoast Realty Co. v. W.*

McDonnell v. Engine Distributors, Not Reported in F.Supp.2d (2007)

2007 WL 2814628

*Long Branch Borough,* 14 N.J. Tax 197, 204-05 (N.J. Tax Ct.1994).

In this case, it appears that Mr. Etish acted under both actual and apparent authority to settle according to the three terms discussed in section II(A)(2)(a), *supra.* As to actual authority, Mr. Etish testified that, on June 5, 2006, he discussed with Mr. Cummins the prospect of settling the case on three terms: 1) payment of $105,000 to Plaintiff by Defendant; 2) a non-disparagement clause; and 3) confidentiality of settlement terms. (*See* Settlement Hearing Tr. (Mr. Etish), May 15, 2007, 74:6-12.) Moreover, Mr. Etish was certain that he never represented that the proposed settlement featured a non-competition clause. (*See id.,* 80:23-81:10; Settlement Hearing Tr. (Mr. Etish), June 5, 2007, 6:24-7:3, 17:14-17.) Finally, Mr. Etish explained that Mr. Cummins agreed to those three terms as per their discussion. (*See* Settlement Hearing Tr. (Mr. Etish), May 15, 2007, 74:14-18 .) This agreement can be interpreted in only one way-an express grant of authority to settle the matter based on the identified terms.

Of course, Mr. Cummins testified that he and Mr. Etish *did* discuss the covenant not to compete and that he believed the settlement contained this term. (*See* Settlement Hearing Tr. (Mr. Cummins), May 17, 2007, 11:6-12:6, 14:10-14.) However, as discussed in section II(A)(2)(a), *supra,* the Court finds Mr. Cummins to not be a credible witness. On the other hand, Mr. Etish was highly credible on this point. Thus, based on the Record evidence, the Court concludes that Mr. Etish possessed actual authority to settle this case on behalf of Defendant notwithstanding the fact that the agreement did not contain a non-competition clause.

It is equally clear that Mr. Cummins's words and actions on June 5, 2006 cloaked Mr. Etish with apparent authority to settle the case. Negotiations that day took place primarily outside the courtroom, with the parties stationing themselves on opposite ends of a hallway. (*See* Settlement Hearing Tr. (Mr. Cimino), May 15, 2007, 7:24-8:24.) During this occasion, Mr. Cimino observed Mr. Cummins and Mr. Etish discussing settlement terms. (*See id.,* 63:5-10.) According to Mr. Cimino, it was clear that Mr. Cummins was actively engaged in this discussion and that he gave Mr. Etish instructions on how to proceed with the negotiations. (*See id.,* 14:18-15:5, 63:14-64:12.)

A short while later, Mr. Cummins appeared before the Court along with Mr. Etish, Mr. Diaz, Plaintiff, and Mr. Cimino. The Court then inquired as to whether the parties were satisfied with the settlement they had reached. (*See* Settlement Tr., June 5, 2006, p. 2.) In response, Mr. Cummins clearly indicated his satisfaction, (*see id.,*) of which Mr. Cimino took note, (*see* Settlement Hearing Tr. (Mr. Cimino), May 15, 2007, 16:19-17:2). Thus, it reasonably appeared to Mr. Cimino that Mr. Cummins had, indeed, authorized Mr. Etish to enter into a settlement on the three terms the attorneys discussed that day. Mr. Etish therefore acted under apparent authority. Accordingly, the Court declines to reconsider its January 16, 2007 Order on this basis.

*c. An evidentiary hearing on Defendant's rescission argument was unwarranted.*

**\*10** Defendant also argues that any settlement agreement that may have existed on June 5, 2006 should be rescinded because Plaintiff allegedly violated its provisions relating to confidentiality and non-disparagement. More to the point, it claims that reconsideration is justified because the Court did not conduct a formal evidentiary hearing on this issue before granting Plaintiff's Motion to Enforce the Settlement on January 17, 2007. (*See* Def. Br. (Motion for Reconsideration), pp. 1-2.) This argument lacks merit.

Again, New Jersey law views a settlement agreement as a contract like any other. See *Mortellite,* 460 F.3d at 492 (citing *Borough of Haledon,* 817 A.2d at 975). Thus, when a party breaches a material term of a settlement agreement, the non-breaching party is relieved of its obligation to perform thereunder. *Nolan,* 577 A.2d at 146.

With these basic principles in mind, Defendant draws the Court's attention to *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra,* 983 F.2d 495 (3d Cir.1992). The specific facts of that case are irrelevant to the instant matter. Instead, it suffices to understand that one party argued for rescission of a settlement after the other party allegedly breach it. See *id.* at 500. The district court had determined that the rescission argument could be resolved in the first instance by an arbitrator. *Id.* at 506. However, the Third Circuit reversed and remanded because the federal statute under which the district court acted did not, in fact, authorize arbitration on the rescission issue. *Id.* In reaching its decision, the court of appeals noted that it "remand[ed]

this dispute for *full development of the facts and a decision on the merits." Id.* (emphasis added).

Defendant seemingly reads the quoted language from *Centra* to mean that an evidentiary hearing is necessarily required where one party argues that it may rescind a settlement because of the other party's alleged breach. Based on this premise, Defendant concludes that reconsideration is warranted in this case because the Court did not afford Defendant a formal evidentiary hearing before deciding Plaintiff's Motion to Enforce the Settlement. The Court disagrees given the recent history of this case.

Defendant first raised the rescission argument in its brief opposing Plaintiff's Motion to Enforce the Settlement. (*See* Def. Br. (Opposing Pl. Motion to Enforce Settlement), pp. 5-6.) On October 31, 2006, the Court held a hearing at which it made clear that Defendant must present sworn testimony relating to Plaintiff's alleged breaches of the settlement. (*See* Settlement Hearing Tr., Oct. 31, 2006, 3:5-4:5, 4:13-14.) Two and a half months later, on January 16, 2007, the Court held a follow-up telephone conference. Defendant failed, at that time, to identify any witnesses who could testify regarding Plaintiff's alleged breaches.[7] (*See generally* Tele. Conf. Tr., Jan. 16, 2007.)

[7]    Defendant suggested that its inability to identify witnesses was due to a delay in receiving the June 5, 2006 transcript in which the parties manifested agreement to the settlement. (*See* Tele. Conf. Tr., Jan. 16, 2007, 3:7-16.) However, this assertion defies reason.

Everyone involved in this case agrees that the settlement contained both non-disparagement and non-disclosure clauses. (*See* Settlement Hearing Tr. (Mr. Etish), May 15, 2007, 69:2-71:7; Settlement Hearing Tr. (Mr. Cimino), May 15, 2007, 9:24-12:22; Settlement Hearing Tr. (Mr. Cummins), May 17, 2007, 4:14-21.) Moreover, Defendant apparently alerted its counsel to Plaintiff's alleged breaches of these provisions sometime in early October 2006. (*See* Def. Br. (Opposing Motion to Enforce Settlement), p. 3.) Ostensibly, Defendant learned of these alleged breaches from some identifiable source, i.e., witnesses. Thus, it is difficult to understand why defense counsel needed to first review a sparse settlement transcript before he could identify

witnesses who, in all probability, had informed Defendant of the alleged breaches in the first place.

**\*11**  Simply put, when the Court ordered the settlement to be enforced, it believed that two and a half months was more than ample time in which to locate and identify witnesses. Thus, the Court declined to hold an evidentiary hearing for one reason and one reason only-the lack of any witnesses whose testimony would be offered at such a hearing. Without witnesses, there simply were no facts to develop. The Court therefore declines to reconsider its January 16, 2007 Order on this ground.

### B. Plaintiff's Motion for Entry of Judgment and for Civil Contempt

The Court also has before it Plaintiff's Motion for Entry of Judgment and for Civil Contempt. In support of his Motion, Plaintiff argues that Defendant, by failing to remit settlement proceeds to Plaintiff, is not only violating the settlement, but is also flouting the Court's January 16, 2007 Order. (*See* Pl. Br. (Motion for Entry of Judgment and Civil Contempt), p. 3.) Thus, Plaintiff not only concludes that judgment should be entered against Defendant for the full amount of the settlement, but also that Defendant should be held in civil contempt.[8] (*See id.,* p. 4 .) While the Court believes civil contempt is not warranted under these circumstances, it agrees with Plaintiff that judgment should be entered.

[8]    Plaintiff additionally requests the Court to permit him to submit an application for attorney's fees in the event the Court holds Defendant in civil contempt. (*See* Pl. Br. (Motion for Entry of Judgment and Civil Contempt), pp. 3-4.) However, as the Court declines to find Defendant in civil contempt, it similarly declines to permit Plaintiff to submit such an application.

A party may be held in civil contempt for failing to comply with a court order if: (1) a valid court order existed; (2) it required the party to do certain things; (3) the party knew of the order; and (4) the party disobeyed the order. *N.J. Sports Prod., Inc. v. Don King Prod., Inc.,* 15 F.Supp.2d 546, 551 (D.N.J.1998) (citing *Harris v. City of Philadelphia,* 47 F.3d 1311, 1326 (3d Cir.1995); *Roe v. Operation Rescue,* 919 F.2d 857, 871 (3d Cir.1990)). A court will enter a civil contempt order only after the party seeking it demonstrates satisfaction of these elements by clear and convincing evidence. *See id.* Where there is

McDonnell v. Engine Distributors, Not Reported in F.Supp.2d (2007)

2007 WL 2814628

ground to doubt the wrongfulness of the conduct, the party against whom contempt is sought should not be adjudged in contempt. *See id.* Moreover, at least one court has implied that civil contempt is not appropriate where a party timely files a motion for reconsideration of the order it is alleged to have violated. *See Barcia v. Sitkin,* No. 79-5831, 2007 U.S. Dist. LEXIS 7419, at *16 (S.D.N.Y. Jan. 25, 2007) (explaining that because the defendants neither sought a stay of the court's order, nor timely filed a motion for reconsideration, civil contempt was appropriate).

In this case, the Court does not believe that civil contempt is warranted against Defendant. It is true that Defendant has not yet complied with the Court's January 16, 2007 Order. However, it must be remembered that Defendant timely filed its Motion for Reconsideration of that Order on January 30, 2007. Under these circumstances, the Court doubts the alleged wrongfulness of Defendant's conduct. As such, the Court declines to hold Defendant in civil contempt.

*12 Nonetheless, the Court understands Plaintiff's frustration with this case. The parties reached a settlement on June 5, 2006. Fifteen months later, Plaintiff has still not received the proceeds to which he is entitled under that settlement. Having now denied Defendant's Motion for Reconsideration, the Court sees no reason for continued delay. Thus, the Court will enter judgment in favor of Plaintiff in the amount of $105,000.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Reconsideration will be denied. Plaintiff's Motion for Entry of Judgment and for Civil Contempt will be granted in part and denied in part. An appropriate Order will be entered with this Opinion.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2814628

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

Deb Associates v. Forever Young Medical Daycare, LLC, Not Reported in A.3d (2012)

2012 WL 2579496

2012 WL 2579496
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Superior Court of New Jersey,
Appellate Division.

DEB ASSOCIATES and Joseph
Rolandelli, Plaintiffs–Respondents,
v.
FOREVER YOUNG MEDICAL
DAYCARE, LLC, Defendant–Appellant,
and
Maria Kipnis, Marina Nabutovskaya, Mariya
Tolcheva, Svetlana Kestel, Joseph Rodrigues, Estate
of Dean Ricciardi, and Susan Ricciardi, Defendants.

Argued March 13, 2012.
|
Decided July 5, 2012.

On appeal from the Superior Court of New Jersey,
Chancery Division, General Equity Part, Passaic County,
Docket No. C–0112–05.

**Attorneys and Law Firms**

R. Scott Thompson argued the cause for appellants
(Lowenstein Sandler, P.C., attorneys; Mr. Thompson, of
counsel and on the brief).

Peter R. Bray argued the cause for respondents (Bray &
Bray, L.L.C., attorneys; Mr. Bray, on the brief).

Before Judges MESSANO and GUADAGNO.

**Opinion**

PER CURIAM.

**\*1** Defendants Forever Young Medical Daycare LLC
(Forever Young), Maria Kipnis, Marina Nabutovskaya,
Mariya Tolcheva, Svetlana Kestel, Joseph Rodrigues, the
Estate of Dean Ricciardi and Susan Ricciardi (collectively,
defendants) appeal from the Law Division's June 14, 2011
order enforcing a settlement reached with plaintiff Deb
Associates (Deb) three years earlier, and ordering the
immediate retroactive payment of all monies thereunder.

We have considered the arguments raised in light of the
record and applicable legal standards. We reverse.

I.

This is the second time the matter is before us. The relevant
procedural history was set forth in our prior opinion, *Deb
Associates v. Forever Young Medical Daycare, LLC,* No.
A–3373–09 (App.Div. Feb. 8, 2011).

On August 10, 2005, [Deb] filed its complaint
alleging an interest in Forever Young pursuant to
an agreement previously reached with Dean Ricciardi
and the subsequent investment of significant sums of
money in the senior day care centers operated by
defendants. [Deb] sought declaratory relief recognizing
its ownership interest in the centers, the creation of
equitable and constructive trusts, injunctive relief to
block any sale by an individual defendant of his or
her interests, compensatory and punitive damages, and
counsel fees based upon defendants' intentional and
wrongful conduct....

Trial commenced in February 2008 before now-retired
judge Joseph J. Riva. The parties reached a settlement
that was orally placed on the record on March 3.

[*Id.* at 2–3.]

The settlement provided that Deb would receive
a five-percent ownership interest in Forever Young
from Tolcheva's share of the business, and equivalent
distributions, with the first $400,000 payable as repayment
of a loan in monthly installments at an interest rate of
five percent. *Id.* at 3. Deb would also receive a twenty
percent ownership interest in a new center Tolcheva was
contemplating opening in New Brunswick. *Ibid.*

The settlement was never reduced to writing despite
an exchange of emails and correspondence between
the parties' respective attorneys regarding its terms and
those of a corollary operating agreement. *Id.* at 5–
6. We are advised that releases were never exchanged.
Deb subsequently "moved to enforce the settlement or
vacate the dismissal of the litigation and return the
matter to the trial calendar." *Id.* at 7. Central to Deb's
argument was the claim that Tolcheva failed to exercise
good faith in pursuing the prospective daycare center in
New Brunswick. *Ibid.* Judge Riva held a hearing, took

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 2579496

testimony and denied the motion explaining his reasons in a comprehensive written opinion. *Id.* at 7–8.

In relevant part, Judge Riva determined defendants had not breached the settlement by failing to pursue the new day care facility, which never came to fruition. *Id.* at 8–9. Deb appealed, and we affirmed substantially for the reasons expressed by Judge Riva. *Id.* at 9.

**\*2** Within days of our decision, Deb's counsel sought a check from defendants "for the monthly payments due" under the settlement. Defendants remitted a check in the amount of $3000, the first monthly installment of the loan repayment. Deb's counsel responded on March 16, 2011, noting that defendants were "refusing to make the monthly distribution payments ... for the period from and after May 1, 2008, notwithstanding the fact that the settlement specifically provide[d] that Deb [wa]s entitled to the economic benefits allotted to it under the Settlement Agreement from and after May 1, 2008." Defense counsel responded on March 21 by rejecting Deb's claim for the immediate payment of all "amounts that would have been paid ... under the settlement reached in 2008" because Deb had "engaged in lengthy, and plainly frivolous, litigation...."

On March 29, Deb filed a motion in the Law Division to enforce the terms of the settlement. Citing the unexecuted 2008 draft settlement and operating agreements, Deb claimed it was entitled to begin receiving payments by, at the latest, May 1, 2008. Defendants opposed the motion.

Apparently without granting defendants' request for oral argument, the judge to whom the matter was now assigned issued a letter opinion dated June 14, 2011. We discuss that decision in detail below. In short, the judge granted Deb's motion to enforce the settlement and entered an order requiring that defendants "immediately pay ... an amount equal to the monthly payments that were to be made under the [s]ettlement, from May 1, 2008 to date, equal to five ... percent of distributions made by Forever Young," and documentation supporting the "calculation of [those] sums." He denied Deb's request for counsel fees.

Defendants moved for reconsideration. They noted there was no oral argument, despite having received assurances from the court that a hearing would occur. Tolcheva certified that defendant began making payments to Deb "as soon as it was clear that [Deb] would not appeal yet

again from the decision of the Appellate Division." [1] She further cited the financial hardship the immediate lump sum payment would cause to Forever Young. In its reply, Deb noted that defendants had continuously asserted the enforceability of the original settlement throughout the litigation and therefore should be required to now comply with its terms.

---

[1]   Defendants state in their brief that Deb "first accept[ed] monthly payments" before filing the motion.

Oral argument on defendants' motion for reconsideration occurred on July 11. The judge denied the motion in an oral decision citing extensively from his original written decision. He entered an appropriate order that same day.

Defendants filed their appeal on September 2, which we subsequently treated as being filed within time. On October 31, a panel of our colleagues denied defendants' motion for a stay without prejudice, determining it was premature because the trial court had not fixed "the amount of the lump sum payment due at this time" and had not determined whether a supersedeas bond should be posted. The trial court entered an order dated November 7 fixing judgment in the amount of $210,000 based upon the parties' agreement "to the amount due for the period through September, 2011 (exclusive of distribution payments already made to Deb ... )". [2]

---

[2]   It is unclear whether the trial court stayed the judgment pending appeal. We have not entered any order granting such relief.

**\*3** Defendants contend that the judge erred in finding Deb was entitled to specific performance of the settlement agreement retroactive to May 2008 notwithstanding Deb's rejection of the settlement. Specifically, defendants argue the judge enforced "the [w]rong [a]greement," and misapplied an unreported decision of this court, *Crowley v. Maalouf,* No. A–3652–01 (App.Div. Apr. 14, 2003), *certif. denied,* 177 *N.J.* 491 (2003). Deb counters by arguing that the judge correctly compelled the retroactive specific performance of the settlement, and defendants' appeal is moot because they never sought review of the November 2011 order entering judgment. [3]

3    The claim that defendants' appeal is moot lacks sufficient merit to warrant discussion in this opinion. *R.* 2:11–3(e)(1)(E).

## II.

The judge noted in his written opinion that "[p]ursuant to the settlement agreement, D[eb] was entitled to receive loan payments starting from May 1, 2008." Defendants argue this was error because that date was contained in a draft proposal exchanged by the parties, which, as noted, was never executed for a variety of reasons, most notably because Deb sought vacation of the oral settlement placed on the record in March 2008 and appellate review thereafter. Defendants contend that Judge Riva concluded that the execution of a written agreement was the *sine qua non* of their obligations to make payment. We disagree.

In deciding Deb's original motion that led to the first appeal, Judge Riva set forth some of the essential terms of the settlement contained in the oral agreement and Deb's counsel's draft proposed agreement as: 1) a transfer of a five-percent ownership in Forever Young to Deb subject to necessary government approvals, that share coming solely from Tolcheva's interest; and 2) Deb would "be entitled to the economic benefit that a five-percent member would enjoy from and after the effective date of this agreement."

Judge Riva never decided that defendants did not have to perform until a written agreement was executed because he was not concerned with *when* defendants were required to perform. In using the term "this agreement," Judge Riva was referencing not only the terms of the oral agreement, which clearly contained no commencement date, but rather the entire agreement as reflected in the oral agreement and the proposed written document.

Additionally, defendants have always sought the timely enforcement of the settlement agreement, which, but for the original motion and subsequent appeal, would have resulted in the immediate commencement of their obligations to pay Deb. We have long recognized that "[w]here the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." *Lahue v. Pio*

*Costa,* 263 *N.J.Super.* 575, 596 (App.Div.), *certif. denied,* 134 *N.J.* 477 (1993). Thus, defendants' argument that the judge enforced the "wrong" settlement agreement is without merit.

**\*4** In his written decision, the judge characterized the issue as "whether a party challenging the enforceability of a settlement agreement may seek specific performance of payments due under the agreement that were delayed as a result of the challenge to the settlement." The judge determined that "there [wa]s nothing within [our earlier decision] suggesting that D[eb] breached the settlement agreement as a result of its challenge. D[eb] is now merely seeking to comply with the decisions of the trial court and Appellate Division, both of which have upheld the enforceability of the settlement agreement."

The judge then concluded that specific performance, i.e., the immediate retroactive payment of all sums due since May 2008, would not be "harsh or oppressive" to defendants. He reached this conclusion by finding that "Forever Young never requested that its payment obligations be extended or modified in the event the Appellate Division upheld the settlement agreement[,]" it "ha[d] been conducting business and potentially earning profits throughout this litigation[,]" and "[r]equiring Forever Young to make payments due under the settlement agreement from May 2008 to present would most likely not cause financial hardship to Forever Young." We note that the latter two findings are entirely unsupported by the record. Tolcheva's certification specifically rebutted both assertions. Noting that Deb was "rightfully seeking to enforce the settlement agreement in accordance with the Appellate Division's decision," the judge granted Deb's motion "under principles of equity."

We believe the critical question is slightly different, i.e., whether defendants are excused from performing under these unique circumstances? We conclude they are.

Initially, the judge misconstrued the breadth of our prior decision. We were not concerned with whether Deb breached the settlement agreement. We were only asked to review Judge Riva's decision that *defendants* had not breached the settlement agreement, as Deb contended. More importantly, in the first instance Deb renounced the settlement agreement. It is undisputed that Deb never executed or offered to execute any releases conclusively settling the litigation. Indeed, the primary relief Deb

sought was to vacate the settlement and return the matter to the trial list. This conduct, in our opinion, amounted to an anticipatory breach of the settlement.

Traditionally, a party commits an anticipatory breach when it "renounces or repudiates a contract by unequivocally indicating that it will not perform when performance is due." *Cipala v. Lincoln Technical Inst.,* 354 *N.J.Super.* 247, 251 (App.Div.2002), *aff'd in part, rev'd in part,* 179 *N.J.* 45 (2004). However, "the modern view does not 'limit anticipatory repudiation to cases of express and unequivocal repudiation of a contract. Instead, anticipatory repudiation includes cases in which reasonable grounds support the obligee's *belief* that the obligor will breach the contract.' " *Spring Creek Holding Co. v. Shinnihon U.S.A. Co.,* 399 *N.J.Super.* 158, 179 (App.Div.) (quoting *Danzig v. AEC Corp.,* 224 *F.*3d 1333, 1337 (Fed.Cir.2000), *cert. denied,* 532 *U.S.* 995, 121 *S.Ct.* 1656, 149 *L. Ed.*2d 638 (2001)), *certif. denied,* 196 *N.J.* 85 (2008).

**\*5** "If the breach is material, i.e., goes to the essence of the contract, the non-breaching party may treat the contract as terminated and refuse to render continued performance." *Ross Sys. v. Linden Dari–Delite, Inc.,* 35 *N.J.* 329, 341 (1961) (citing 6 *Corbin, Contracts,* § 1253 (1951)) (citations omitted); *see also Nolan v. Lee Ho,* 120 *N.J.* 465, 472 (1990) ("When there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement.").

Here, Deb clearly and unequivocally signaled its intention to breach the settlement agreement; indeed, it sought to set the contract aside and return the matter to trial. Deb never intended to perform its limited obligation under the settlement, i.e., execute a release ending the litigation. We reject the position Deb asserted at oral argument —defendants never asked for a release—as having any significance. Based on the motion Deb originally filed before Judge Riva, defendants reasonably assumed the settlement was repudiated. *See Spring Creek Holding Co., supra,* 399 *N.J.Super.* at 179. They need not have expressly requested a release.

Deb's actions repudiated "the essence of the contract," *Ross Sys., supra,* 35 *N.J.* at 341, the mutual exchange of promises with defendants agreeing to pay Deb, and Deb agreeing to release defendants. That being the case, defendants were under no obligation to perform by

rendering payment to Deb in May 2008. Indeed, we were advised that the parties never discussed a scenario whereby Deb would accept the payments and hold them in escrow pending resolution of its appeal.

Although not controlling precedent, *see R.* 1:36–3 ("No unpublished opinion shall constitute precedent or be binding upon any court."), Deb urged consideration of, and the Law Division judge relied upon, our decision in *Crowley v. Maalouf, supra,* slip op. at 9–12. However, the judge misconstrued *Crowley's* principal holding.

In *Crowley,* the plaintiffs agreed to sell a collection of comic books and artwork to the defendant, but, before defendant tendered payment the plaintiffs sued seeking declaratory relief and reformation of the contract. *Id.* at 4–5. The defendant counterclaimed seeking specific performance. *Id.* at 5. The trial judge found in favor of the defendant and gave him sixty days to "tender payment." *Id.* at 7.

We did not specifically address whether the plaintiff's actions amounted to an anticipatory breach. We nevertheless noted:

> The judge did not conclude that the filing of the complaint constituted a breach of contract. [He] only noted that by filing the declaratory judgment action, plaintiffs clearly established an unwillingness to perform until such time as a court adjudicated the validity of the agreement and it clearly excused any actual tender of funds by defendant. The judge concluded that the filing of the action had the functional effect of extending the time for performance. That conclusion was correct; by filing the declaratory judgment action, plaintiffs could not expect performance from defendant before the issues were resolved.
>
> **\*6** [*Id.* at 12 (internal quotation marks omitted).]

Essentially, *Crowley* supports the position defendants have taken in this case, i.e., they were not obligated to perform because of Deb's decision to repudiate the settlement.

Seen in this light, the Law Division erred by concluding that retroactive specific performance, i.e., the immediate payment of a lump sum amount reflecting all payments that would have accrued if both sides performed the

2012 WL 2579496

agreement in a timely fashion, was equitable. "[T]he right to specific performance turns not only on whether plaintiff has demonstrated a right to legal relief but also whether the performance of the contract represents an equitable result." *Marioni v. 94 Broadway, Inc.,* 374 *N.J.Super.* 588, 599 (App.Div.), *certif. denied,* 183 *N.J.* 591 (2005). As a general rule, "a party seeking specific performance must show that he or she was 'ready, desirous, prompt and eager' to perform as required by the contract on the date specified...." *Id.* at 605 (quoting *Stamato v. Agamie,* 24 *N.J.* 309, 316 (1957)). Clearly, Deb had no intention to perform because it sought vacation of the agreement.

Reversed.

**All Citations**

Not Reported in A.3d, 2012 WL 2579496

---

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Natale v. East Coast Salon Services, Inc., Slip Copy (2016)
2016 WL 659722

KeyCite Yellow Flag - Negative Treatment
Declined to Extend by Gunter v. Cambridge-Lee Industries, LLC,
E.D.Pa., July 14, 2016

2016 WL 659722
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

Carol E. Natale, Plaintiff,
v.
East Coast Salon Services, Inc., Defendant.

Civil Action No. 13-1254 (NLH/JS)
|
Signed February 17, 2016
|
Filed 02/18/2016

**Attorneys and Law Firms**

Richard J. Albanese, Karpf, Karpf & Cerutti, P.C.,
3331 Street Road, Suite 128, Two Greenwood Square,
Bensalem, PA 19020, On behalf of plaintiff.

Michael S. Hanan, Gordon & Rees LLP, 18 Columbia
Turnpike, Suite 220, Florham Park, NJ 07932, On behalf
of defendant.

**OPINION**

*1  HILLMAN, District Judge

Presently before the Court is the motion [1] of defendant
to enforce the settlement agreement, which, on the eve
of trial, resolved plaintiff's claims against her former
employer for alleged violations of the Age Discrimination
in Employment Act (ADEA), 29 U.S.C. § 621 et seq. [2]
The settlement issue in dispute concerns whether the
settlement funds were to be paid to plaintiff pursuant to
a Form 1099-MISC or a Form W-2. Defendant argues
that during the settlement discussions at the pre-trial
conference, plaintiff and defendant had a meeting of the
minds that plaintiff would be paid via a 1099 form.
Plaintiff counters that the vehicle for payment of the
settlement funds was not agreed to at the conference.
When a draft of the settlement agreement was provided
to plaintiff's counsel, and plaintiff's counsel requested that
plaintiff be paid by a W-2 based upon advice from an
accountant, plaintiff argues that her request is not barred

by any prior agreement that she be paid by 1099. She also
argues that the method of payment is a nonessential term
of the agreement.

[1]  The parties filed their briefs and exhibits under seal
and in redacted form pursuant to the Court's Order
granting defendant's motion to seal. (Docket No. 71.)
The content of this Opinion resolving defendant's
motion to enforce the settlement agreement only
withholds information that qualifies for restricted
public access under Local Civil Rule 5.3.

[2]  When the case settled, the Court retained jurisdiction
for sixty days to reopen the matter if the settlement
was not consummated. (Docket No. 65.) At the
parties' request, the retention of jurisdiction was
extended for an additional ninety days (Docket No.
67), during which time defendant filed its motion to
enforce the settlement.

The method of payment is a sticking point between the
parties because if plaintiff is paid by W-2, defendant
is obligated to deduct applicable taxes, as well as
withholdings for Social Security and Medicare, and pay its
employer tax. If plaintiff is paid by 1099, she is responsible
for all of these taxes. Defendant argues that having to
pay plaintiff by W-2 would constitute a windfall beyond
the agreed-upon settlement amount. Plaintiff argues that
defendant is required by the tax code to pay her by W-2
because ADEA damages can only be classified as wages. [3]

[3]  The ADEA does not permit a separate recovery
of compensatory damages for pain and suffering
or emotional distress, and a recovery under the
ADEA is not excludable from gross income.
C.I.R. v. Schleier, 515 U.S. 323, 326 (1995).
Other employment discrimination laws permit
recovery for emotional distress and other non-
wage damages. Although awards under these laws
have tax implications, any award for non-wage
damages must be paid by 1099 and not W-2.
See Eshelman v. Agere Sys., Inc., 554 F.3d 426,
441 (3d Cir. 2009) ("The Supreme Court made
clear that back pay awards under discrimination
statutes are taxable."); see also Lawsuits, Awards,
and Settlements Audit Techniques Guide, available
at https://www.irs.gov/Businesses/Small-Businesses-
&Self-Employed/Lawsuits-Awards-and-Settlements-
Audit-TechniquesGuide#_Toc305586649,     (citing
IRC  §§  6041  and  6051  and  Treasury
Regulations 1.6041-1(f) and 1.6041-2) ("Generally,
all compensatory damages for non-physical injuries

Natale v. East Coast Salon Services, Inc., Slip Copy (2016)

2016 WL 659722

or sickness (for example, emotional distress) arising from employment discrimination or defamation are reportable in Box 3 [of Form 1099-MISC;] however, if a taxpayer receives an award of back pay that constitutes wages, it generally would be reportable on Form W-2, not Form 1099-MISC.").

**\*2** As will be explained more below, the Court finds the following: (1) the record suggests that the settlement entered into at the pre-trial conference, to be memorialized later in a formal written settlement agreement, did not specifically contemplate whether the funds should be paid by 1099 or W-2, although the record also suggests that payment by 1099 was presumed by counsel for both sides until plaintiff met with her accountant; (2) there is no uniform consensus on the proper payment of such settlement funds in courts throughout the country or in the legal literature; and (3) it appears that the IRS views that that settlement payments that constitute "wages" paid by an employer to an employee must be paid by the employer in the form of a W-2.

As a primary matter, the law governing the enforcement of a settlement agreement holds that a settlement agreement between parties to a lawsuit is a contract like any other contract. Peskin v. Peskin, 638 A.2d 849, 857 (N.J. Super. Ct. App. Div. 1994) (citing Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990)). A contract is formed where there is offer and acceptance and terms sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. U.S. v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997) (citing Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992)). That contract is enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms. Id. Where the parties do not agree on one or more essential terms, however, courts generally hold that the agreement is unenforceable. Id. The party seeking to enforce the alleged settlement agreement has the burden of proving the existence of the agreement under contract law. Id. (citations omitted). Courts treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is a disputed issue of material fact as to the validity of the settlement agreement. Washington v. Klem, 388 F. App'x 84, 85 (3d Cir. 2010) (citing Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991)).

The mechanics of the payment of settlement funds typically constitutes a non-essential term of the settlement contract. See, e.g., McDonnell v. Engine Distributors, No. CIV.A. 03-1999, 2007 WL 2814628, at \*8 (D.N.J. Sept. 24, 2007), aff'd, 314 F. App'x 509 (3d Cir. 2009) ("The disputed terms –concerning the scope of the release, ensuring payment, tax treatment, indemnification, and the scope of confidentiality – all speak to the settlement's implementation. They are not, however, essentials of the settlement."); Josifovich v. Secure Computing Corp., No. CIV. 07-5469FLW, 2009 WL 2390611, at \*2 (D.N.J. July 31, 2009) (observing that "terms relating to the tax treatment of a settlement agreement are not considered essential, but rather are part of the implementation of the settlement agreement").

In this case, the Court finds that the precise method of payment was not a term the parties agreed upon before announcing their settlement but was left by the parties to be decided during the during the "fleshing out" period between the oral agreement and a written settlement agreement. "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." See Sipler v. Trans Am Trucking, Inc., 881 F. Supp. 2d 635, 637 (D.N.J. 2012) (citing Lahue v. Pio Costa, 623 A.2d 775 (N.J. Super. App. Div. 1993), cert. denied, 634 A.2d 524 (N.J. 1993)).

Here, five days after the pre-trial conference in which the parties settled the matter, plaintiff's counsel affirmatively stated in an email to defense counsel, "I also ask that the agreement reflect payment within 30 days of execution, and separate checks to Ms. Natale and my firm. I also wanted to inquire if it was possible to have the payment made by 1099 as opposed to W-2." Plaintiff's counsel also did not take issue with the indemnification provision which made all tax liabilities plaintiff's responsibility. It was not until plaintiff visited her accountant who advised her to not sign the agreement unless she was paid by W-2, which was a month after the settlement conference and after several email exchanges between counsel, that the issue of the form of payment became a deal breaker in plaintiff's eyes.[4] This fact and others lead the Court to conclude that the method of payment was not contemplated by the parties to be an essential element of the settlement.[5]

4    Plaintiff argues that because she did not review the written document during the time counsel were exchanging drafts and had agreed to payment by 1099, the settlement was not yet approved. That is not a position supported by the law. See, Sipler, 881 F. Supp. 2d at 637; U.S. v. Lightman, 988 F. Supp. 448, 459 (D.N.J. 1997) (citations omitted) ("New Jersey law specifies that parties may orally, by informal memorandum, or both, agree upon all essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the later execution of a formal document to memorialize their undertaking.").

5    Defense counsel states that the issue of payment via 1099 was discussed in "open court," while plaintiff's counsel states that the form of payment was not discussed at all during the March 25, 2015 court appearance. The entire settlement conference was held off-the-record, so no transcript exists of what was stated in "open court" that can prove or disprove counsel's recollections. As noted by plaintiff's counsel, however, the fact that five days after the court hearing he requested payment by way of a 1099 suggests that it was an issue not specifically discussed at the conference, or if it was, it was not an essential term of the settlement.

*3   A settlement agreement is a contract, and the court has "no right to rewrite the contract" or "remake a better contract for the parties than they themselves have seen fit to enter into." Karl's Sales & Serv., Inc. v. Gimbel Bros., 592 A.2d 647, 650 (N.J. Super. Ct. App. Div. 1991) (citing James v. Federal Ins. Co., 5 N.J. 21, 24, 73 A.2d 720 (1950)) (other citations omitted). Because there are tax consequences of every settlement, plaintiff or defendant in this case could have raised the form of payment during settlement negotiations and made it an essential term of the contract. [6]

6    The pre-trial conference before this Court was not the first settlement talks involving the Court's facilitation of, and assistance with, settlement. (See Minute Entries for March 3, 2015 and March 17, 2015.)

It is clear that the parties entered into an agreement to settle the matter for a specific amount at the pre-trial conference on March 25, 2015, and that payment via Form 1099 or Form W-2 was not an essential term of the settlement. The Court must therefore addresses plaintiff's argument that a settlement of an ADEA claim paid in the form of a 1099 instead of a W-2 would be contrary to law, and would therefore render the settlement contract unenforceable.

The caselaw on this issue is not so clear. For example, the court in Lisec v. United Airlines, Inc., 10 Cal. App. 4th 1500, 1507, 11 Cal. Rptr. 2d 689, 693 (1992) found that because an award paid to a former employee was not made within the context of an ongoing employment relationship – i.e., an award of back pay covering a period of time when the employee did not actually perform any work for the employer – the award could not be considered wages and thus could not be subject to employment taxes. Several federal and state courts followed Lisec's reasoning, including in the Eastern District of Pennsylvania and New Jersey. See Churchill v. Star Enterprises, 3 F. Supp. 2d 622, 624–25 (E.D. Pa. 1998); Sang-Hoon Kim v. Monmouth Coll., 726 A.2d 1017, 1018 (N.J. Super. Ch. Div. 1998). These cases have since become the minority view, but they have left "employers to wonder when exactly it is appropriate to withhold taxes from an award of back pay or settlement of an employment-related claim." Cifuentes v. Costco Wholesale Corp., 238 Cal. App. 4th 65, 77, 189 Cal. Rptr. 3d 104, 112 (2015) (citations omitted).

The Cifuentes v. Costco case is instructive. There, a jury awarded the former Costco employee judgment in the form of past and future lost wages. When Costco paid the judgment to the plaintiff, it withheld payroll taxes ($116,150.84 out of the $301,378.00 judgment). The plaintiff argued that Costco should have paid him the full amount by way of a 1099 form.

In directly rejecting Lisec v. United Airlines, Inc., the court observed,

> When Costco paid the judgment, it had two alternatives. It could follow Lisec and risk liability to the IRS and other taxing authorities for the amount of tax it failed to withhold plus penalties. Or it could follow the prevailing federal view and risk a judicial declaration that the judgment is not satisfied. We conclude it chose correctly. Costco's potential exposure for failing to withhold the payroll taxes outweighed the inconvenience to

Natale v. East Coast Salon Services, Inc., Slip Copy (2016)

2016 WL 659722

Cifuentes of seeking a refund for the excess withholding.

Cifuentes, 238 Cal. App. 4th at 77, 189 Cal. Rptr. 3d at 112.

Specifically relevant to the case here, the Cifuentes court also noted, "the IRS's position is that judgment and settlement payments for back and front pay (other than lost wages on account of personal injury or sickness) are subject to income and FICA tax withholding and are reportable as wages on a form W–2, rather than as non-wage income on a form 1099–MISC." Id. (citing Office of Chief Counsel IRS Memorandum, dated October 22, 2008, UILC: 61.00–00, 3101.00–00, 3111.00–00, 3402.00–00, Income and Employment Tax Consequences and Proper Reporting of Employment–Related Judgments and Settlements; 26 C.F.R. §§ 31.3121(a)–1(b), (i), 31.3306(b)–1(i), and 31.3401(a)–1(a)(5).)

 **4 Based on the foregoing, defendant's motion to enforce the settlement has presented the Court with a dilemma. On the one hand, the Court finds that the parties entered into a valid settlement agreement where the method of payment –by 1099 or W-2 – was not an essential term of the contract. On the other hand, while the parties appear to have contemplated payment pursuant to 1099, such a method appears contrary to law.

The Cifuentes court explained the federal and state tax liabilities for employers who pay judgments that constitute wages:

> The IRC requires employers to collect income and FICA taxes by withholding them from wages paid to employees. (26 U.S.C. §§ 3102(a), 3402(a)(1); Maxfield v. United States Postal Service, (9th Cir. 1984) 752 F.2d 433, 434.) California law similarly requires employers to withhold state income and disability insurance taxes. (Unemp. Ins. Code (UIC), §§ 13020, subd. (a)(1), 986.) An employer who fails to withhold such taxes may be held liable for those taxes plus penalties and interest. (26 U.S.C. §§ 3102(b), 3403, 6651; UIC, §§ 987, 1112, 1113, 1127, 13070.) The failure to withhold

> taxes also is punishable as a crime. (26 U.S.C. § 7202 [felony]; UIC, § 2118 [misdemeanor].) In addition, even if the tax is later paid, an employer who fails to withhold is subject to liability for penalties and other statutory additions. (26 U.S.C. § 3402(d); see Cheetham v. CSX Transportation,(M.D. Fla. 2012) 2012 WL 1424168, *8.)

Cifuentes, 238 Cal. App. 4th at 71-72, 189 Cal. Rptr. 3d at 108.

A Field Attorney Advice Memorandum from the IRS provides similar guidance. In LAFA 20133501F, the IRS clarified that if all or part of a settlement is for back wages, front pay, or severance pay, those amounts must be reported on Form W-2. If no allocation is made in the settlement for attorney fees, the entire settlement amount may be reportable on Form W-2 and subject to FITW and FICA taxes (including, if applicable, the additional 0.9% Medicare tax). If the settlement agreement states that a portion of the settlement that would otherwise be considered wages reportable on Form W-2 is for attorney fees, that portion should be reported on a Form 1099-MISC issued to the claimant. See Key Issue 27A: Overview of Form 1099-MISC Reporting Requirements, Payroll Tax Deskbook, 17th Ed. (November 2015), 20XX WL 11703343. The LAFA also provides a helpful example:

> Example One – Separate Checks to Claimant and Attorney, Clear Allocation

> In this example, C1 agreed to waive all claims in return for $X, payable in two lump sums of $X each. The agreement specifically provided for attorney's fees, payable to A1 in two lump sums of $X and to A2 in two lump sums of $X. To the extent the recovery is taxable to C1, the attorney's fees are includible in C1's income and must be reported to C1 by filing and furnishing an information return. Form 1099-MISC is the appropriate form to use in reporting the attorney fee amounts to C1 when there is a clear allocation of an amount as attorney's fees, because that clearly allocated amount is not wages subject to employment tax.

> The employer must also report the portion of the settlement that was paid directly to C1 by filing and furnishing a Form W-2 reporting $X with C1 as payee

Natale v. East Coast Salon Services, Inc., Slip Copy (2016)

2016 WL 659722

for each year. Finally, the employer must report the payments to the attorneys by filing and furnishing two Forms 1099-MISC with the two attorneys as payees for each year in the amounts of $X and $X, respectively.

**\*5** LAFA 20133501F, underline>available at</underline, https://www.irs.gov/pub/irslafa/20133501f.pdf.

Presuming that New Jersey state tax laws are similar to California's, [7] and understanding that federal tax laws are uniform throughout the country, it is questionable whether defendant's position to pay plaintiff by Form 1099 is legally advisable. As a consequence, since the payment can only be made by W-2, a process controlled by the defendant, no indemnification provision can be maintained in the form described.

[7]   See N.J.S.A. 54:8A-50, Liability of employer required to withhold tax; special fund; right of action against employer; N.J.S.A. 54:8A-51, Failure of employer to deduct and withhold tax or to pay tax withheld.

In sum, the Court finds that the parties entered into an enforceable settlement agreement which the Court will enforce. In order to enforce the settlement, the Court will supply the legally appropriate term of payment by W-2 [8] into the settlement agreement, and strike from the agreement the cited indemnification provision to the extent it is inconsistent with payment of the settlement proceeds by W-2. See Mazzeo v. Kartman, 560 A.2d 733, 737 (N.J. Super. App. Div. 1989) ("[W]here the parties to a contract fail to specify a term that is essential to a decision as to their relative rights and responsibilities,

the trial judge will attempt to supply that term in order to effectuate the parties intent."); New Jersey Bank v. Palladino, 389 A.2d 454, 461 (N.J. 1978) ("Terms will be implied in a contract where the parties must have intended them because they are necessary to give business efficacy to the contract as written. .... [W]hen the terms of an agreement have more than one possible interpretation, by one of which the agreement would be valid and by the other void or illegal, the former will be preferred."); Paley v. Barton Sav. & Loan Ass'n, 196 A.2d 682, 686 (N.J. Super. App. Div. 1964) cert. denied, 198 A.2d 446 (N.J. 1964) ("The mere fact that certain terms of an agreement may require construction by a court does not establish that either of the parties to that agreement is without any obligation thereunder. If it is at all possible, a court will attach a sufficiently definite meaning to the terms of a bargain to make it enforceable.").

[8]   See Josifovich v. Secure Computing Corp., No. CIV. 07-5469FLW, 2009 WL 2390611, at *2 (D.N.J. July 31, 2009) (court determined that payment by W-2 was the proper method of payment for the portion of the settlement funds intended to compensate the plaintiff for back and front pay).

The parties are free to enter into any other indemnification agreement consistent with this Opinion.

An appropriate Order will be entered.

**All Citations**

Slip Copy, 2016 WL 659722

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2390611
United States District Court,
D. New Jersey.

Diane E. JOSIFOVICH, Plaintiff,
v.
SECURE COMPUTING
CORPORATION, Defendant.

Civil Action No. 07–5469 (FLW).
|
July 31, 2009.

West KeySummary

1    **Internal Revenue**
      Withholding from Wages
      An employee's settlement proceeds
      attributable to her back pay claims against
      an employer were subject to income tax
      withholding. The proceeds were subject to
      withholding as wages because the proceeds
      constituted compensation for a period in
      which the former employee actually rendered
      services. 26 U.S.C.A. § 3401(a).

      Cases that cite this headnote

**Attorneys and Law Firms**

Richard P. Flaum, Difrancesco Bateman Coley Yospin
Kunzman Davis & Lehrer, PC, Warren, NJ, for Plaintiff.

Alix R. Rubin, Entwistle & Cappucci, LLP, Florham
Park, NJ, for Defendant.

## OPINION REGARDING ALLOCATION
## OF SETTLEMENT PROCEEDS

LOIS H. GOODMAN, United States Magistrate Judge.

 *1  This matter comes before the Court on applications
made by Plaintiff, Diane Josifovich [Docket Entry No.
36], and Defendant, Secure Computing Corporation
[Docket Entry No. 38], through their counsel, for
a determination as to whether employment tax
withholdings are appropriate with regard to any or

all of the settlement proceeds in this matter, and, if
so, how those settlement proceeds should be allocated.
Additionally, Plaintiff has requested that the settlement
proceeds be increased by the amount of any withholdings.
For the reasons discussed below, the Court concludes
that Defendant must withhold employment taxes from
a portion of the settlement proceeds, specifically the
amount allocated as back pay and front pay. Because
the Court cannot determine the appropriate amount of
the allocation based on the record before it, the Court
will schedule a hearing, at which counsel may present
argument on the limited issue of the actual allocation of
the settlement proceeds, based on the conclusions and
findings set forth in this opinion. Finally, this Court
declines to award Plaintiff any additional monies to
compensate her for any negative tax consequences that
may result.

## I. FACTUAL BACKGROUND AND PROCEDURAL
## HISTORY

On or about September 21, 2007, Plaintiff Diane
Josifovich ("Plaintiff") filed a complaint against
her former employer, Defendant Secure Computing
Corporation ("Secure" or "Defendant"), in the Superior
Court of New Jersey, Law Division, Somerset County,
which Secure then removed to this Court [Docket Entry
No. 1]. On February 19, 2008, Plaintiff amended the
Complaint (the "Amended Complaint") [Docket Entry
No. 11].

In the Amended Complaint, Plaintiff alleges, among
other things, that Defendant failed to pay her earned
commissions, and that Defendant violated the New Jersey
Conscientious Employee Protection Act ("CEPA") and
the New Jersey Law Against Discrimination ("LAD").
Plaintiff seeks various forms of relief, including (1) back
pay, (2) front pay, (3) emotional distress damages, and (4)
attorneys' fees and costs.

On May 29, 2009, this Court conducted a lengthy
settlement conference, which resulted in a settlement of
the claims asserted in the Amended Complaint. At the
conclusion of the settlement conference, counsel for the
parties put the essential terms of the agreement on the
record, with the express representation that the terms
would eventually be set forth in a formal document to be
executed by the parties.

At some point, counsel notified the Court that while reducing the settlement agreement to writing, the parties had been unable to reach agreement with regard to whether the settlement proceeds were subject to the withholding of employment taxes. The parties both agree that at least a portion of the settlement proceeds are in fact taxable; the only issue therefore is whether Defendant could, or indeed, must, withhold taxes from any portion of the settlement proceeds payable to Plaintiff and, if so, how much of the settlement proceeds should be subject to withholding. Neither party raised the issue of withholding during the seven-hour settlement conference, nor was it part of the terms deemed essential and put on the record at the conclusion of the settlement conference.

## II. DISCUSSION

### A. Withholding of employment taxes

**\*2** At the outset, it is important to clarify what the issue is that the Court is called upon to determine. The parties' dispute does not focus on whether tax treatment is an essential term of the settlement or on whether there is any reason not to enforce the agreement. Indeed, it is clear that terms relating to the tax treatment of a settlement agreement are not considered essential, but rather are part of the implementation of the settlement agreement. See *McDonnell v. Engine Distributors,* No. 03–1999, 2007 WL 2814628, at *8 (D.N.J., Sept.24, 2007), *aff'd,* 314 Fed. Appx. 509 (3d Cir. Feb.24, 2009). Accordingly, there is no issue as to whether the settlement agreement is enforceable.

Similarly, whether the settlement proceeds are taxable, or whether they constitute gross income, is not before the Court. The sole issue presented by the parties, therefore, is whether any portion of the settlement proceeds is subject to employment withholding taxes. See Plaintiff's Brief ("Pl.Brief") at pp. 2, 7, 10. Defendant contends that any portion attributable to "pay" is subject to withholding and that Defendant, as an employer, must therefore withhold employment taxes. See Defendant's Brief ("Dft.Brief") at pp. 1, 3–4. Plaintiff, by contrast, argues that no portion of the settlement proceeds should be subject to withholding. See Pl. Brief at pp. 2, 5–7. Thus, Plaintiff contends that she should receive the entire gross amount of the settlement, and any tax payment will be her obligation, not that of her former employer. See Pl. Brief at p. 10.

Gross income, which is defined in 26 U.S.C. § 61(a) as "all income from whatever source derived, including (but not limited to) the following items (1) [c]ompensation for services, including fees, commissions, fringe benefits, and similar items," differs from income subject to withholding taxes, which is confined to wages. *Central Illinois Public Service Co. v. U.S.,* 435 U.S. 21, 25, 98 S.Ct. 917, 55 L.Ed.2d 82 (1978) (finding that lunch reimbursements to employees did not constitute wages). As the Supreme Court explained in *Central Illinois,* while income and wages may be related and may overlap, the underlying concepts are not the same. "Wages usually are income, but many items qualify as income and yet clearly are not wages." *Id.* (footnote omitted). Indeed, the Court in *Central Illinois* pointed out that mandatory withholding tax is by definition a narrower concept than gross income taxability. *Id.* at 29.

For withholding tax purposes, an employer has a legal duty to deduct and withhold taxes when "making [the] payment of wages," and the failure to do so may subject the employer to liability. See 26 U.S.C. § 3402(a)(1); 26 U.S.C. § 3403; 26 U.S.C. § 3509. The term "wages" is defined in the Code as "all remuneration ... for services performed by an employee for his [or her] employer." See 26 U.S.C. § 3401(a).

In *Social Security Bd. v. Nierotko,* 327 U.S. 358, 365–66, 66 S.Ct. 637, 90 L.Ed. 718 (1946), the Supreme Court held that a back pay award should be treated as wages, reasoning that " 'service' as used by Congress in this definitive phrase [of the Social Security Act] means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer." The Court further noted that the words used by Congress, "any service ... performed," "admonish us against holding that 'service' can be only productive activity." *Id.* at 365.

**\*3** The Third Circuit recently considered whether early retirement benefits accorded to tenured faculty constituted "wages" subject to withholdings. *University of Pittsburgh v. U.S.,* 507 F.3d 165 (2007). At the outset, the Court reviewed the various statutes that form the basis for an employer's obligation to withhold, and then looked to *Nierotko* for guidance as to the scope of the term "wages." *Id.* at 168. In finding that the retirement benefits were in fact wages, and therefore subject to withholding, the Third Circuit noted that "the weight of

authority holds that compensation paid to an employee for services to her employer constitutes wages ... regardless of whether it is prospective (for lost earning potential) or retrospective (as a reward for past service)." *Id.* at 171; *see also Appoloni v. U.S.,* 450 F.3d 185, 190 (6th Cir.2006) ("The holding in *Nierotko* clearly supports the conclusion that awards representing a loss in wages, both back wages and future wages, that otherwise would have been paid, reflect compensation paid to the employee because of the employer-employee relationship, regardless of whether the employee actually worked during the time period in question.")

Other courts have applied *Nierotko* where an employer seeks to withhold taxes from settlement proceeds allocated to back and front pay. *See Rivera v. Baker West, Inc.,* 430 F.3d 1253, 1259 (9th Cir.2005) (stating that "back pay and lost wages constitute 'wages' for taxable withholding purposes"); *Amalgamated Transit Union Local 880 v. NJ Transit Bus Operations, Inc.,* 385 N.J.Super. 298, 305, 897 A.2d 357 (App.Div.2006) (noting that "the *Nierotko* analysis of back pay awards as wages remains valid"); *Amalgamated Transit Union, Local 1317 v. DeCamp Bus Lines, Inc.,* 382 N.J.Super. 418, 431, 889 A.2d 489 (Law Div.2005) (analyzing *Nierotko* and finding that back pay award was subject to withholding taxes); *Hemelt v. U.S.,* 122 F.3d 204, 209–10 (4th Cir.1997) (in case involving ERISA damages, finding that "lost wages and other economic harms are a major component" of equitable relief; "because the payments ... arose out of [the] employment relationship, they fit within the statutory and regulatory definition of wages and ... taxes were properly withheld); *Gerbec v. U.S.,* 164 F.3d 1015, 1026 (6th Cir.1999) (holding that both back and front pay are subject to withholding, stating that *Nierotko* "clearly supports the conclusion that awards representing a loss in wages ... reflect compensation paid ... regardless of whether the employee actually worked during the time period in question").

Plaintiff contends that none of the settlement proceeds should be subject to tax withholding. *See* Pl. Brief at p. 9. Based on the cases cited, however, there is no question that back pay, paid as compensation for a period in which the former employee actually rendered services, must be the subject of withholding. Accordingly, this Court finds that Defendant must withhold taxes from any amount of the settlement proceeds allocated to Plaintiff's back pay claims.

**\*4** With respect to any portion of the settlement proceeds allocated to front pay, Plaintiff argues that Secure may not withhold taxes because she did not actually perform services during the front pay time period. *See* Pl. Brief at p. 6. In support of her argument, Plaintiff cites *Carr v. Fresenius Med. Care,* No. 05–2228, 2006 WL 1339970 (E.D.Pa.2006), *Churchill v. Star Enterprises,* 3 F.Supp.2d 622 (E.D.Pa.1998), *Kelly v. Hunton & Williams,* No. 97–cv–5631, 1999 U.S. Dist. LEXIS 14605 (E.D.N.Y.1999), *Kim v Monmouth College,* 320 N.J.Super. 157, 726 A.2d 1017 (Law Div.1998) and *Lisec v. United Airlines,* 10 Cal.App.4th 1500, 11 Cal.Rptr.2d 689 (6th Dist.Ct.App.1992). However, the cases Plaintiff cites can all be distinguished from this case.

In *Carr* and *Churchill,* the statute at issue—the Family and Medical Leave Act, 29 U.S.C. 2601, *et seq.* (the "FMLA")—and more particularly its unique language creating a remedy of "damages ... *equal to the amount of wages,*" played a significant role in the outcome. *Carr,* 2006 WL 1339970, at *4 (emphasis added); *see also Churchill,* 3 F.Supp.2d at 624. Specifically, the *Carr* court distinguished *Nierotko* based on the FMLA's remedial "equal to" language, noting that the *Nierotko* plaintiff was subject to a different provision lacking such language. *Carr,* 2006 WL 1339970, at *4. Similarly, the *Churchill* court referenced the "equal to" language utilized by the FMLA.[1] *See* 3 F.Supp.2d at 624. Here, the relief Plaintiff seeks arises from causes of action based on contract and quasi-contract theories, CEPA and the LAD, but not the FMLA. None of the causes of action Plaintiff asserts employs the unique "equal to" remedial language appearing in the FMLA. *See* N.J.S.A. 105–1, *et seq.;* N.J.S.A. 34 19–13. Therefore, *Carr* and *Churchill* are inapposite.

---

[1]    Although the New Jersey Law Division in *Kim, supra,* 320 N.J.Super. at 161, 726 A.2d 1017, stated in *dicta* and without extensive discussion that *Churchill's* holding was not limited to cases arising under the FMLA, this Court is not persuaded. It is well established that the FMLA's provisional remedies are unique and distinct from other employment discrimination statutes. *See, e.g., Longstreth v. Copple,* 101 F.Supp.2d 776, 780–81 (N.D.Iowa 2000) (comparing the FMLA's "equal to the amount of" phraseology with various other employment discrimination statutes, and finding that unlike the other statutes, "damages under the FMLA do not

*per se* constitute wages that are subject to statutory deductions.").

Neither *Kim* nor *Kelly* even cites to *Nierotko. See* 320 N.J.Super. 157, 1999 U.S. Dist. LEXIS 14605. To the extent that *Kim* and *Kelly* are inconsistent with *Nierotko,* this Court declines to follow them. *See Amalgamated Transit Union Local 880,* 385 N.J.Super. at 305, 897 A.2d 357, (citing *Amalgamated Transit Union, Local 1317,* 382 N.J.Super. at 431, 889 A.2d 489).

Finally, although the court in *Lisec* determined that an economic damages award for wrongful termination was not subject to withholding taxes, 10 Cal.App.4th at 1507, 11 Cal.Rptr.2d 689, it did so without effectively distinguishing *Nierotko.* The *Lisec* court cited to *Nierotko, id.* at 1505–07, 11 Cal.Rptr.2d 689, pointing out that the *Nierotko* plaintiff was reinstated and was therefore an employee at the time of the award (as opposed to a former employee). The court in *Lisec* apparently concluded that the current employment status was determinative, and that former employers were not obligated to withhold taxes if services had not actually been performed. *See id.* at 1507, 11 Cal.Rptr.2d 689. This ignores the fact that regardless of whether the employee in *Nierotko* was reinstated, he did not actually perform services during the period for which compensation was awarded. This Court is not persuaded by *Lisec* insofar as it conflicts with the Supreme Court's interpretation of services performed in *Nierotko.*

**\*5** Moreover, even where a plaintiff has not been reinstated, courts have held that settlement proceeds allocated to future wages are subject to employment withholding taxes in light of *Nierotko. Gerbec, supra,* 164 F.3d at 1026 (front pay settlement payments awarded to laid off employees subject to Federal Insurance Contributions Act ("FICA") taxation); *Hemelt, supra,* 122 F.3d at 209–10 (settlement payment to former employees for loss of future earning capacity arose out of employment relationship and thus was wages for FICA purposes).

Because the Supreme Court in *Niertotko* held that services performed—a component of the definition of wages, which are subject to withholding—encompasses the entire employee-employer relationship and not merely the work actually performed, this Court concludes that front pay, like back pay, is subject to withholding taxes. Accordingly,

Secure should withhold taxes from all settlement proceeds allocated to back and front pay.

The issue with regard to the settlement proceeds is further complicated by the fact that in addition to front and back pay, Plaintiff also seeks relief in the Amended Complaint for emotional distress and attorneys' and costs. Both parties seem to agree that any portion of the settlement proceeds attributable to emotional distress and attorneys' fees and costs should be subject to a form 1099, rather than a W–2 form for employee wages. Because the parties do not dispute the tax treatment of Plaintiff's emotional distress and attorneys' fees and costs, this Court's analysis with regard to whether taxes must be withheld is limited to back and front pay.

**B. Allocation of the Settlement Proceeds**

The parties disagree as to how the settlement proceeds should actually be allocated to each of Plaintiff's claims. Plaintiff alleges causes of action based on breach of contract, promissory estoppel, equitable estoppel, misrepresentation, breach of the implied covenant of good faith and fair dealing, CEPA, and the LAD. Emotional distress damages are sought in the LAD counts only. The parties agreed to a lump sum figure to settle all claims alleged, and did not address allocation of amounts to specific claims or categories of damages.

The judicial allocation of settlement proceeds frequently arises where a taxpayer challenges a determination by the Internal Revenue Service ("IRS"), requiring some or all of a settlement to be included as gross income, pursuant to 26 U.S.C. § 104(a)(2). *See Francisco v. U.S.,* 267 F.3d 303 (3d Cir.2001); *Peaco v. Comm'r of Internal Revenue,* 48 Fed. Appx. 423, 425–26 (3d Cir.2002). Although 26 U.S.C. 104(a)(2) is not at issue here, those cases remain instructive with regard to judicial allocation of settlement proceeds.

Where the parties have not themselves allocated the settlement proceeds, a court will do so by considering a number of factors, including "the pleadings, the evidence, the terms of the settlement and the intent of the payor." *Glatthorn v. U.S.,* 818 F.Supp. 1548, 1551 (S.D.Fla.1993). The intent of the payor, if available, may be deemed paramount evidence of how a settlement should be apportioned. *Francisco, supra,* 267 F.3d at 319–21. A court may determine the payor's intent by reviewing the pleadings, jury awards and any other Court orders or

judgments. *See Barnes v. Comm'r of Internal Revenue,* No. 21856–95, 1997 WL 12138, at *3–4 (U.S.Tax Ct.1997). Thus, the court may look beyond the face of the agreement between the parties, to glean the "true nature" of the payment. *Peaco, supra,* 48 Fed. Appx. at 425–26. This is particularly so when any allocation in the settlement agreement itself may be driven by tax considerations, rather than the true value of the claims being settled. *Id.* at 426.

**\*6** Here, the Court has been provided with Plaintiff's economic expert's report, and has also reviewed the Amended Complaint. Both documents provide insight with regard to Plaintiff's alleged contract damages. The Court has not been given any support, however, for Plaintiff's allegation that a substantial portion of the settlement proceeds should be allocated to emotional distress, nor has the Court received a final indication of the amount of legal fees and costs incurred by Plaintiff. For this reason, before making a determination as the appropriate amounts, if any, to be allocated to back and front pay, emotional distress, and attorneys' fees and costs, this Court will conduct a hearing, at which counsel will be asked to present argument limited to the issue of the actual amounts to be allocated to each element of damages.

**C. Additional Award**

Finally, Plaintiff argues that if this Court determines that any portion of her settlement proceeds is subject to withholding, she is entitled to have that amount "equitably grossed up." In so arguing, Plaintiff relies on the Third Circuit's recent decision in *Eshelman v. Agere Sys. Inc.,* 554 F.3d 426 (3d Cir.2009). *See* Pl. Brief at pp. 3–4, 6. This Court disagrees.

In *Eshelman,* 554 F.3d at 440, a jury found that the defendant, the plaintiff's former employer, had discriminated against her in terminating her employment. The jury awarded the plaintiff back pay, to which the district court then added a sum of money to compensate for the negative tax consequences of a lump sum back pay award. *Id.* In affirming the award, the Third Circuit explained that the district court exercised its broad equitable powers under the antidiscrimination statute involved and could properly award a prevailing employee additional monies to make her whole. *Id.* at 442. The Third Circuit cautioned, however, that prevailing plaintiffs pursuing causes of action under anti-

discrimination statutes are not presumptively entitled to such additional monies and that they still bear the burden of proving the extent of their injury. *Id.* at 443.

By contrast to *Eshelman,* where a plaintiff requested an additional award to offset the alleged tax consequences of a jury's back pay award, but failed to show how the equities demanded such an award or to provide a non-speculative calculation, a court recently found that he had failed to carry his burden. *Argue v. Davis Davis Enterprises, Inc.,* No. 02–9521, 2009 WL 750197, at *26–27 (E.D.Pa. Mar.20, 2009). This Court finds that Plaintiff has similarly failed to carry her burden for the reasons that follow.

Unlike the plaintiff in *Eshelman,* Plaintiff was not the recipient of a jury award. To the contrary, Plaintiff here entered into a voluntary settlement agreement. This Court will not alter the terms of that voluntary settlement agreement and require Defendant to pay more simply because Plaintiff now, after the close of negotiations, is dissatisfied with the anticipated tax consequences of her agreement. A settlement agreement is a contract and, consequently, a court will not rewrite that contract simply to provide one party with a better bargain than the one she negotiated. *Grow Co., Inc. v. Chokshi,* 403 N.J.Super. 443, 464, 959 A.2d 252 (App.Div.2008). Plaintiff, as opposed to the recipient of a jury award, possessed control in arriving at the terms of the settlement and the amount of the payment.

**\*7** Nor has Plaintiff established that she, like the plaintiff in *Eshelman,* is a prevailing party under a remedial statute. Although a settling plaintiff may in some instances be deemed a prevailing party, there is no evidence here that Plaintiff has the necessary judicial *imprimatur* to be so deemed. *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *see also Truesdell v. Phila. Housing Auth.,* 290 F.3d 159, 164 (3d Cir.2002); *A.W. v. East Orange Bd. of Ed.,* 248 Fed. Appx. 363, 364 (3d Cir.2007) (finding a prevailing party may exist when the change in legal relationship has been judicially sanctioned). Plaintiff has not even attempted to show how she is a prevailing party and, therefore, the Court is not persuaded.

Finally, in *Eshelman,* the Third Circuit's additional award compensated the plaintiff only for the negative tax

consequences that resulted from payment of the back pay award in the form of a lump sum, rather than a payment over a number of years. *Id.* 554 F.3d at 442. The additional award, however, did not provide compensation for the entire tax consequence attributable to the award, and did *not* even address the withholding of mandatory employment taxes. *Id.* Defendant is required to withhold employment taxes regardless of the payment form, an issue which *Eschelman* does not address.

This Court finds that for Plaintiff to receive an additional settlement, in excess of that agreed upon by the parties, when the negotiation was with full awareness of the fact that there would be tax consequences, would constitute a windfall to Plaintiff. The Court therefore denies the request for a "gross up" of the settlement amount to cover any tax liabilities.

### III. CONCLUSION

For the foregoing reasons, Defendant is required to withhold applicable employment taxes from that portion of the settlement proceeds allocated to back pay and front pay, and an appropriate W–2 form should be issued. Any settlement proceeds allocated to Plaintiff's emotional distress claims and attorneys' fees and costs are to be paid with no employment taxes withheld, and should be issued with a Form 1099. The Court will hear oral argument of counsel limited to the amount of the allocation of the settlement proceeds. Plaintiff's request for an additional award to offset any negative tax consequences to her settlement proceeds is hereby denied. An appropriate Order accompanies this Opinion.

### All Citations

Not Reported in F.Supp.2d, 2009 WL 2390611, 104 A.F.T.R.2d 2009-5807, 2009-2 USTC P 50,543

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.