UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KENNETH HOSFELD, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 15-7497 |
| v. | : | |
| | : | OPINION |
| POSTAL TRANSPORT, INC., et al., | : | |
| Defendants. | : | |

This matter comes before the court on Motion of Defendants Postal Transport, Inc. and Clifford Finkle IV to Enforce Settlement. The Court has considered the written submissions of the parties as well as the arguments advanced at the hearing on October 31, 2017. For the reasons stated on the record that day, as well as those that follow, Defendants' motion is granted.

Hosfeld was employed by Postal Transport as a truck driver responsible for the transport of mail pursuant to a contract awarded by the U.S. Postal Service, which sets the drivers' pay and benefits rates. The Amended Complaint alleges, among other things, that Defendants violated the Fair Labor Standards Act by failing to pay Plaintiff the proper wage rate for hours worked in violation of 29 U.S.C. § 201 et seq. Am Compl., ¶1. (Ex. A). In addition, Plaintiff alleges retaliation and a whistleblower claim.

During the initial stages of discovery, the parties, disagreeing on a specific total came to agree that Plaintiff would be entitled to not more than $1,600 if he prevailed on his wage loss claims. See Emails, Def. Exs. B, C, & D. Defendants served an Offer of Judgment on September 30, 2016 in the amount of $2,000.00. Def. Ex. E. Settlement discussions ensued and on November 23, 2016 Plaintiff agreed to settle the matter for

1

$5,000.00 in exchange for a release from Plaintiff on "all claims brought, or which could have been brought, to date, including counsel fees and costs." The agreement was memorialized in email as follows:

> **Plaintiff's Counsel:** John, I spoke to my client and he will agree to 5,000 (sic) nothing less.
>
> **Defendants' Counsel:** Finkle will pay $5,000 for a release from all claims brought, or which could have been brought, to date, including counsel fees and costs. If that's (sic) agreed I'll have Vik Jaitly prepare a Settlement Agreement and Release. Please Confirm. John
>
> **Plaintiff's Counsel:** Yes agreed.

See Nov. 23, 2016 Email Exchange, Defs. Ex. F.

The parties began drafting the written agreement. Defendants sent a draft settlement agreement to Plaintiff on December 5, 2016. See Defs. Ex. G. Plaintiff sent comments on that draft on December 15, 2016 and advised that Plaintiff's counsel intended to "notify the court today via letter . . . that we have reached an agreement and are working on the written document." Id. at Exs. H & I. There is no indication on the docket that Plaintiff's counsel ever advised the court of the settlement.

While there was no disagreement on the amount of the settlement, the parties sparred over whether, as a matter of law, the settlement proceeds allocated to the Form 1099 payment would be considered taxable income and whether Defendants would provide a mutual release to Plaintiff. On December 21, 2016, the parties engaged in further discussion on the impediments to memorializing the settlement into writing. Plaintiff's counsel stated that the problematic issues concerned the allocation of the award as income versus other damages, Plaintiff's insistence that the release be mutual, and Defendants' insistence that Plaintiff sign a class action waiver. Id. at Exs. J, K, L. Counsel further stated that Defendants' alleged continued retaliation placed the

settlement in jeopardy. Id. Unable to resolve these terms, Plaintiff's counsel announced that the "settlement is off." Id. Ex. J.

Then, Defendants informed Plaintiff's counsel that Defendants agreed to Plaintiff's allocation of the settlement proceeds, so long as Plaintiff agreed to be responsible for any tax payments owed as a result of the settlement. On February 24, 2017, Defendants also agreed to provide Plaintiff a mutual release as Plaintiff has requested and sent to Plaintiff an updated settlement agreement reflecting these changes. See Def. Ex. K. The parties never signed the agreement and never requested a settlement conference with the magistrate judge. Discovery resumed and Defendants filed the instant motion.

New Jersey has a strong public policy in favor of settlements. Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990); Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util., 503 A.2d 331, 333 (N.J. Super. Ct. App. Div. 1985) (Courts "strain to give effect to the terms of a settlement wherever possible."). Disputes involving settlement agreements are governed by general principles of local contract law. Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006) (citing Borough of Haledon v. Borough of N. Haledon, 817 A.2d 965, 975 (N.J. Super. Ct. App. Div. 2003)). Generally, "[a] settlement stipulation should not be enforced 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms.'" Bistricer v. Bistricer, 555 A.2d 45, 47 (N.J. Super. Ct. Ch. Div. 1987) (quoting Kupper v. Barger, 111 A.2d, 73, 74-75 (N.J. Super. Ct. App. Div. 1955)).

Settlements can be enforced, however, when non-essential terms are unresolved. As the Bistricer court explained:

> [I]t is not necessary for a writing to contain every possible contractual provision to cover every contingency in order to qualify as a completed binding agreement. Some of these issues may be determined by the operation of law, or the parties may resolve such differences by a subsequent agreement or a contract may be silent in those respects. In any event a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect. *So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound.*

Id. (emphasis added) (quoting Berg Agency v. Sleepworld, 346 A.2d 419, 423-24 (N.J. Super. Ct. App. Div. 1975)).

New Jersey law permits oral agreement on essential terms, "even though they contemplate the later execution of a formal document to memorialize their undertaking." United States v. Lightman, 988 F. Supp. 448, 459 (D.N.J. 1997). Where a court finds that the essential terms are agreed to, "the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges." Lahue v. Pio Costa, 623 A.2d 775, 788 (N.J. Super. Ct. App. Div. 1993).

In McDonnell v. Engine Distributors, the Court considered the enforcement of a settlement where the parties agreed to the essential terms, leaving only the scope of the releases, indemnification, confidentiality, and tax treatment unresolved. See, McDonnell v. Engine Distributors, No. Civ. 03-1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007) (citing Hagrish v. Olson, 603 A.2d 108, 109-10 (N.J. Super. Ct. App. Div. 1992) (enforcing a settlement that required the defendants to pay a stated sum of money and barred the plaintiffs from pursuing an appeal, even though the parties could not subsequently agree on whether a release should be unilateral or mutual)).

Like McDonnell, the disputed terms here concern "the scope of the release, ensuring payment, tax treatment, [and] indemnification[.]" McDonnell, 2007 WL

4

2814628, at *3.  Such terms "all speak to the settlement's implementation.  They are not, however, essentials of the settlement." Id. see also Natale v. E.Coast Salon Servs., Inc., No. Civ. 13-1254, 2016 WL 659722, at *2 (D.N.J. Feb. 18, 2016) (holding that the tax treatment of a settlement relates to the implementation of a settlement and is not an essential term of a settlement.)  The Court finds that the parties in this case reached an enforceable settlement agreement on November 23, 2016.  For these reasons, and those set forth on the record, Defendants' motion is granted.

An appropriate Order shall issue.

Dated: November 7, 2017

 s/ Joseph H. Rodriguez
HON. JOSEPH H. RODRIGUEZ,
United States District Judge